IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MALEEHA AHMAD <br><br> and <br><br> ALISON DREITH, <br><br> *on behalf of themselves and a class of similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ST. LOUIS, MISSOURI, <br><br> Defendant. | No. 4:17-cv-2455-CAS |

**<u>Memorandum in Support of Motion for Temporary Restraining Order</u>**

Plaintiffs seek a temporary restraining order prohibiting Defendant, its officers, employees, or agents, and those acting on their behalf or in concert with them from: (a) giving any order of dispersal in the absence of the use of force or violence; (b) enforcing any order for dispersal without first issuing a clear and unambiguous order to disperse within the five minutes prior to enforcement that allows sufficient opportunity to exit the area, ensuring and notifying individuals of a means of safe egress from the area that is available to individuals, and describing with specificity the area to which the dispersal order applies; (c) arresting, threatening to arrest, or interfering with any individual, including any member of the media or member of the public photographing or recording in public places, unless that person is threatening the safety of others or physically interfering with the ability of law enforcement to perform their duties; (d) retaliating against any individual for photographing or recording in public places; (e) deleting, destroying, or otherwise interfering with photographs or records made by individuals; (f) utilizing chemical agents (as

1

defined in the Complaint) without first issuing clear and unambiguous warnings that such chemical agents will be utilized; without providing individuals sufficient opportunity to heed the warnings and exit the area; without minimizing the impact of such agents on individuals who are complying with lawful law enforcement commands; and without ensuring that there is a means of safe egress from the area that is available to the individuals. Plaintiffs request an evidentiary hearing on this motion.

## Argument

### A.   Standard for Temporary Restraining Order

The standard for a temporary restraining order is the same as the standard for a preliminary injunction. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367 (8th Cir. 1991). In considering whether to issue a preliminary injunction, this Court must determine: (a) whether the plaintiff is likely to prevail on the merits, (b) if there exists a threat of irreparable harm to the plaintiffs absent the injunction, (c) the balance between this harm and the injury that the injunction's issuance would inflict upon defendant, and (d) what is in the public interest. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *accord Abdullah v. Cty. of St. Louis*, 52 F. Supp. 3d 936, 943 (E.D. Mo. 2014).

### B.   First Amendment Implications

When the government regulates the exercise of First Amendment rights, the burden is on the proponent of the restriction to establish its constitutionality. *Phelps-Roper v. Koster*, 713 F.3d 942, 949 (8th Cir. 2013). Moreover, where a challenged policy restricts First Amendment activity consideration of the likelihood of success on the merits is decisive to the question of whether an injunction should issue. "In a First Amendment case, . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should

issue." *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps–Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting *Phelps–Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam) (quotation omitted).

### C. Likelihood of Success on the Merits

Plaintiffs are likely to succeed on the merits[1] because the policies or customs violate the First, Fourth, and Fourteenth Amendments.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). A policy or custom is unconstitutionally vague where it "does not provide people with fair notice of when their actions are likely to become unlawful," *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038, 1041 (8th Cir. 2012), and when it "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." *See Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (brackets and quotation marks omitted).

Defendant has policies or customs of: (a) declaring an unlawful assembly (and thus ordering dispersal) in the absence of the use of force or violence; (b) enforcing vague orders of

---

[1] Because Plaintiffs challenges a municipal policy, not a statute, they demonstrate likelihood of success if they can show a "fair chance of prevailing." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) ("[C]ourts should . . . apply the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes.").

dispersal that do not specify the area from which dispersal is required and after an extended period of time during which individuals reasonably believe the need for dispersal has ceased; and (c) utilizing chemical agents without first issuing clear and unambiguous warnings that such chemical agents will be utilized; without providing individuals sufficient opportunity to heed the warnings and exit the area; without minimizing the impact of such agents on individuals who are complying with lawful law enforcement commands; and without ensuring that there is a means of safe egress from the area that is available to the individuals. Each of these places Plaintiffs and others like them at the arbitrary risk of arrest or infliction of injury. These policies or customs also provide the opportunity for discriminatory enforcement/action based on the content and viewpoint of one's expressive activity.

Because the policies and customs of ordering dispersal, enforcing dispersal orders, and utilizing chemical agents are applied to persons engaged in expressive activity at traditional public fora, these customs or policies must have a "greater degree of specificity" than normally required. *Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [void-for-vagueness] doctrine demands a greater degree of specificity than in other contexts."); *see also Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 872 (1997) (imposing higher standards for vagueness on criminal laws). Here, as applied against Plaintiffs and others, the policies or customs have *ad hoc*, unascertainable parameters. This provides the public insufficient, if any, notice of what is permissible. That is, individuals are required to steer

wide and surrender their First Amendment rights or face the possibility of arrest or assault with chemical agents.

