IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MALEEHA AHMAD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:17-CV-2455-CAS |
| v. | ) |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT CITY OF ST. LOUIS'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

On September 15, 2017, Judge Timothy Wilson of the Circuit Court for the City of St. Louis issued his decision finding former St. Louis police officer Jason Stockley not guilty of having murdered Anthony Lamar Smith. Since the verdict, protesters have taken to the streets in the City of St. Louis and the surrounding area to voice their disagreement with Judge Wilson's decision. Although the protesters have marched on City streets and thoroughfares without having obtained the necessary permits to do so, most of the protests have remained peaceful, and the St. Louis Metropolitan Police Department has made every effort to give the protesters space and to accommodate their desire to peaceably assemble and broadcast their views and feelings regarding the verdict. Unfortunately, in several instances, protests have resulted in physical violence, assaultive behavior, and property destruction perpetrated by those assembled in protest. In those instances, the police have responded in a measured and reasonable fashion to curb the illegal behavior and to protect the public from further violence and property damage.

In this action, Plaintiffs purport to assert claims against the City of St. Louis on behalf of themselves and a class of protesters under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiffs have moved the Court to enter a preliminary injunction dictating the nature and substance of the police department's response to the ongoing protests in the City. Doc. 10. However, the Court should deny Plaintiffs' request for a preliminary injunction because Plaintiffs lack standing to assert a claim for equitable relief. Even if Plaintiffs had standing, however, the Court should deny their request for a preliminary injunction because they are unlikely to succeed on the merits, they have adequate legal remedies, and because an injunction would harm the public interest by unreasonably and unlawfully preventing the police from acting quickly and decisively to prevent and quell violence and property damage committed by persons during protests.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 24 (2008). In the Eighth Circuit, courts deciding whether to grant a preliminary injunction must consider: "(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

## ARGUMENT

Plaintiffs seek a broad preliminary injunction dictating the nature and substance of the City police department's response to ongoing protests over the Stockley verdict.

However, the Court should deny Plaintiffs' request for an injunction for the following reasons:

**I.        Plaintiffs lack standing to assert claims for injunctive relief.**

Article III of the Constitution limits federal courts to adjudicating actual ongoing "cases" or "controversies." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "A party invoking federal jurisdiction must show a right to assert a claim in federal court by showing injury in fact, causation, and redressability." *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012).

A federal court has subject matter jurisdiction only where an alleged injury "fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Likewise, a "party cannot show an injury in fact by mere 'allegations of possible future injury.'" *Mo. Roundtable*, 676 F.3d at 672 (quoting *Whitmore v. Arkansas*, 495 149, 158 (1990) (punctuation altered from original)). "While a party need not expose himself to actual arrest or prosecution to be entitled to challenge a statute he claims deters his exercise of constitutional rights, he must show that his injury is more than imaginary or speculative." *Id.* (citations and punctuation removed); *see also Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009).

In this case, Plaintiffs are not mounting a facial attack on any statute or ordinance they allege to be unconstitutional. Rather, Plaintiffs allege the City has certain "policies or practices" that have caused them to be injured in the past and that are likely to result in future injuries if an injunction is not entered against the City. *See, e.g.*, Doc. 11 at 4 (alleging they have been "chilled" from speaking freely).

3

The City, of course, disputes that Plaintiffs' rights have been violated at all, or that the City has any unconstitutional policies or practices. However, even assuming Plaintiffs could show their rights have been violated in the past, they are not entitled to an injunction because the "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Rizzo v. Goode*, 423 U.S. 362, 604-05 (1976) (internal punctuation and citations removed).

Here, Plaintiffs' claims for injunctive relief are based on their subjective and speculative belief as to what may happen in the future, and thus, they cannot show an injunction is necessary to prevent them suffering future concrete injuries. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *see also Rizzo*, 423 U.S. at 604-05 (using past injuries as evidence of future injuries take courts "into the area of speculation and conjecture" (citations and quotations removed)); *Miller v. City of St. Paul*, 823 F.3d 503, 508 (8th Cir. 2016) (protester's alleged future harm was too speculative to warrant injunction); *Zanders*, 573 F.3d at 593-94 (allegations that a statute or law *might* be applied in an unconstitutional way in the future are insufficient to establish standing). As such, and given their inability to establish the likelihood of future harm, Plaintiffs lack standing to assert their claims for injunctive relief against the City.

