

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MALEEHA AHMAD, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case No. 4:17-CV-2455-CAS
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
CITY OF ST. LOUIS,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)

## DECLARATION OF JEROME V. BAUMGARTNER

I, Jerome V. Baumgartner, declare as follows:

1. I am over the age of 18.  I have personal knowledge of the facts set forth in this declaration and could and would testify competently to those facts.

2. I am Manager of Planning and Research of the City of St. Louis Police Division.

3. Among my responsibilities is the management of Special Orders, as issued by the Chief of Police, and supervision of the Department's unit on the Commission on Accreditation for Law Enforcement Agencies ("CALEA").

4. Special Order 1-01 is the Use of Force policy of the Department, and Section 1 of the Order, attached as Exhibit A, outlines the philosophy for use of force by officers.

5. Special Order 1-01 requires periodic review of the Use of Force Policy, in relevant part:

   a. All commissioned officers are issued copies of and instructed in the use of force policies by Academy staff before being authorized to carry a weapon.

   b. The "Use of Force Policy Statement" is sent monthly, to all officers, who electronically acknowledge receipt of it through the Policy Acknowledgement SyStem.

     c.  Commanders and supervisors periodically review the Use of Force policy and all

        relevant procedures with all personnel under his/her command.

6. On January 7, 2015, a temporary directive on the use of chemical agents for dispersing

    groups engaged in peaceful, non-criminal activity was put in immediate effect, pursuant

    to the matter then before the U.S. District Court, and is attached as Exhibit B.

7. This temporary directive was sent to all commissioned officers via the Policy

    Acknowledgement SyStem for review and acknowledgement of it.

8. This temporary directive became Section XIII of Special Order 1-01, issued July 10,

    2015, and outlines the policy for deployment of chemical agents for crowd dispersal, and

    identifies the restrictions, consistent with the settlement agreement issued by U.S. District

    Court; it is attached as Exhibit C.

9. Section XIII of Special Order 1-01 was sent to all commissioned officers via the Policy

    Acknowledgement SyStem for review and acknowledgement of it. .

10. Special Order 1-01, it its entirety, was sent to all commissioned officers on October 21,

    2016 and August 31, 2017 via the Policy Acknowledgement SyStem, for review and

    acknowledgement of it.

11. Special Order 1-06 titled "Recording of Police Activity" was issued November 6, 2013,

    and is attached as Exhibit D.

12. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

    and correct.

Dated this 11th day of October, 2017.


By:   /s/ _____

**METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS**
**OFFICE OF THE CHIEF OF POLICE**
**SPECIAL ORDER**

| | | | |
|---|---|---|---|
| **Date Issued:** | September 9, 2014 | **Order No.:** | Section I of SO 1-01 |
| **Effective Date:** | September 9, 2014 | **Expiration:** | Indefinite |
| **Reference:** | | | |
| **CALEA Standards:** | 1.3.1, 1.3.2, 1.3.5; 1.3.12 | | |
| **Cancelled Publications:** | Section I of SO 1-01 dated June 20, 2013 | | |
| **Subject:** | PHILOSOPHY FOR USE OF FORCE AND PERIODIC REVIEW OF POLICY | | |
| **To:** | ALL BUREAUS, DISTRICTS AND DIVISIONS | | |

PURPOSE: To outline policy and procedures for the use of force by officers.

A.  INTRODUCTION

   The policy and procedures in this Order are for Departmental use only and do not apply in any criminal or civil proceeding; policy/procedural violations will form the basis for Departmental action only. In addition, the policy and procedures are not to be construed as creating a higher legal standard of safety or care in an evidentiary sense with respect to third party claims.

B.  PHILOSOPHY

   1.  It is the policy of the Department that a reverence for human life will guide officers in the use of deadly force. Deadly force will only be used when necessary to protect the lives of officers or other persons; it is never justified solely to protect property. **(1.3.2)**

   2.  Officers will use the least amount of force reasonably necessary to accomplish their lawful objectives while safeguarding their own lives and the lives of others. Deadly force will be a last resort, and will only be exercised when all reasonable alternatives have been exhausted or appear impractical. **(1.3.1)**

   3.  An officer will take care that he/she does not, by his/her own actions, create a situation in which the use of deadly force becomes necessary (e.g., jumping into the path of a fleeing vehicle in an attempt to stop same).

C.  PERIODIC REVIEW OF USE OF FORCE POLICY  **(1.3.12)**

   1.  All commissioned officers will be issued copies of and instructed in the use of force policies by the Academy staff before being authorized to carry a weapon. The issuance and instruction will be documented.

