**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MALEEHA AHMAD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-2455-RLW |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As directed by the Court in its Order dated September 25, 2017, Plaintiffs respectfully submit these proposed findings of fact and conclusions of law.

**I.      FINDINGS OF FACT**

1.      A Missouri state court acquitted St. Louis Metropolitan police officer Jason Stockley of first-degree murder on the morning of Friday, September 15, 2017. (ECF No. 11-1.)

2.      Stockley, who is white, had been charged and prosecuted by the St. Louis Circuit Attorney for killing Anthony Lamar Smith, who was African American, in late 2011. Stockley shot Smith—whom he suspected had engaged in a drug deal—at point-blank range after a brief car chase. Stockley asserted the shooting had been in self-defense; the prosecution argued otherwise. (*Id.*)

3.      Some people swiftly condemned the verdict, which they view as a product of institutional racism and unfair bias in favor of the police. (ECF No. 11-7 at ¶ 3; ECF No. 11-16 at ¶ 2.)

4.      Public protests and other public actions began on September 15 and have occurred every day since September 15. They are planned for the foreseeable future. (ECF No. 21-1.)

5.      St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with a chemical agent without warning at a criminal justice-related protest in November 2014. (ECF No. 11-11 at ¶ 29.)

6.      St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with a chemical agent without warning at a criminal justice-related protest in May 2015. (ECF No. 11-13 at ¶ 13.)

7.      St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with a chemical agent without warning at a criminal justice-related protest in August 2015. (ECF No. 11-11 at ¶ 31; ECF No. 11-23 at ¶ 2.)

8.      St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with a chemical agent without warning at a criminal justice-related protest in July 2017. (ECF No. 11-13 at ¶ 13.)

9.      On the afternoon of September 15, on multiple occasions, St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with a chemical agent without giving a warning. (ECF No. 11-2 at ¶ 10; ECF No. 11-3 at ¶ 17; ECF No. 11-4 at ¶ 6; ECF No. 11-5 at ¶ 9; ECF No. 11-13 at ¶ 4; ECF No. 11-16 at ¶ 7; ECF No. 11-23 at ¶ 3.)

10.     On the evening of September 15, St. Louis Metropolitan police officers deployed multiple chemical agents against nonviolent protestors and observers without giving a warning. (ECF No. 11-6 at ¶¶ 20, 22, 25; ECF No. 11-7 at ¶ 16; ECF No. 11-9 at ¶¶ 4-6; ECF No. 11-10 at ¶¶ 5-7; ECF No. 11-11 at ¶¶ 11, 12, 15, 20, 26; ECF No. 11-18 at ¶ 5.)

11.     On the evening of September 17, St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with chemical agents without giving a warning. (ECF

No. 11-8 at ¶¶ 8, 9, 15, 22; ECF No. 11-10 at ¶¶ 10, 14; ECF No. 11-12 at ¶¶ 8, 20, 21, 22, 25; ECF No. 11-13 at ¶¶ 6, 7, 8, 11; ECF No. 11-15 at ¶¶ 9, 15, 16, 17; ECF No. 11-17 at ¶¶ 9, 12; ECF No. 11-18 at ¶¶ 10, 18; ECF No. 11-19 at ¶¶ 5, 8, 9, 10, 11, 12; *see also* ECF No. 11-20 at ¶¶ 9, 14; ECF No. 11-21 at ¶¶ 10, 12, 13, 14; ECF No. 11-22 at ¶¶ 8, 12, 13; ECF No. 11-23 at ¶ 4.)

12.    On the evening of September 29, St. Louis Metropolitan police officers sprayed nonviolent protestors and observers with chemical agents without giving a warning. (ECF No. 29 at ¶¶ 9, 10.)

13.    Since September 15, St. Louis Metropolitan police officers have retaliated against livestreamers and videographers by deleting video, conducting unlawful searches, damaging video equipment, using unnecessary force when conducting arrests, and deploying chemical agents. (ECF No. 11-5 at ¶¶ 7, 8, 9; ECF No. 11-6 at ¶¶ 12; ECF No. 11-11 at ¶ 10; ECF No. 11-12 at ¶¶ 20, 21, 22; ECF No. 11-13 at ¶¶ 4, 11; ECF No. 11-14 at ¶¶ 3-17; ECF No. 11-15 at ¶¶ 2, 4, 14-19; ECF No. 11-19 at ¶ 11; ECF No. 29 at ¶¶ 7, 8, 9; Attachments to ECF Nos. 11-5 and 11-6, filed via DVD with the Court; Attachment to ECF No. 29, filed via DVD with the Court.)

