**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MALEEHA AHMAD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:17-CV-2455-CDP |
| v. | ) |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CITY OF ST. LOUIS'S MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

On September 22, 2017, Plaintiffs Maleeha Ahmad and Alison Dreith filed this civil rights action on behalf of themselves as individuals and on behalf of a putative class of persons seeking sweeping injunctive relief against the City of St. Louis. Ahmad and Dreith amended their complaint on September 28, 2017, to add claims and to add Iris Maclean, Patrick Mobley, and Brian Baude as plaintiffs. Doc. 9. On that same day, all the Plaintiffs moved for preliminary injunctive relief, Doc. 10.[1]

Plaintiffs' claims for injunctive relief are based upon Plaintiffs' contention that the City of St. Louis has unconstitutional policies and practices relating to the treatment of protesters, namely: (1) declaring assemblies to be unlawful in the absence of force or violence; (2) enforcing vague orders of dispersal; (3) utilizing chemical agents without first issuing clear warnings and without providing persons an opportunity to safely leave the area; and (4) retaliating against persons who are recording police activity. *See* Doc. 11

---

[1] A hearing on Plaintiffs' motion for preliminary injunction was held on October 18, 19, and 23, of 2017, during which the parties submitted testimony, argument, and other evidence to support their respective claims and defenses. The Court has yet to rule on Plaintiffs' motion.

at 6. Plaintiffs claim that as a result of Defendant's unconstitutional practices, they are fearful that they will be wrongfully arrested, seized, or retaliated against if they attend protests, and therefore, they have been "chilled" from exercising their First Amendment rights. Doc. 9 ¶ 53.

On October 5, 2017, Plaintiffs moved under Rule 23(b)(2) to certify a class of persons defined as "all those individuals who will observe, record, or participate in protest activity within the City of St. Louis in a traditional or designated public forum." Doc. 20 at 1.

The Court should deny Plaintiffs' motion for class certification because Plaintiffs' proposed class is too vague to be amenable to precise definition and it is so broad that it would encompass thousands of people who lack standing to sue. Moreover, Plaintiffs' proposed class lacks the necessary cohesion to be certified under Rule 23(b)(2), and Plaintiffs cannot satisfy the requirements for certification under Rule 23(a).

## LEGAL STANDARD

Class certification "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal punctuation removed). In order "[t]o come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350). "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, a party seeking class certification must "'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule

23(a)." *Comcast*, 569 U.S. at 33 (quoting *Dukes*, 564 U.S. at 350). Class certification requires the court to conduct a "rigorous analysis" to satisfy itself that the requirements of Rule 23(a) are met. *Id.*

The proponent of class certification must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* In cases such as this, where certification is sought under Rule 23(b)(2), the proponent of certification must show a level of class cohesiveness "more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). This is "[b]ecause a (b)(2) class is mandatory, [and] the rule provides no opportunity for (b)(2) class members to opt out, and does not oblige the district court to afford them notice of the action." *Id.*

## ARGUMENT

The Court should deny Plaintiffs' request for class certification because the proposed class is too vague to be precisely defined and because many of the members of the proposed class lack standing to sue. Moreover, Plaintiffs cannot show the class is sufficiently cohesive, and cannot satisfy the requirements of Rule 23(a).

## I.      The proposed class is too vague to be certified.

"'It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (quoting *Ihrke v. N. States Power Co.*, 459 F.2s 566, 573 n.3 (8th Cir. 1972), *vacated as moot by* 409 U.S. 815 (1972)); *see also Vietnam Veterans Against War v. Benecke*, 63 F.R.D. 675, 679 (Mo. W.D. 1974); *Koen v. Long*, 302 F. Supp 1383, 1388-89 (Mo. E.D. 1969). "A class

may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMMC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (citing *Sandusky*). In contrast, where a class cannot be defined without reference to the class members' subjective state of mind, the class is too indefinite to be certified as such. *See Benecke*, 63 F.R.D., at 680; *Koen*, 302 F. Supp. at 1388-89.

Here, the class proposed by Plaintiffs is vague, and cannot be identified by reference to any objective criteria. Plaintiffs propose a class to include "all those individuals who will observe, record, or participate in protest activity within the City of St. Louis in a traditional or designated public forum," Doc. 20 at 1, but such a class necessarily depends upon the subjective mindset of the persons involved. Indeed, given the myriad methods available to free and creative persons for affecting a protest, it is not obvious that there is any reliable way to determine every time a "protest" is taking place. However, assuming every protest could be recognized as such, there is no way to reliably differentiate between unaffiliated passerby or bystanders to a protest from persons who are there to "observe, record, or participate in protest activity" without delving into the subjective intentions of the persons in question. *Cf. Benecke*, 63 F.R.D. at 680 (rejecting proposed class comprised of persons with particular subjective mindset); *Koen*, 302 F. Supp. at 1388-89 (same).