Without clear rules, enforcement of vague dispersal orders and the use of chemical agents on protests without warning is arbitrary. The arbitrary nature of the restrictions is especially problematic where First Amendment freedoms are involved. *See Stahl*, 687 F.3d at 1041-42. As the Supreme Court has observed, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Thus, "[w]hen speech is involved, rigorous adherence to [due process] requirements is necessary to ensure that ambiguity does not chill protected speech." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). Even in the few instances where there has been an interest in safety and public order, the state's interest in "curbing criminal activity ... cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity." *Kolender v. Lawson*, 461 U.S. 352, 361 (1983). Because, as applied, the unlawful assembly and dispersal ordinances allow arbitrary enforcement they thereby "impermissibly delegat[ing] basic policy matters to policemen" in violation of the due process clause. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

Interference with and retaliation for photographing and recording police officers violates the First Amendment. It is clearly established that "the First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); see, e.g., *Glik*, 655 F.3d at 83 (holding that an individual's right to record officers' performance of their duties in public was clearly established); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) (holding there is a "First Amendment right to film matters of public interest"); *Robinson v.*

5

*Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005) (recognizing that there was "no doubt that the free speech clause of the Constitution protected" individuals who videotaped law enforcement officers because "[v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence"); *Ramos v. Flowers*, 429 N.J. Super. 13, 56 A.3d 869 (App. Div. 2012) (ruling that an independent filmmaker had a right to film police in the course of making a documentary film); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Demarest v. Athol/Orange Cmty. Television, Inc.,* 188 F. Supp. 2d 82, 94-95 (D. Mass. 2002) (finding it "highly probable" that filming of a public official on street outside his home by contributors to public access cable show was protected by the First Amendment, and noting that, "[a]t base, plaintiffs had a constitutionally protected right to record matters of public interest"); *Channel 10, Inc. v. Gunnarson,* 337 F. Supp. 634, 638 (D. Minn.1972) (holding that police interference with television newsman's filming of crime scene and seizure of video camera constituted unlawful prior restraint under First Amendment). Simply put, "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Glik*, 655 F.3d at 82; *see also Cumming*, 212 F.3d at 1333 (holding that individual citizens have a First Amendment right, subject to reasonable time, manner, and place restrictions, to photograph or videotape police conduct); *Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (recognizing that audio recording of police activity is entitled to some degree of First Amendment protection and "the act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights").

Seizing recording devices and deleting videos, using chemical agents on persons records, and retaliating against people recording all violates these First Amendment principles.

6

For these reasons, Plaintiffs are likely to prevail on the merits.

### D. Remaining Dataphase Factors

When a plaintiff has shown a likely violation of his First Amendment rights, the other preliminary injunction requirements are generally deemed to have been satisfied. *Swanson*, 692 F.3d at 870; *accord Phelps-Roper v. Cnty. of St. Charles*, 780 F. Supp. 2d 898, 900-01 (E.D. Mo. 2011). There is no basis for departing from the general rule here.

A restriction of protected expressive activity constitutes irreparable harm. It is well-settled that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Here, protests are ongoing so the need to vindicate the right to engage in expressive activity without being subject to arbitrary mistreatment is urgent.

"The balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Nixon*, 545 F.3d at 690. The chemical agent restrictions that Plaintiffs seek were previously ordered in *Templeton v. Dotson*, No. 4:14-cv-2019 (CEJ) without demonstrable hardship. The restrictions on interference with recording are similar those in consent judgments entered in *Hussein v. County of St. Louis*, No. 4:14-cv-1410 JAR--- except to the extent Defendant has engaged in more egregious behavior of seizing and deleting recordings. And providing specific dispersal directions (and only when a dispersal order is warranted) is not a significant hardship.

"It is always in the public interest to protect constitutional rights." *Id.* at 689. The public interest is served by allowing expressive activity gather on public streets and sidewalks without arbitrary interference upon clear notice.

7

### III. Conclusion

For the forgoing reasons, this Court should enter a temporary restraining order. Plaintiffs request that bond be set at $100.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
American Civil Liberties Union of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114
(314) 652-3112 (facsimile)
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
American Civil Liberties Union of Missouri Foundation
(816) 470-9938
gwilcox@aclu-mo.org
*Attorneys for Plaintiffs*

### Certificate of Service

A copy of the foregoing was served by facsimile and email to the City Counselor for the City of St. Louis on September 22, 2017.

/s/ Anthony E. Rothert