**II.      Plaintiffs are not likely to succeed on the merits of their claims.**

In order to succeed on a claim for injunctive relief, a plaintiff must show she is *likely* to succeed on the merits of her claims. *Winter*, 555 U.S. at 22; *see also Dataphase*

4

*Sys, Inc.*, 640 F.2d at 114. Although Plaintiffs argue the Court should grant them an injunction if they can show a "fair chance" of success on the merits, Doc. 11 at 5 n.2, their position is undermined by precedent from the Supreme Court, which has explicitly rejected any attempt to water down the burden of a plaintiff seeking an injunction to show likelihood of success on the merits. *See Winter*, 555 U.S. at 22 (mere "possibility" of success on merits is insufficient to establish need for injunction); *cf. Planned Parenthood v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (describing "fair chance" of success standard as "less rigorous" than "substantial likelihood" of success standard).

Moreover, and although success on the merits is often described as the most significant factor in determining whether a preliminary injunction should issue, *see, e.g.*, *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013), "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course," *Winter*, 555 U.S. at 32. Indeed, especially in cases where an injunction is sought against a governmental entity, courts must remain cognizant of the "well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (citations and internal punctuation omitted); *see also Vorbeck v. Schnicker*, 660 F.2d 1260, 1266-67 (8th Cir. 1981) (police policies are entitled to wide latitude).

Even putting aside the wide latitude to which the City and its police force are entitled as governmental actors, the Court should deny Plaintiffs' request for a preliminary injunction because Plaintiffs are unlikely to succeed on the merits of their claims against the City. Plaintiffs have variously alleged they were wrongfully arrested, subjected to excessive force, and retaliated against for asserting their right to free speech.

5

But Plaintiffs have not named the individual officers who are alleged to have arrested them, used force against them, or retaliated against them. Rather, Plaintiffs' claims are alleged solely against the City, a subdivision of the State of Missouri which can only be held liable for civil rights violations under extraordinary circumstances.

Indeed, in order for the Plaintiffs to succeed on their claims against the City, it will not be enough for them to prove their rights were violated, or even that they might be violated in the future by St. Louis police officers. *See Miller v. City of St. Paul*, 823 F.3d 503, 508 (8th Cir. 2016) (plaintiff's fears that his rights might be unlawfully arrested in the future were too speculative to justify injunction). Rather, as the *City* is the only defendant in this case, Plaintiffs will not be able to succeed on their claims unless they can show the *City* caused them to be injured through its express adoption of unconstitutional policies, or through its deliberate indifference to or tacit authorization of a widespread and persistent pattern of unconstitutional misconduct. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiffs allege their injuries stem from four "policies or customs" of the City, including (1) declaring assemblies to be unlawful in the absence of force or violence; (2) enforcing vague orders of dispersal; (3) utilizing chemical agents without first issuing clear warnings and without providing persons an opportunity to safely leave the area; and (4) retaliating against persons who are recording police activity. Doc. 11 at 6.

However, Plaintiffs will not be able to prove their allegations that the City's policies are unconstitutional, or that the City has tacitly authorized or been deliberately indifferent to a widespread and persistent pattern of police misconduct. *Cf. Mettler*, 165 F.3d at 1204.

6

### A. Plaintiffs are unlikely to succeed on their claims that the City has a policy or custom of declaring lawful assemblies to be unlawful.

In this case, Plaintiffs allege the City has an unconstitutional policy or custom of "declaring an unlawful assembly (and thus ordering dispersal) in the absence of the use of force or violence." Doc. 11 at 6. Plaintiffs do not explain why, in their opinion, the police may not declare an assembly to be unlawful in the absence of force or violence. But in their First Amended Complaint, Plaintiffs allege the City "has a custom or policy of enforcing Ord. 15.52.010, defining an unlawful assembly, in an unconstitutional way," Doc. 9 ¶ 34, and that "[o]n some occasions, the protests [that were declared unlawful] did not meet the ordinance definition of an unlawful assembly," *id.* ¶ 28.

Section 15.52.010 of the City's Revised Code makes it a misdemeanor for two or more persons to assemble and "act in concert to do any unlawful act with force or violence, against the property of this City, or the person or property of another, or against the peace or to the terror of others." St. Louis Rev. Code § 15.52.010.

Similarly, section 574.040 of the Missouri Revised Statutes provides that a person shall be guilty of unlawful assembly if "he or she knowingly assembles with six or more other persons and agrees with such persons to violate any of the criminal laws of this state or of the United States with violence or force." Mo. Rev. Stat. § 574.040.