   2.  Monthly, the CALEA Accreditation Unit will disseminate the Department "Use of Force Policy Statement" to all officers via the Policy Acknowledgement SyStem (PASS). CALEA will monitor compliance with the acknowledgement of the Policy Review.

   3.  Commanders and Supervisors will periodically review the Use of Force Policy and all relevant procedures with all commissioned personnel under his/her command.

I-1



DEFENDANT'S EXHIBIT A

**SO 1-01**

D.   <u>RENDERING AID AFTER USE OF FORCE</u>  (1.3.5)

  1.   Any time a member uses force, appropriate medical aid will be provided for any person(s) involved.  This does not mean that all persons upon whom any force was used need to be immediately evaluated by medical personnel.  It may include increased observation to detect changes in physical condition, first aid, evaluation by paramedics, or transport to a medical facility, depending on circumstances.

  2.   Any officer who may have caused injury by lethal force, after the immediate threat has ceased, will approach the suspect to determine if life saving measures and/or appropriate medical aid should be initiated.  If an officer determines immediate medical aid should be rendered, the officer will notify responding medical units, render the scene safe, and provide for appropriate medical first aid to the suspect.

DSD/vlt
251-13-00027

I-2

Per the authority of Colonel D. Samuel Dotson
Chief of Police

## DIRECTIVE 2015-01-07

### U.S. DISTRICT COURT TEMPORARY RESTRAINING ORDER ON THE USE OF CHEMICAL AGENTS FOR DISPERSING GROUPS ENGAGED IN PEACEFUL, NON-CRIMINAL ACTIVITY

Temporary Directive in Effect until Further Notice

Effective immediately, per order of the U.S. District Court, Eastern District of Missouri, the St. Louis Metropolitan Police Department, St. Louis County Police Department, and the Missouri State Highway Patrol have been directed to **NOT** enforce any policy or practice that grants law enforcement officials the authority or discretion to:

1. utilize tear gas, inert smoke, pepper gas, or other chemical agents (collectively, "chemical agents") for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis unless ALL of the following requirements are taken:

    a. first issuing clear and unambiguous warnings (in conjunction with a statement of why the area is being cleared, e.g., "you are impeding the flow of vehicular traffic") that such chemical agents will be utilized;

    b. providing the individuals sufficient opportunity to heed the above-mentioned warnings and exit the area;

    c. minimizing the impact of such chemical agents on individuals who are complying with lawful law enforcement commands; and

    d. ensuring that there is a means of safe egress from the area that is available to the individuals; and

2. utilize chemical agents on individuals engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis for the purpose of frightening them or punishing them for exercising their Constitutional rights.



**METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS**
**OFFICE OF THE POLICE COMMISSIONER**
**SPECIAL ORDER**

| | | | |
|---|---|---|---|
| **Date Issued:** | **July 10, 2015** | **Order No.:** | **Section XIII of SO 1-01** |
| **Effective Date:** | **July 10, 2015** | **Expiration:** | **Indefinite** |

**Reference:**

**CALEA Standards:**          **1.3.1; 1.3.4; 1.3.6; 1.3.9**

**Cancelled Publications:**   **Paragraph A in Section V of SO 4-02, issued January 22, 2015**
**Subject:**                          **DEPLOYMENT OF CHEMICAL AGENTS FOR CROWD**
                                           **DISPERSAL**

**To:**                               **ALL BUREAUS, DISTRICTS AND DIVISIONS**

PURPOSE: To outline a policy for the deployment of chemical agents for crowd dispersal.

A.   CHEMICAL AGENT EQUIPMENT

  1.   Mobile Reserve/Special Weapons and Tactics (MR/SWAT) is issued a range of equipment
       that includes, but is not limited to, inert smoke grenades, Oleoresin Capsicum (OC) and
       Chlorobenzalmalononitrile (CS) gas grenades, and launched OC, CS, and PepperBalls ©.

  2.   High-capacity, extended-range OC spray also is issued to Sergeants and is available at the
       Area Stations.

B.   AUTHORIZATION FOR USE

  1.   Any use of chemical agents for crowd dispersal requires the briefing and express consent of
       the Chief of Police or the Assistant Chief of Police.  If neither the Chief of Police nor the
       Assistant Chief of Police is readily available, another Deputy Chief may grant approval.
       Only in situations that turn violent, as described in Paragraph C, may the Incident
       Commander deploy chemical agents without this approval.

C.   RESTRICTIONS ON DEPLOYMENT

  1.   Chemical agents will not be used for the purpose of frightening or punishing individuals for
       exercising their constitutional rights.