14.    On the evening of September 17, SLMPD officers also employed a tactic known as "kettling," trapping protestors (as well as members of the media, legal observers, nearby residents, and an undercover police officer) in the intersection of Washington and Tucker Avenues. (*See generally* ECF Nos. 11-8, 11-10, 11-12, 11-13, 11-15, 11-17, 11-18, 11-19, 11-20, 11-21, and 11-22.)

15.    The officers wore personal protective equipment, gas masks and helmets, and they carried full-body shields and batons, which many officers beat rhythmically on the

ground. (*See, e.g.*, ECF No. 11-15 at ¶ 11; ECF No. 11-18 at ¶ 11; Attachment to ECF No. 11-15, filed via DVD with the Court.)

16.     Though there was no threat to their safety, SLMPD officers fanned out along each of the crosswalks, cutting off all routes of egress, and then rushed and arrested the hundred or so people who got caught inside the kettle. Officers sprayed arrestees who were already compliant, subdued, and kneeling or lying on the ground. Many of the arrestees sustained serious injuries. (*See generally* ECF Nos. 11-8, 11-10, 11-12, 11-13, 11-15, 11-17, 11-18, 11-19, 11-20, 11-21, and 11-22; *see also* ECF No. 11-23 at ¶ 4.)

17.     The officers did not provide to the people adequate warning or opportunity to disperse before kettling them. In fact, before the kettle, individual officers had directed pedestrians *toward* the intersection where they formed the kettle. (*See* ECF No. 11-12 at ¶ 10; ECF No. 11-13 at ¶ 6; ECF No. 11-20 at ¶ 7; ECF No. 11-22 at ¶ 6.)

18.     The police chanted "Whose streets? Our streets!" after they had arrested the nonviolent people they had trapped and subdued. (ECF No. 11-10 at ¶ 11; Attachment to ECF No. 11-12, filed via DVD with the Court.)

19.     At times, St. Louis Metropolitan police officers have given pedestrians no warning at all before deploying chemicals indiscriminately or taking other actions of force. (*See, e.g.*, ECF No. 11-2 at ¶¶ 10, 13; ECF No. 11-3 at ¶¶ 17-21; ECF No. 11-14 at ¶¶ 6-8; ECF No. 11-16 at ¶ 7.)

20.     At other times, the police have provided vague, haphazard instructions in some attempt to enforce the City's "unlawful assembly" and "failure to disperse" ordinances. These warnings have been either far away from the sites of the officers' eventual enforcement, based on insufficient cause, and/or issued simultaneously with the use of force or at a

point too remote in time to justify their actions. (*See, e.g.*, ECF No. 11-13 at ¶¶ 5, 6; ECF
No. 11-15 at ¶ 8; ECF No. 11-20 at ¶ 7; ECF No. 11-21 at ¶ 7; ECF No. 11-23 at ¶ 4; *see
also* ECF No. 11-14 at ¶¶ 10, 16, 17.)

21.     On the evenings of September 17 and October 3, St. Louis Metropolitan police officers
        have arrested not only nonviolent protestors and observers, but also people who were not
        engaged in protest or observation but who just happened to be standing or walking near
        protestors and observers. (*See* ECF Nos. 11-20, 11-21, 11-22, 11-23 and 28.)

22.     Plaintiffs have refrained from expressive activity they would otherwise have engaged in
        because they reasonably fear enforcement of unconstitutional customs by SLMPD,
        including the deployment of chemical munitions without warning; the threat of and use of
        force in retaliation for recording or observing police action; and the arbitrary enforcement
        of the City's "unlawful assembly" and "failure to disperse" ordinances. (*See* ECF No. 11-
        2 at ¶¶ 21-25; ECF No. 11-3 at ¶¶ 25-28; ECF No. 11-14 at ¶¶ 18-21.)

23.     The Court finds the evidence presented by Plaintiffs to be credible.

24.     The evidence currently before the Court indicates that these constitutional violations are
        not one-time occurrences, but appear instead to be part of an ongoing practice.

## II.    CONCLUSIONS OF LAW

1.      "The right to associate does not lose all constitutional protection merely because some
        members of the group may have participated in conduct . . . that itself is not protected."
        *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982); *see also Citizens Against
        Rent Control Coal. for Fair Housing v. City of Berkeley,* 454 U.S. 290, 294 (1981)

2.      "[P]eaceable assembly for lawful discussion cannot be made a crime." *De Jonge v.
        Oregon*, 299 U.S. 353, 365 (1937).

3.      The First Amendment protects the right to engage in protest against the police, or

anything else, in traditional public for a, including streets and sidewalks. *See, e.g., United*

*States v. Grace*, 461 U.S. 171, 179 (1983); *Hague v. Committee for Indus. Org.*, 307 U.S.