As such, and in light of the foregoing, the Court should reject Plaintiffs' proposed class definition, and deny their motion for class certification. *Sandusky*, 821 F.3d at 996; *Benecke*, 63 F.R.D. at 680; *Koen*, 302 F. Supp. at 1388-89.

## II.        The proposed class lacks standing to sue.

"'The irreducible constitutional requirement of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision.'" *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). "The constitutional requirement of standing is equally applicable to class actions," and "a class cannot be certified if it contains members who lack standing." *Id.* "A class 'must therefore be defined in such a way that anyone within it would have standing.'" *Id.* (quoting *Denny v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006)). "Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring the suit themselves." *Id.*

As argued in Defendant's memorandum in opposition to Plaintiffs' motion for preliminary injunctive relief, none of the five named Plaintiffs in this case have standing to sue because their prospective injuries are speculative. Doc. 33 at  3-4. However, even assuming the named Plaintiffs have standing, the same cannot be said of the class Plaintiffs seek to represent, which broadly includes "*all* those individuals who will observe, record, or participate in protest activity within the City of St. Louis in a traditional or designated public forum." Doc. 20 at 1 (emphasis added).

A party may not establish standing "by mere 'allegations of possible future injury.'" *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 149, 158 (1990) (punctuation altered from original)). "While a party need not expose himself to actual arrest or prosecution to be entitled to challenge a statute he claims deters his exercise of constitutional rights, he must show

that his injury is more than imaginary or speculative." *Id.* (citations and punctuation removed); *see also Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009).

The evidence submitted with the pleadings and adduced by the parties at the hearing on Plaintiffs' motion for preliminary injunction showed that the overwhelming majority of protests in St. Louis are peaceful affairs where no one is arrested or otherwise interfered with by the police. Indeed, Sergeant Brian Rossamanno testified he has monitored more than a hundred protests over the past five years, and only a handful of such protests have resulted in arrests. Sergeant Rossamanno's testimony was corroborated by Keith Rose for the Plaintiffs, who testified he has attended many protests over the years and that such protests do not usually result in arrests or any kind of police intervention.

Given that most protests in St. Louis are peaceful affairs in which the police do not intervene, the average person attending, recording, or observing a protest in St. Louis would have no reason to fear the police would wrongfully arrest them, use force against them, retaliate against them, or otherwise act in such a way as to "chill" their right to free speech. As such, most of the persons included in Plaintiffs' proposed class would lack standing, and the Court should deny Plaintiffs' motion to certify such a broad and unwieldy class. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *see also Rizzo v. Goode*, 423 U.S. 362, 604-05 (1976) (using past injuries as evidence of future injuries take courts "into the area of speculation and conjecture" (citations and quotations removed)); *Miller v. City of St. Paul*, 823 F.3d 503, 508 (8th Cir. 2016) (protester's alleged future harm was too

speculative to warrant injunction); *Zanders*, 573 F.3d at 593-94 (allegations that a statute

or law *might* be applied in an unconstitutional way in the future are insufficient to

establish standing); *Phelps v. Powers*, 295 F.R.D. 349, 354 (S.D. Iowa 2013) (denying

class certification where the continued enforcement of challenged laws might not have

any effect on some members of the proposed class).

III.       **Plaintiffs' class is insufficiently cohesive to be certified under Rule 23(b)(2).**

"Although a Rule 23(b)(2) class need not meet the additional predominance and

superiority requirements of Rule 23(b)(3), 'it is well established that the class claims must

be cohesive.'" *Ebert*, 823 F.3d at 480 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127,

143 (3d Cir. 1998)). "In fact, cohesiveness is the touchstone of a (b)(2) class, as a (b)(2)

class 'share[s] the most traditional justification[] for class treatment,' in that the 'relief

sought must perforce affect the entire class at once.'" *Id.* (quoting *Dukes*, 564 U.S. at 361-

62 (alterations and emphasis added by *Ebert*). Accordingly, "Rule 23(b)(2) applies only

when a single injunction or declaratory judgment would provide relief to each member of

the class. It does not authorize class certification when each individual class member

would be entitled to a different injunction or declaratory judgment against the defendant."

*Dukes*, 564 U.S. at 361

In this case, there is no single injunction that would provide relief to the entire

proposed class of future protesters, observers, and recorders at once. As argued above in

Part II, the overwhelming majority of persons in the proposed class will be completely

unaffected by any injunction restricting police action because they have no realistic fear

of being treated unlawfully by the police in the first place. However, even when those

persons who have no realistic need for an injunction are excluded, the class proposed by

Plaintiffs is too broad to be certified because the relief needed by one future protester is not necessarily the same as the relief needed by any of his fellows. Indeed, even the five named Plaintiffs in this case would require different injunctions to satisfy their purported concerns in this case.