Contrary to the Plaintiffs' position, the police need not wait for a group of assembled persons to unlawfully use force or violence before declaring the assembly to be unlawful. Neither the City's code nor the Missouri state statute contains such a requirement. *See* St. Louis Rev. Code § 15.52.010 (making it unlawful for assembled persons to "act in concert to do any unlawful act . . . against the peace or to the terror of others"); Mo. Rev. Stat. § 574.040 (making it unlawful for assembled persons to "*agree*

7

. . . to violate any of the criminal laws of this state or of the United States with force or violence" (emphasis added)).

Moreover, and regardless of the existence of a specific statute or ordinance criminalizing the conduct of the persons assembled, the police have broad authority to issue content neutral orders directing assembled persons to disperse if such orders are necessary to protect the public safety or to ensure the orderly flow of traffic, *see, e.g.*, *Frye v. Kan. City Mo. Police Dep't*, 375 F.3d 785, 791 (8th Cir. 2004) (police officers who dispersed protesters from sidewalk "were entitled to decide the situation presented a danger before an accident occurred" (citing *ACORN v. St. Louis County*, 930 F.2d 591, 596 (8th Cir. 1991)); *Weed v. Jenkins*, No. 4:15-CV-140-RLW, 2016 U.S. Dist. LEXIS 109816, at *23 (E.D. Mo. Aug. 18, 2016) (plaintiff's arrest was not unlawful because it was made for "refusing to obey an officer's order related to traffic safety"); *see also* St. Louis Rev. Code § 17.16.275 (making it unlawful to impede or obstruct traffic).

However, assuming for the sake of argument that Plaintiffs are correct, and that the police are powerless to act until an assembled crowd unlawfully uses force or violence before the crowd may be ordered to disperse, their claims in this case would nevertheless fail because police had probable cause to believe that force and violence had been used by persons gathered at each of the assemblies attended by Plaintiffs and declared unlawful by the police. *See* Exhibit F at ¶¶ 11, 19-27; Exhibit G at ¶¶ 5-12; Exhibit H at ¶¶ 7-8; Exhibit I at ¶¶ 13-15; 20-22; 38-43; and Exhibit J at ¶¶ 6-7; 12-13; 18-19; 20-23.

As such, and for the foregoing reasons, Plaintiffs are not likely to succeed on the merits of their claims alleging the City has an unlawful policy or custom of declaring assemblies to be unlawful in the absence of force or violence.

### B. Plaintiffs are unlikely to succeed on their claims that the City has a policy or custom of issuing impermissibly vague dispersal orders.

Plaintiffs argue the City has an unconstitutional policy or custom of "enforcing vague orders of dispersal that do not specify the area from which dispersal is required and after an extended period of time during which individuals reasonably believe the need for dispersal has ceased." Doc. 11 at 6.

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Ky.*, 407 U.S. 104, 110 (1972). As such, so long as orders are clear enough that persons who want to comply are able to do so, they are not impermissibly vague. *Id.*

A person may be found guilty of failing to disperse in Missouri if, "being present at the scene of an unlawful assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." Mo. Rev. Stat. § 574.060.1; *see also* St. Louis Rev. Code § 17.16.275 (making it misdemeanor to impede vehicular or pedestrian traffic and fail to disperse, clear, or otherwise move upon lawful order from a police officer).

There is no requirement under Missouri law that officers "expressly designate a location where the crowd is to disperse." *State v. Mast*, 713 S.W.2d 601, 605 (Mo. App. E.D. 1986). Rather, "[a] person who knowingly fails or refuses to obey the lawful

9

command of a law enforcement officer to disperse from the scene of such unlawful assembly, is guilty of this crime." *Id.* at 605-06 (internal punctuation removed). Indeed, where a person fails to dissociate herself from an unlawful assembly, or knowingly joins or remains with such a group after it has become unlawful, she may be arrested for doing so. *See Mast*, 713 S.W.2d at 604; *see also White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (citing *Mast*).

Given that persons who remain with a group after it has become an unlawful assembly may be arrested, *see Mast*, 713 S.W.2d at 604, there is no merit to Plaintiffs' contention the that City should be responsible for persons who, having been warned of the need to disperse, erroneously come to believe that the "need for dispersal has ceased," Doc. 11 at 6. Nor will the Plaintiffs succeed on their claims that the City failed to direct them where to disperse. *Cf. Mast*, 713 S.W.2d at 605.