  2.   Per a settlement agreement in U.S. District Court, chemical agents will not be used to
       disperse groups engaged in non-criminal activity without satisfying all of the following
       elements:

     a.   The Incident Commander ensures that clear and unambiguous warnings are issued
          stating that chemical agents will be utilized, in conjunction with a statement about
          why the area is being cleared, (e.g., "You are impeding the flow of vehicular traffic");

     b.   Individuals are provided sufficient opportunity to heed the above-mentioned warnings
          and exit the area;


DEFENDANT'S
EXHIBIT
C

**SO 1-01**

    c.    The impact of chemical agents on individuals who are complying with lawful law enforcement commands is minimized; and

    d.    Ensuring and announcing a means of safe egress from the area that is available to individuals.

3.    The above provisions do not apply to situations that turn violent when persons at the scene present an imminent threat of bodily harm to persons, or of damage to property, and when law enforcement officials must defend themselves or other persons or property against such imminent threats.

D.    <u>REQUIRED REPORTING</u>

1.    When chemical agents are deployed for crowd dispersal, the Incident Commander will ensure that an I/LEADS report is created to document their use. Details must include the following:

    a.    Identity of the Commander approving deployment;
    b.    Time when warnings were issued;
    c.    Specific criminal activity prompting deployment;
    d.    Instructions given regarding the means of egress;
    e.    Type and number of chemical agent munitions/rounds deployed; and
    f.    Time when chemical agent(s) was(were) deployed.

DSD/jb
251-15-00073

XIII-2

### METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS
### OFFICE OF THE CHIEF OF POLICE
### SPECIAL ORDER

| | | | |
|---|---|---|---|
| **Date Issued:** | November 6, 2013 | **Order No.:** | SO 1-06 |
| **Effective Date:** | November 6, 2013 | **Expiration:** | Indefinite |

**Reference:**

**CALEA Standards:**

**Cancelled Publications:**

**Subject:**      **RECORDING OF POLICE ACTIVITY**

**To:**      **ALL BUREAUS, DISTRICTS AND DIVISIONS**

<u>PURPOSE:</u>    This policy provides officers with guidance for dealing with situations in which they are being recorded, to include videotaping, audio-taping, or both, by members of the public or the media.

By Order of:

*D. Samuel Dotson*

D. SAMUEL DOTSON
Colonel
Chief of Police



DEFENDANT'S EXHIBIT D

**METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS**
**OFFICE OF THE CHIEF OF POLICE**
**SPECIAL ORDER**

| | | | |
|---|---|---|---|
| **Date Issued:** | November 6, 2013 | **Order No.:** | SO 1-06 |
| **Effective Date:** | November 6, 2013 | **Expiration:** | Indefinite |

**Reference:**

**CALEA Standards:**

**Cancelled Publications:**

**Subject:**  RECORDING OF POLICE ACTIVITY

**To:**  ALL BUREAUS, DISTRICTS AND DIVISIONS

<u>PURPOSE:</u>  This policy provides officers with guidance for dealing with situations in which they are being recorded, to include videotaping, audio-taping, or both, by members of the public or the media.

<u>POLICY:</u>  It is the policy of the St. Louis Metropolitan Police Department to ensure the protection and preservation of every person's Constitutional rights.

Members of the public, including media representatives, have an unambiguous First Amendment right to record officers in public places, as long as their actions do not interfere with the officer's duties or the safety of officers or others.  SLMPD employees will not prevent or prohibit any person's ability to observe, photograph, and/or make a video recording (with or without simultaneous audio recording) of police activity that occurs in the public domain so long as the person's location, actions and/or behavior do not create a legitimate, articulable threat to Officer safety, or an unlawful hindrance to successful resolution of the police activity.

A.  <u>DEFINITIONS</u>

1.  *Media:* The storage source for visual or audio recordings, whether by film, analog, or digital means.

2.  *Photographing:* The act of capturing and storing a still image, whether in an electronic/digital format, or on any type of light sensitive film (e.g., traditional 35mm film).

3.  *Recording:* Capturing of images, audio, or both, by means of a video camera, cell phone, audio recorder, or other device.

4.  *Video Recording:* The act of capturing a series of images that, when replayed in succession, reproduce a sequence of activities in motion.  Video recordings may be stored on a length of light-sensitive film, a videotape cassette, or in a digital format (e.g., removable memory card), and may or may not contain a simultaneous audio recording.