496, 515-16 (1939) (Roberts, J., concurring).

4.      The First Amendment protects the right to record the police in performance of their

official duties, to disseminate those recordings via video or photograph, and to use them

to criticize the police. *See, e.g., Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir.

2017); *Turner v. Lieutenant Driver*, 848 F.3d 678, 687-88 (5th Cir. 2017); *ACLU of Ill. v.*

*Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir.

2011); *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of*

*Seattle*, 55 F.3d 436 (9th Cir. 1995).

5.      The St. Louis Metropolitan Police Department is a department of the City of St. Louis,

which is responsible for its customs and policies.

6.      If the City of St. Louis has a custom of deploying chemical munitions against protestors

engaged in police-related protests and those observing and recording such protests

without adequate warning and opportunity to disperse, that would be a violation of the

right to procedural due process under the Fourteenth Amendment.

7.      If the City of St. Louis has a custom of retaliating against people observing and recording

police in the course of their public duties, that would be a violation of the rights of free

speech, freedom of assembly, and the right to petition the government for grievances

guaranteed by the First Amendment and a violation of the right to procedural due process

under the Fourteenth Amendment; and if one of the ways in which that retaliation is

effectuated is by search or seizure, that would be a violation of the right to be free of unreasonable search and seizure guaranteed by the Fourth Amendment.

8.  If the City of St. Louis has a custom of enforcing its "unlawful assembly" and "failure to disperse" ordinances in an arbitrary and retaliatory way, including in the absence of the use of force or violence and without notice and an opportunity to disperse, that would be a violation of the rights of free speech, freedom of assembly, and the right to petition the government for grievances guaranteed by the First Amendment and a violation of the right to procedural due process under the Fourteenth Amendment. *See FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012); *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038, 1041 (8th Cir. 2012); *Kolender v. Lawson*, 461 U.S. 352, 360 (1983); *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999) (plurality opinion).

9.  When considering whether to issue a preliminary injunction, this Court determines: (a) whether the plaintiffs are likely to prevail on the merits, (b) if there exists a threat of irreparable harm to the plaintiffs absent the injunction, (c) the balance between this harm and the injury that the injunction's issuance would inflict upon the defendant, and (d) what is in the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc*); accord Abdullah v. Cty. of St. Louis*, 52 F. Supp. 3d 936, 943 (E.D. Mo. 2014).

10.  Because Plaintiffs challenge a municipal policy or custom, not a statute, they demonstrate likelihood of success if they can show a "fair chance of prevailing." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008); *accord Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d

1030, 1040-41 (8th Cir. 2016) (recognizing that "fair chance" standard controls in the Eighth Circuit).

11.    Based on the evidence presented to the Court at the preliminary injunction hearing and as sworn declarations, Plaintiffs have demonstrated that they are likely to succeed on their claims that the City of St. Louis, through SLMPD, has engaged in unconstitutional customs and that these customs are the "moving force" behind violations of the rights of Plaintiffs and the putative Class secured by the First, Fourth, and Fourteenth Amendments.

12.    "[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir. 1996).

13.    The balance of equities favors Plaintiffs and the protection of constitutional rights, particularly because protests are planned for the foreseeable future.

14.    The City of St. Louis has no significant interest in enforcing unconstitutional customs and policies.

15.    The Court concludes the following limited injunctive relief is appropriate and believes it will adequately prevent irreparable harm until a full trial on the merits without unduly burdening Defendant:

Defendant shall:

A.    Ensure that all St. Louis Metropolitan Police Department (SLMPD) personnel respect the First Amendment rights of all persons, including:

        i.    The right to observe and record officers in the public discharge of their duties in all traditionally public spaces, including sidewalks, parks, and locations of

8

        lawful public protests, as well as any other areas where individuals otherwise

        have a legal right to be present, including an individual's home or business

        and common areas of public and private facilities and buildings;

    ii.    The right to criticize or complain about police conduct both publicly and

        privately without being subject to retaliation; and

    iii.    The right to engage in lawful public protest.

B.    Ensure that SLMPD policy and training makes clear what conduct is considered "obstruction" or "interference" with a law enforcement officer with specific examples, to ensure that SLMPD officers do not unreasonably claim that an individual's presence amounts to the offense of obstructing or interfering with a law enforcement officer, or otherwise violates the law.

C.    Ensure that, where a person's location while observing, recording, or protesting is actually causing obstruction or interference with law enforcement, the officers recommend a less-intrusive location from which the bystander may continue to observe, record, and/or protest and give the individual a reasonable opportunity to comply prior to taking further enforcement action.