Based on his allegations, Plaintiff Mobley, for example, might benefit from an injunction preventing the police from retaliating against persons who record police activity. Doc. 11-14. However, such an injunction would have no effect on Plaintiffs Ahmad, Dreith, Baude, or Maclean, who are not alleged to have been retaliated against for recording the police. *Compare id. with* Doc. 11-2, Doc. 11-3, Doc. 11-21, and Doc. 11-22. Likewise, an injunction limiting the use of pepper spray might address the purported concerns of Plaintiffs Ahmad, Dreith, Baude, or Maclean, but it would have no effect on Plaintiff Mobley, who was never pepper sprayed. *See* Doc 11-2; Doc. 11-3; Doc. 11-14, Doc. 11-21, and Doc. 11-22. Further, an injunction directing the police to give specific warnings or instructions prior to affecting a mass arrest might address the harms alleged by Plaintiffs Maclean and Baude, but there is no evidence such an injunction would have prevented the harms alleged by Plaintiffs Ahmad, Dreith, or Mobley. *Compare* Doc. 11-21 and Doc. 11-22 *with* Doc. 11-2, Doc. 11-3, and Doc. 11-14.

Given that each of the named Plaintiffs in this case would require different injunctions to satisfy their purported concerns, it cannot be said that a class of all future protesters, which would be infinitely more diverse than the five named Plaintiffs, is sufficiently cohesive to justify certification under Rule (b)(2). *See Dukes*, 564 U.S. at

361-62; *Ebert*, 823 F.3d at 480. As such, and for the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

**IV.     Plaintiffs cannot satisfy the requirements of Rule 23(a).**

In order to be certified under Rule 23, Plaintiffs must meet all of the requirements of Rule 23(a). *Comcast*, 569 U.S. at 33. They cannot do so, and therefore, the Court should deny their motion for class certification.

**A.  Numerosity.**

In order to satisfy the numerosity requirement set forth in Rule 23(a)(1), a class must be "so numerous that joinder of members is impracticable." Fed. R. Civ. Pro. 23(a)(1). Here, Defendants concede it would be impracticable to identify, locate, and join "all those individuals who will observe, record, or participate in protest activity within the City of St. Louis in a traditional or designated public forum." Doc. 20 at 1. However, as argued above in Parts I, II and III, the number of persons included in Plaintiffs' proposed class cuts both ways. Although the proposed class is too numerous to join all members, it is also so vague as to be unascertainable, so broad as to lack standing, and so diverse as to lack cohesion. As such, the Court should  deny Plaintiffs' motion for class certification despite the fact that the class is numerous.

**B.  Commonality.**

In order for a proposed class to be certified, it must be shown that "there are questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" *Dukes*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of the Southwest v. Falcon*,

457 U.S. 147, 157 (1982)), and that their claims rely upon some "common contention . . . that is capable of classwide resolution," *id.*

In their memorandum, Plaintiffs suggest several legal and factual questions they contend are common to the proposed class. Doc. 21 at 7. However, the questions posited by Plaintiffs are not even common to the named Plaintiffs in this case, let alone to the thousands of would-be class members proposed by Plaintiffs to be joined in this action.

Indeed, "the factual question of whether the City of St. Louis maintains a policy or custom of retaliating against people who record police activity by deploying chemical munitions against them," Doc. 21 at 7, is not raised by the allegations of *any* of the named Plaintiffs.[2] Further, "the factual question of whether the City of St. Louis maintains a policy or custom of deploying chemical munitions at public protests without any warning or without constitutionally sufficient warning," Doc. 21 at 7, might concern Plaintiffs Ahmad, Dreith, Baude, and Maclean, each of whom alleges they were pepper sprayed without cause, but it has no bearing on the questions raised by Plaintiff Mobley, who was not. *Compare* Doc. 11-2, Doc. 11-3, Doc. 11-21, and Doc. 11-22 *with* Doc. 11-14.

Likewise, the "factual question of whether the City of St. Louis maintains a policy or custom of enforcing 'unlawful assembly' and 'failure to disperse' ordinances in an arbitrary way that fails to provide a person of reasonable intelligence an understanding of when they are in violation of those ordinances," Doc. 21 at 7, might be said to apply to Plaintiffs Baude and Maclean who was arrested en masse with others on September 17, 2017, for failing to disperse, but it has no bearing on the claims asserted by Plaintiffs

---

[2] Only Plaintiff Mobley has alleged he was retaliated against for recording police activity, but he has not alleged the police ever used chemical munitions against him. Doc. 11-14.