Even assuming for the sake of argument that the City is required to instruct persons where and how to disperse, Plaintiffs are nevertheless unlikely to succeed on their claims against the City because it is the policy of the City, when practicable, to instruct persons where to go when chemical munitions may be used to effect a dispersal. *See* Exhibit A (attached to Exhibit 1).[1] Indeed, in recent instances where assemblies have been declared unlawful and chemical munitions are planned, it has been the practice of commanders on the scene to inform those assembled of the need to disperse, as well as to direct their dispersal by suggesting routes of egress from the assembly. *See* Ex. F ¶ 1; Ex. G ¶ 32; Ex. H ¶ 11; I ¶ 43.

---

[1] Section XIII of Special Order 1-01 was promulgated pursuant to the settlement agreement reached between the parties in *Templeton v. Dotson*, Case No. 4:14-CV-2019-CEJ (E.D. Mo.), a copy of which is attached hereto as Exhibit E.

Given the foregoing, Plaintiffs are unlikely to succeed on their claims that the City has an unlawful practice of issuing unconstitutionally vague dispersal orders.

### C. Plaintiffs are unlikely to succeed on their claims that the City has a policy or custom of violating persons' rights through the use of chemical agents.

Plaintiffs argue the City has an unconstitutional policy or custom of "utilizing chemical agents without first issuing clear and unambiguous warnings that such chemical agents will be utilized; without providing individuals sufficient opportunity to heed the warnings and exit the area; without minimizing the impact of such agents on individuals who are complying with lawful law enforcement commands; and without ensuring that there is a means of safe egress from the area that it available to the individuals." Doc. 11 at 6.

There is no question the police deployed various types of chemical munitions during the weekend beginning September 15, 2017, to disperse crowds of persons who had become violent or non-compliant. *See* Ex. F ¶¶ 19-22; Ex. G ¶¶ 11-14, 27-30; Ex. I ¶¶ 48-41; Ex. J ¶¶ 16-19. Nor is there any question that police deployed pepper spray as a defensive tactic to keep violent crowds at bay, to protect themselves from injury, and to stop persons from resisting while being arrested. *See* Ex. F 12; Ex. I ¶ 12; Ex. J ¶ 14. But such uses of chemicals are not excessive under the circumstances faced by police, and Plaintiffs are not likely to succeed on their claims alleging the City has an unconstitutional policy or practice of using excessive force.

A claim alleging excessive use of force by a police officer is evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. O'Conner*, 490 U.S. 386, 388 (1989). "The touchstone of the Fourth Amendment is reasonableness under the particular circumstances presented. . . What is reasonable in the context of a potential

11

large-scale urban riot may be different from what is reasonable in the relative calm of a tavern with a dozen patrons." *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012). An objective evaluation of any particular use of force must take into consideration that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount force that is necessary in a particular situation." *Graham*, 490 U.S. at 387.

During the weekend of September 15, 2017, the police used reasonable force given the tense, uncertain, and rapidly evolving circumstances they faced. The use of pepper spray to keep hostile crowds at bay and to secure compliance during arrests was reasonable under the circumstances. *See, e.g.*, *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (use of pepper spray during traffic stop was objectively reasonable to secure compliance with police orders). And the use of chemical munitions to assist in the dispersal of violent or non-compliant crowds was also reasonable under the circumstances. *Cf. Bernini*, 665 F.3d at 1006 (use of non-lethal munitions to herd a violent crowd into a park for a mass arrest was reasonable).

Even assuming for the sake of argument that Plaintiffs will be able to show that in certain specific instances, individual officers were too quick to use pepper spray or used munitions too liberally, Plaintiffs will nevertheless fail in proving the *City* has an unconstitutional policy or practice of using excessive force.

Plaintiffs will fail on their "policy" claims because the City's official policy on the use of chemicals to disperse crowds is constitutional, and is governed by Section XIII to Special Order 1-01, which provides, where practicable, that specific warnings should be

given prior to the use of chemicals in order to provide those present an opportunity to leave the area and avoid the chemicals. *See* Exhibit C (attached to Ex. 1).

Plaintiffs will fail in their "pattern or practice" claims because they will not be able to show that there exists a widespread and persistent pattern of misusing chemical agents, or that such a pattern or practice was the "moving force" behind the injuries the Plaintiffs are alleged to have suffered in this case. *Cf. Mettler*, 165 F.3d at 1204. Indeed, the police have adhered to the law and their policies in using chemicals to disperse crowds, *see* Ex. F ¶¶ 19-22; Ex. G ¶¶ 11-14, 27-30; Ex. I ¶¶ 48-41; Ex. J ¶¶ 16-19, and officers have used pepper spray only where reasonably necessary as a defensive tactic to keep violent crowds at bay or to secure compliance during arrests, *see* Ex. F 12; Ex. I ¶ 12; Ex. J ¶ 14. Given the foregoing, Plaintiffs will not succeed on their claims against the City regarding the City's use of chemicals.