5.  *Video Recording Device:* For the purposes of this Order, a Video Recording Device includes, but is not limited to, any device capable of capturing a still or moving image(s), regardless of whether or not a simultaneous audio recording is included.  Examples may include any of the following devices:

**SO 1-06**

    a.    A cellular telephone of any make, model, or manufacturer, including those devices referred to as "Smart Phones;"

    b.    A Personal Digital Assistant, also known as a Personal Data Assistant or PDA;

    c.    A tablet style mobile computer, commonly referred to as a "tablet," such as an Apple iPad or a BlackBerry; or

    d.    Any camera, whether still-photo and/or video, of any make, model, or manufacturer regardless of whether or not the device is capable of capturing a simultaneous audio recording, and regardless of how the device stores the images it captures.

B.    <u>GENERAL INFORMATION</u>

    1.    Persons who are lawfully in public spaces or locations where they have a legal right to be present—such as their home, place of business, or the common areas of public and private facilities and buildings—have a First Amendment right to record things in plain sight or hearing, to include police activity. Police may not threaten, intimidate, or otherwise discourage or interfere with the recording of police activities. Officers should assume that they are being recorded at all times when on duty in a public space.

    2.    As a result, officers must understand that any bystander has an absolute right to photograph and/or video record the enforcement actions of any Police Officer so long as the bystanders actions do not:

        a.    Place the safety of the bystander, or of any Police Officer(s), witness(es), victims(s), or suspect(s), in jeopardy;

        b.    Hinder the execution or performance of an Officer's official duties;

        c.    Interfere with or violate any law, ordinance or code, criminal or traffic;

        d.    Obstruct police actions while engaging in a recording. For example, individuals may not interfere through direct physical intervention, tampering with a witness, or by persistently engaging an officer with questions or interruptions. The fact that recording and/or overt verbal criticism, insults, or name-calling may be annoying, does not of itself justify an officer taking corrective or enforcement action or ordering that recording be stopped, as this is an infringement on an individual's right to protected speech;

        e.    Unreasonably impede the movement of emergency equipment and personnel or the flow of vehicular or pedestrian traffic; or

        f.    Attempt to incite an immediate breach of the peace or incite others to commit a violation of the law.

C.    <u>ARREST</u>

    1.    Persons who violate the foregoing restrictions should be informed that they are engaged in prohibited activity and given information on acceptable alternatives, where appropriate, prior to making an arrest.

    2.    Arrest of a person who is recording officers in public shall be related to an objective, articulable violation of the law unrelated to the act of recording. The act of recording does not, in itself, provide grounds for detention or arrest.

**SO 1-06**

3. Arrest of an individual does not provide an exception to the warrant requirement justifying search of the individual's recording equipment or media. While equipment may be seized incident to an arrest, downloading, viewing, or otherwise accessing files requires a search warrant. Files and media shall not be erased under any circumstances.

D. CONFISCATON OF RECORDING DEVICES AND MEDIA

1. Recording equipment may not be confiscated unless the recording party is arrested, and the recording is to be held as evidence for the crime in which the recording party was arrested. Additionally, officers may not order an individual to show recordings that have been made of enforcement actions or other police operations.

2. Nothing in this Order should be construed by Officers as an elimination of their ability to seek out, collect, or otherwise gather evidence in the course of a criminal investigation. If an Officer has probable cause to believe that a bystander is in possession of any still photographs/images, video recordings, and/or audio/sound recordings that are, or could reasonably be considered evidence related to a crime and/or the identification of a person involved in a crime, the officers should:

 a. Advise and receive instructions from a supervisor.

 b. Ask the person in possession of the recording if he or she will consent to voluntarily and temporarily relinquish the recording device or media so that it may be viewed and/or copied as evidence.

 c. In exigent circumstances, in which it is reasonable to believe that the recording will be destroyed, lost, tampered with or otherwise rendered useless as evidence before a warrant can be obtained, the recording device or media may be confiscated under a temporary restraint. A warrant must be obtained in order to examine and copy the recording and the chain of custody must be clearly documented per department policy.

 d. In exigent situations where it is objectively reasonable to believe that immediate viewing of recordings is necessary to prevent death or serious bodily harm of another before a warrant can be authorized, the recording device or media may be confiscated and viewed.

 e. Whenever a recording device or media is seized without a warrant or obtained by consent, the seized item shall be held in police custody no longer than reasonably necessary for the police, acting with due diligence, to obtain a warrant. The device must be returned at the earliest possible time and its owner/operator given instruction on how it can be retrieved. In all cases property receipts shall be provided to the owner.

3. Supervisory Responsibilities

 A supervisor should be summoned to any incident in which an individual recording police activity is going to be, or will most likely be, arrested or when recording equipment may be seized without a warrant or lawful consent.

DSD/klh/wcw
251-13-00112