D.    Permit individuals to record officer activity by camera, video recorder, cell phone recorder, or any other means and not consider the use of a recording device during a police encounter itself to be a threat to officer safety or a basis to require a person to refrain from recording or to put away his or her recording device.

E.    Ensure that officers do not search, seize, or otherwise coerce production of recorded sounds, images, or videos without obtaining a warrant except that, where an officer has a reasonable belief that a bystander or witness has captured a recording of critical evidence

related to a felony and the exigencies of the circumstances demand it, the officer may secure

such evidence for no more than 12 hours while a search warrant is obtained.

  F.  Ensure that property seized pursuant to the foregoing provision (paragraph 5) is

not searched nor its contents reviewed without first obtaining a search warrant.

  G.  Ensure that officers do not coerce individuals to consent to the search or seizure

of their recording devices or recordings.

  H.  Ensure that officers do not intentionally destroy cameras, other recording

devices, sounds, images, or videos, and that they do not order an individual to destroy the same

or otherwise cause such destruction.

  I.  Ensure that officers do not unlawfully interfere with individuals gathering in

groups for public protests and demonstrations in a lawful manner and location.

  J.  Ensure that officers do not treat protestors differently based on the content or

viewpoint of their speech or expression.

  K.  Ensure that all law enforcement officers employed by SLMPD during public

demonstrations have received appropriate training, including de-escalation techniques, key

concepts of the National Incident Management System command and management, including

Incident Command Systems, multiagency coordination systems, and policing consistent with the

First Amendment.

  L.  Ensure that officers do not take any action in retaliation for individuals lawfully

exercising their right to witness, observe, record, comment on, or protest police activity. Police

action includes detaining, searching, arresting, issuing a citation or threatening a citation, issuing

a threat of arrest or use of force, or using force in response to non-criminal statements or other

expressive conduct, when the officer would not have taken such action in the absence of the statements or expressive conduct.

M.      Ensure that only the Police Commissioner or the Assistant Chief may declare an assembly to be unlawful. Orders to disperse may be issued, if at all, only following such a declaration in a manner that can reasonably be heard and only by a supervisor.

N.      Ensure that an assembly is not declared unlawful in the absence of the use of force or violence by those assembled.

O.      Ensure that any order to disperse notifies individuals of a means of safe egress from the area that is available to individuals and describing with specificity the area to which the dispersal order applies and that it is not enforced with the use of force or arrest more than five minutes after it has been most recently announced.

P.      Ensure that officers obtain supervisory approval, to be documented as soon as practicable, before issuing any citations or making arrests related to public protest activity, including violation of any state or local law, such as St. Louis Code of Ords. § 15.52.010 (unlawful assembly) and 17.16.275 (dispersal); Mo. Rev. Stat. § 574.060 (refusal to disperse); § 574.040 (unlawful assembly); or ad hoc police rule limiting the time, place, and manner of lawful public assembly, *see Abdullah v. Cty of St. Louis*, 52 F. Supp. 3d 936 (E.D. Mo. 2014) (issuing a preliminary injunction against the Missouri Highway Patrol and Saint Louis County with regard to the "keep-moving" policy).

Q.      Ensure that officers obtain supervisory approval, to be documented as soon as practicable, before taking any action set forth below. In each of these circumstances, if reasonably practical, a supervisor shall respond to the scene and assess the situation in person.

At a minimum, supervisors must be present to approve arrests and other actions prior to arrestees being transported to a holding facility, absent exigent circumstances to be documented as soon as practicable:

      i.      Issuing any citation or making any arrest related to the use of a recording device;

      ii.     Issuing any citation or making any arrest of any member of the media, whether formally credentialed or not, including citizen-journalists and live-streamers;

      iii.    Performing any warrantless seizure of a recording device or recording; and

      iv.    Taking any other significant action involving recording devices or recordings.

R.    Ensure that officers justify each separate application of chemical agents.[1]

S.    Ensure that officers will issue a verbal warning to the subject, fellow officers, and other individuals present prior to using any chemical agent and that officers will wait a reasonable amount of time after providing the warning to allow the subject to comply with the warning.

T.    Ensure that officers will not use chemical agents against individuals or groups who merely fail to disperse.

U.    Take no action to seek or participate in the prosecution of any individual suspected of participating in an unlawful assembly or refusing to disperse without prior leave of this Court.

---

[1]    "Chemical agents" refers to tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar substances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
406 W 34th Street
Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

**Attorneys for Plaintiffs**

13

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available to all electronic filing participants:

/s/ Anthony E. Rothert