Ahmad, Dreith, and Mobley, who were not arrested at all. *See* Doc. 11-2; Doc. 11-3; Doc. 11-14; Doc. 11-21, Doc. 11-22.

Nor can it be said that Plaintiffs Ahmad, Dreith, or Mobley have any cognizable interest in "the legal question of whether the 'unlawful assembly' and 'failure to disperse' ordinances are constitutional on its [sic] face and as applied," Doc. 21 at 7, or that Plaintiff Mobley has any basis to litigate "the mixed factual and legal question of whether officers of the City of St. Louis may, pursuant to City policy or custom, constitutionally deploy chemical munitions against protestors and observers who do not pose any threat to the safety of any person," *id.* Indeed, Plaintiffs Ahmad, Dreith, and Mobley were not arrested under the City's "unlawful assembly" or "failure to disperse" ordinances, Doc. 11-2; Doc. 11-3; Doc. 11-14, and no chemical munitions are alleged to have been deployed against Plaintiff Mobley, Doc. 11-14.

Given that the named Plaintiffs in this case have failed to identify a single question that is common to all five of them, there is no way that common questions exist on a class wide basis. Moreover, commonality is made all the more unlikely by the nature of Plaintiffs' allegations in this case. Indeed, although Plaintiffs frame their claims as arising primarily under the First Amendment, the thrust of their lawsuit is that the City makes arrests and uses force in such a way as to "chill" the First Amendment rights of anti-police protesters. Doc. 9 ¶ 53.

But the standard for evaluating an arrest or the use of force by a police officer is necessarily context dependent, *Graham v. O'Conner*, 490 U.S. 386, 388 (1989), and is not amenable to class-wide determination. Indeed, even if Plaintiffs were able to show that any particular use of force or arrest was unlawful, such evidence would not prove the

11

existence of a widespread pattern or practice, or have any dispositive bearing on the legality of any other arrest or use of force. *Cf. Dukes*, 564 U.S. at 355-56 (finding that in employment context, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's"); *Falcon*, 457 U.S. at 157 (noting that conceptually, a "wide gap" exists between a claim that an individual was harmed by a wrongful decision, and a claim that an entire class of persons suffered the same injury).

As such, just as the Supreme Court in *Dukes* rejected the plaintiffs' attempt to litigate "millions of employment decisions at once," 564 U.S. at 352, this Court should reject the Plaintiffs' attempt to decide the legality of every use of force and every arrest by the City's police department in one fell swoop. *Cf. Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."); *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012) ("The touchstone of the Fourth Amendment is reasonableness under the particular circumstances presented. . . . What is reasonable in the context of a potential large-scale urban riot may be different from what is reasonable in the relative calm of a tavern with a dozen patrons.").

Consequently, and for all of the foregoing reasons, Plaintiffs cannot show there are common questions of law and fact among the class, and the Court should deny Plaintiffs' motion for certification.

**C.  Typicality.**

In order to be certified, Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13.

As argued above in Part IV.B, the named Plaintiffs in this case cannot show that any of their claims are typical of any of the others, and they have failed to identify a single question that is common to all five of them. Moreover, even if Plaintiffs were able to cast their claims broadly enough to make them appear typical on a surface level, the City would still need to explore the context for each such claim in order to determine the City's defenses. *See, e.g.*, *Graham*, 490 U.S. at 396-97; *see also Bernini*, 665 F.3d at 1003.

As such, and for all of the same reasons argued above in Part IV.B, Plaintiffs cannot show their claims or the City's defenses are sufficiently typical or applicable on a class-wide basis, and the Court should deny Plaintiffs' motion.

**D.  Adequacy.**

Before a class may be certified it must be shown that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). Here, for the same reasons outlined above in Parts IV.B and IV.C, Plaintiffs cannot establish the adequacy requirement. *See Falcon*, 457 U.S. at 157 n.13 (noting that

commonality and typicality requirements "tend to merge with the adequacy of representation requirement"). As such, the Court should deny Plaintiffs' motion for class certification.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification, and grant Defendant any such other and further relief the Court deems fair and appropriate.

Respectfully submitted,

JULIAN BUSH,
City Counselor

   /s/ H. Anthony Relys
Thomas R. McDonnell, #38336MO
H. Anthony Relys, #63190MO
Assistant City Counselor
City Hall
1200 Market Street, Room 314
St. Louis, MO  63103
Tel: (314) 622-3361
Fax: (314) 622.4956
McDonnellT@stlouis-mo.gov
RelysT@stlouis-mo.gov

*Attorneys for Defendant City of St. Louis*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2017, the foregoing **Defendant City of St. Louis's Memorandum in Opposition to Plaintiff's Motion for Class Certification** was served via the Court's electronic filing system upon all counsel of record.

   /s/ H. Anthony Relys
H. Anthony Relys
Assistant City Counselor