### D. Plaintiffs are unlikely to succeed on their claims that the City has a policy or custom of retaliating against persons for recording police activity.

Plaintiffs allege the City has a policy or pattern of "retaliating" against persons for recording police activity. Doc. 11 at 6. The Eighth Circuit has not recognized a right to record police activity, and thus, such a right is not clearly established such as to justify liability under 42 U.S.C. § 1983. *Szbala v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (municipality cannot be held liable for violating rights that are not clearly established). Nevertheless, the police department specifically prohibits its officers from retaliating against persons who record them, and thus, Plaintiffs will not be able to show the City's policies in this area are deficient in any way. *See* Exhibit D (attached to Ex. 1).

Nor will Plaintiffs be able to show the City has an unlawful custom or practice of retaliating against persons for recording police officers. Indeed, even assuming the right

13

to record police officers has been clearly established, such a right is not limitless, *see Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011), and does nothing to "immunize[] behavior that obstructs or interferes with effective law enforcement or the protection of public safety," *ACLU v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012); *see also Petersen v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (probable cause to arrest person is complete defense to First Amendment retaliation claim).

The City expects there will be a wealth of video evidence in this case that will show persons routinely record police activity without any suffering any interference or negative repercussions. Further, and to extent that persons who were recording police have been arrested or otherwise seized, the City expects the evidence will show that such persons were violating the law. *Cf. Petersen*, 754 F.3d at 602. As such, and given that the City's policies are lawful on their face and that persons whose actions are otherwise lawful are freely allowed to record police activity, Plaintiffs will not be able to show the City has an unconstitutional policy or practice of retaliating against persons as alleged.

**III.     Plaintiffs cannot show they will be irreparably harmed.**

For the same reasons Plaintiffs lack standing to assert their claims for injunctive relief, they cannot show they will be irreparably harmed if an injunction is not entered. As argued above in Part I, the future injuries Plaintiffs claim to fear are entirely speculative, and cannot justify the entry of an extraordinary remedy such as an injunction against a governmental entity. *Rizzo*, 423 U.S. at 604-05; *see also Laird*, 408 U.S. at 13-14; *Miller*, 823 F.3d at 508; *Zanders*, 573 F.3d at 593-94. If Plaintiffs are arrested or seized in the future, and believe their rights have been violated, they will be free to file an

action for damages under 42 U.S.C. § 1983. As such, they have an adequate remedy at law, and the Court should deny their request for an injunction.

**IV.     An injunction would not be in the public interest.**

Plaintiffs argue an injunction is necessary to protect the public's right to protest. However, the police have not been preventing persons from protesting so long as they remain peaceful. Indeed, by Plaintiffs' own account, more than one thousand people have engaged in protests since the Stockley verdict was announced. Doc. 9 ¶ 41. As such, there is no reason to believe an injunction is necessary to protect the public's right to protest.

Conversely, if an injunction were entered, the public interest would suffer because the police would not be able to prevent property damage and other unlawful behavior by crowds before it occurs. It would be legally inappropriate for the Court to micromanage a local police department's response to protests that may suddenly become violent and riotous. *See Rizzo*, 423 U.S. at 378-79. But micromanagement would also be dangerous for everyone concerned. Indeed, given that protests over the past several weeks have at times become suddenly violent, dangerous, and riotous, it is folly to believe the Court has the ability to script the police's response to future such protests. Just as hindsight is not the proper standard for evaluating the reasonableness of force used by police officers in the past, *cf. Graham*, 490 U.S. at 396, a prescriptive injunction is not a proper vehicle to limit police actions in future protests the circumstance of which are impossible to foresee.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' request for a preliminary injunction, and grant Defendant any such other and further relief the Court deems fair and appropriate.

Respectfully submitted,

JULIAN BUSH,
City Counselor

  /s/ H. Anthony Relys
Thomas R. McDonnell, #38336MO
H. Anthony Relys, #63190MO
Assistant City Counselor
City Hall
1200 Market Street, Room 314
St. Louis, MO  63103
Tel: (314) 622-3361
Fax: (314) 622.4956
McDonnellT@stlouis-mo.gov
RelysT@stlouis-mo.gov

*Attorneys for Defendant City of St. Louis*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2017, the foregoing **Defendant City of St. Louis's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction** was served via the Court's electronic filing system upon all counsel of record.

  /s/ H. Anthony Relys
H. Anthony Relys
Assistant City Counselor