## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| MALEEHA AHMAD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-2455 CDP |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

More than a year ago, Plaintiffs presented the Court with testimony, declarations, videos, and photographs showing police conduct at protests that violated First and Fourth Amendment rights to free speech, free assembly, and freedom from excessive force. Based on that evidence, the Court entered a preliminary injunction. The injunction temporarily prevents certain unreasonable or retaliatory uses of force at protests, including the deployment of chemical agents under certain circumstances. The hearing evidence—including testimony from the City's own witnesses—tends to demonstrate the existence of customs and policies that cause City police officers to violate the constitutional rights of people they perceive to be protesting law enforcement conduct. Although the parties have not yet completed discovery, what has emerged so far further supports the certification of a forward-looking class because it tends to show these unconstitutional customs and policies continue unabated. For the following reasons, Plaintiffs respectfully move to certify the following putative Plaintiff Class:

> **persons who will in the future participate in expressive activity
> that is intended or perceived as a protest of police at a**

1

> **traditional public or designated public forum within the City of St. Louis.**

**A.**      ***Post-Hearing Evidence Supports the Certification of a Prospective-Relief Class***

Since the hearing in this case in October 2017, four of the officers who patrolled the Stockley protests have been indicted by the United States. *See* Ex. 1, Indictment. Three of those officers face federal civil-rights charges for beating an undercover detective they mistook for a protester.[1] *See* Ex. 2, Affidavit Darren S. Boehlje, at ¶ 2 (quoting detective describing attack by officers as a "free for all"). Text messages disclosed by the United States Attorney's Office reveal, among other things, the officers' enthusiasm for using force against people they perceived to be expressing an anti-police viewpoint. In the words of one of the indicted officers: "[I]t's gonna be a lot of fun beating the hell out of these shitheads once the sun goes down and nobody can tell us apart." *Id.* at 3. The day after the attack, as two of the indicted officers discussed what they claim to be *other* officers' destruction of the undercover detective's phone and camera,[2] Officer Hays texted that it was "**nothing we all haven't done and if it was a protestor it wouldn't be a problem at all**," to which Officer Boone replied, "**Correct**." Ex. 2 at 7 (emphases added). Indeed, the evidence presented at the preliminary injunction hearing in this case showed not only wanton uses of chemical agents against nonviolent protesters but also uses

---

[1]      In post-protest text messages recounted as part of an FBI agent's affidavit supporting an application for a search warrant, the indicted officers express regret only that they used significant force against a law enforcement officer. *See, e.g.*, Ex. 2, Amended Affidavit of Darren S. Boehlje, at 7 (Boone: "I don't like that we put our hand on *another cop*"; Hays: "Wasn't just us, I don't like the beating the hell outta *a cop*") (emphases added).

[2]      *See* Ex. 2 (Hays: [I] just told [redacted] the ass whooping can be explained. The camera thing can't and we weren't apart [*sic*] of that.").

of force similar in motive—and sometimes method—to what the undercover detective was

subjected to.

To date, despite the Court's preliminary order and significant public scrutiny of police

conduct at anti-police protests, the City of St. Louis has done nothing to improve its policies or

procedures related to uses of force at protests. Recent testimony by Jerome Baumgartner, the

City police department's director of planning and management, makes it clear the City has made

no real effort to implement any changes:

> **Q.** **Have any special orders[3] been amended as a result of the preliminary injunction?**
> A. In this case?
> **Q.** **In this case.**
> A. No.
> **Q.** **Has anyone recommended that that happen, to your knowledge?**
> A. Not to my knowledge.
> **Q.** **And no new special orders have gone out as a result of the preliminary injunction; is that right?**
> A. Correct.
> **Q.** **Based on your knowledge of the protests in September and October of 2017, do you know whether any special order has been amended or created as a result of the protests?**
> A. . . . No, they have not been.
> **Q.** **To your knowledge, did anyone in your office propose changes to policies or special orders as a result of the preliminary injunction from the Ahmad case?**
> A. No.
> **Q.** **To your knowledge, they did not?**
> A. To my knowledge, they did not.

*See* Ex. 3, Baumgartner Dep. 43–44 (Dec. 19, 2018).[4] Discovery is ongoing, but testimony from

several officers deposed so far—who belong to the Bike Unit, the Bike Response Team, the Civil

---

3    Special orders at SLMPD are the equivalent of general orders at many other police departments. Among other things, policies relating to the use of force generally, the use of chemical agents in particular, and the recording of police officers by civilians are covered by special orders.

4    Baumgartner would know if any changes to policies or procedures had been implemented as a result of the preliminary injunction or as result of the conduct the preliminary injunction was designed to address. He heads the office that "manage[s] the policies and procedures in the department" as well as conducts a variety of "performance assessment research." *Id.* at 10:2-6. When "changes are formally incorporated into special orders or when a new

Disobedience Team, and SWAT, units whose members maintained heavy presence at the

Stockley protests and that deployed chemical agents—are not aware of what the preliminary

order requires. *See* Ex. 4, Boyher Dep. 89:24–90:24 (Nov. 21, 2018) (Bike Response Team

commander testifying that he was aware of the preliminary injunction but did not know what it

told him he should do differently and that "to his knowledge," he does not do anything

differently today); Ex. 5, Karnowski Dep. 42:24–43:15 (Dec. 17, 2018) (Bike Unit sergeant

testifying that he was aware there had been a preliminary order but did not know it said and had

not "changed any of [his] practices personally"); Ex. 6, Mader Dep. 157:19–158:12 (Jan. 10,

2019) (SWAT member testifying that, had the preliminary injunction been in place at that point,

he would "absolutely not" have done anything differently at a 2015 police-related protest at

which he is accused of unreasonably using of chemical agents against nonviolent protesters after

a constitutionally inadequate dispersal order); Ex. 7, Hays Dep. 13:4-7 (Jan. 2, 2019) (CDT

member testifying that he is not aware of the preliminary injunction).

Plaintiffs, who act on behalf of a putative class, seek prospective injunctive relief to

permanently enjoin the City from continuing to engage in unconstitutional practices when its

police respond to protests in public forums. Given the City's course of conduct, certifying a class

of **persons who will in the future participate in expressive activity that is intended or**

**perceived as a protest of police at a traditional public or designated public forum within**

**the City of St. Louis** is both necessary and appropriate. It is necessary to prevent the continual

---

special order is developed, created, that work and the process of doing all of that can funnel and functions through [his] office." *Id.* at 21:7-19.

His office also administers the department's Policy Acknowledgment System (PAS), a piece of software through which key policies are disseminated to officers and civilian employees, either department-wide or by subgroups, and knowledge of their contents is tested. *Id.* at 22:17-27:4. The preliminary injunction has not been sent to anyone through PAS. *Id.* at 28:12-22. The acting chief at some point sent it out as an email attachment, but Baumgartner could not recall what the chief had said about it, no one discussed it with Baumgartner afterward, and his office did not propose any changes to policies or orders as a result of reviewing it. *Id.* at 44:1-14.

violation of individual First and Fourth Amendment rights at police-related protests in St. Louis.

And it is appropriate because Plaintiffs satisfy the requirements of the Federal Rules and because

the evidence adduced so far, taken together, demonstrates that the challenged customs and

policies have been—and continue to be—enforced on a class-wide basis. The constitutional

violations Plaintiffs have alleged have happened to them are likely to happen in the future to

members of the putative Plaintiff Class.

**B.**      ***The Governing Standards Support the Certification of a Prospective-Relief Class***

The governing standards for class certification are well established. A motion for class

certification involves a two-part analysis. First, the movants must demonstrate that the proposed

class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, the movants must demonstrate that the proposed class fits into one

of the three categories identified in Rule 23(b). Thus, the action must either (1) create a risk of

establishing incompatible standards of conduct through inconsistent adjudications or

substantially impair the interests of individuals not party to the litigation, (2) involve a party

opposing the class who acted on grounds that apply generally to the class, or (3) involve a court

finding that both questions of law or fact common to class members predominate over individual

questions and that a class action is "superior to other methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b). Plaintiffs here request certification of a Rule 23(b)(2) class for the purpose of seeking prospective injunctive relief.

A.      **The Plaintiff Class Satisfies Rule 23(a)'s Requirements.**

1.      **Numerosity**

Rule 23(a)(1) sets a "low threshold for numerosity." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). This is particularly true in civil-rights cases. *See Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978) ("Rule 23(a)(1) must be read liberally in the context of civil rights suits").

To meet the numerosity requirement, Plaintiffs must demonstrate that the proposed "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P.  23(a)(1). In *Paxton v. Union Nat'l Bank*, 688 F.2d 522 (8th Cir. 1982), the Court noted that "[a] number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons." *Id.* at 559. In addition to the size of the class, "the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton*, 688 F.2d at 559–60.

For Plaintiffs to carry their burden on this prong, "it is not necessary to specify an exact number or to prove the identity of each class member, rather 'the plaintiffs must only show a reasonable estimate of the number of class members.'" *Halbach v. Great-West Life & Annuity Ins. Co.*, No. 4:05-CV-02399 ERW, 2007 WL 1018658, at *3 (E.D. Mo. Apr. 2, 2007) (quoting *Morgan v. United Parcel Serv. of Am.,* 169 F.R.D. 349, 355 (E.D. Mo. 1996)). Moreover, courts "may accept common sense assumptions" when deciding whether a proposed class is sufficiently

numerous. *Best Pallets Inc. v. Brambles Indus., Inc.*, No. 08-CV-2012, 2009 WL 10672543, at

*5 (W.D. Ark. 2009).

The numerosity requirement is satisfied here because it makes common sense to assume

at least hundreds of people will in the future participate in expressive activity that is intended or

perceived as a protest of police at a traditional public or designated public forum within the City.

*See Paxton*, 688 F.2d at 561 (collecting classes with 16–46 class members that had been found to

be sufficiently numerous). The declarations and authenticated videos submitted to the Court as

part of Plaintiffs' preliminary injunction hearing, standing alone, show that hundreds of people

protested the police—or were perceived to be doing so—in public fora in St. Louis just in

September and October 2017. (*See, e.g.*, Exs. L and O, ECF Nos. 11-12 and 11-15.) The Court is

permitted to make a common-sense assumption that there will be similar protests in the future.

Joinder of all these future protestors and observers is impracticable. "Even a small class

of fewer than 10 actual members may be upheld if an indeterminate number of individuals are

likely to become class members in the future or if the identity or location of many class members

is unknown for good cause." 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th

ed. 2002). This is because numbers alone are not determinative of the numerosity requirement.

Thus, for instance, "numerosity is met where, as here, the class includes individuals who

will become members in the future. As members *in futuro,* they are necessarily unidentifiable,

and therefore joinder is clearly impracticable." *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo.

2002) (finding numerosity satisfied). The Fifth Circuit has addressed this issue squarely:

> The problem before the district court, and now before us, is not
> simply to say whether 33 class members are enough or too few to
> satisfy Rule 23(a)(1). Ample case law can be cited to show that
> smaller classes have been certified and larger ones denied
> certification for lack of numerosity [citation omitted]. Such
> number comparisons miss the point of the Rule. The proper focus

7

> is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors. Here, neither party can even count how many black applicants there are, let alone identify all of them. Moreover, ***the alleged class includes future and deterred applicants, necessarily unidentifiable***. In such a case the requirement of Rule 23(a)(1) is clearly met, for "joinder of unknown individuals is certainly impracticable."

*Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1022 (5th Cir. 1981) (emphasis added);

*accord Ahrens*, 570 F.2d at 288 ("in light of the fact that the district court included all present and future pretrial detainees in the Platte County Jail as members of the class, we find no abuse in the district court's determination of sufficient numerosity"). *See also Shariff v. Goord*, 235 F.R.D. 563, 570 (W.D.N.Y. 2006) (relying in part on future inmate class members); *Twarog v. Allen*, 2007 WL 2228635, at *5 (M.D. Ala. July 31, 2007) (same); *Lawson v. Wainwright*, 108 F.R.D. 450, 454 (S.D. Fla. 1986) (same).

Further, it is impossible to know the identity of the future class members now, making class certification appropriate. *See Lane v. Lombardi*, 2:12-CV-4219-NKL, 2012 WL 5462932, at *2 (W.D. Mo. Nov. 8, 2012) ("Joinder of all members may be impracticable where the class includes individuals who may become members in the future, but are currently unidentifiable."). Because the putative Plaintiff Class includes unknown individuals who will participate in or observe protests in the future, "the requirement of Rule 23(a)(1) is clearly met, for joinder of unknown individuals is clearly impracticable." *Phillips*, 637 F.2d at 1022 (internal quotation marks omitted); *see also Barrett v. Claycomb*, 11-CV-04242-NKL, 2011 WL 5822382, at *2 (W.D. Mo. Nov. 15, 2011) ("because of the fluid nature of this class . . . , it would be impracticable to require individual lawsuits").

Plaintiffs also satisfy numerosity because requiring each member of the putative Plaintiff Class to file his or her own suit would be a waste of judicial resources. This risk is particularly

acute where, as here, "[i]t is clear that joining each of the putative plaintiffs individually and

trying separate suits for each would be wasteful, duplicative, and time consuming. And, if each

of the Plaintiffs' claims were tried individually, much of the evidence and many of the witnesses

would be the same in each case, constituting a waste of judicial resources." *Van Orden v.*

*Meyers*, 4:09CV00971 AGF, 2011 WL 4600688, at *6 (E.D. Mo. Sept. 30, 2011).

Thus, Plaintiffs satisfy the numerosity requirement.

### 2.       Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P.

23(a)(2). In *Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016), the court, quoting *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), held that "a single common question 'will do'

for purposes of Rule 23(a)(2)." *Ebert*, 823 F.3d at 478; *see also DeBoer v. Mellon Mortgage Co.*,

64 F.3d 1171, 1174 (8th Cir. 1995) ("Commonality is not required on every question raised in a

class action."). Under Rule 23(a)(2), the common contention "must be of such a nature that it is

capable of classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky*

*Wellness Ctr., LLC v. Medox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Wal-Mart*,

564 U.S. at 350). Applying the foregoing standards, the commonality prong is satisfied here.

Commonality is satisfied because Plaintiffs' claims for prospective injunctive relief

present common questions of law and fact regarding the City's customs and policies related to

protests against the police, namely:

- What type of training and supervision on the deployment of chemical munitions at persons perceived to be protesting the police is constitutionally required and whether the City provides such training and supervision;

- What specific and articulable facts must be present for there to be probable cause that a person has committed the municipal offenses of unlawful assembly, impeding the

9

flow of traffic, and failure to disperse, and whether or not the City provides
constitutionally adequate training or supervision as to those matters;

- Whether or not the City may constitutionally use or threaten force or arrest in order to
  interfere with the recording of police activity occurring in public;

- Whether or not the City ordinance 17.16.275(a) and (e) (impeding the flow of traffic
  on streets and sidewalks, failure to disperse, and failure to obey) is unconstitutionally
  vague either on its face or as applied to the Plaintiff Class;

- Whether or not the City, through its police officers, has a custom or policy of using
  chemical agents unreasonably against persons engaged in nonviolent civil
  disobedience if those persons are perceived to be protesting the police;

- Whether the City of St. Louis, through its police officers, may constitutionally block
  all routes of egress and then deploy chemical agents when perceived protesters are
  nonresistant and unable to flee;

- Whether or not the City ordinances prohibiting persons from being part of an
  unlawful assembly or impeding the flow of traffic are selectively and arbitrarily
  enforced against peaceful, nonviolent persons perceived to be protesting the police;

- Whether or not the City, through its ordinances, policies, and enforcement practices,
  has left open a constitutionally adequate avenue to engage in lawful public protest
  against the police on streets and sidewalks;

- Whether the City, through its police officers, must provide warning before deploying
  chemical agents and, if so, what kind of warning is constitutionally sufficient;

- What kind of justification, if any, is constitutionally required before dispersing
  perceived protesters; whether a dispersal order is required when ordering individuals
  to disperse; whether and how many and what type of routes of egress must be
  available; and how far in time and distance a warning may be before a perceived
  protesters may be arrested for or be targeted with force for committing the offenses of
  "failure to disperse" or "failure to obey"; and whether force, including the
  deployment of chemical agents, may constitutionally be used against a nonviolent
  person who had already begun dispersing.

*See* ECF No. 90 at ¶ 45.

Of course, common questions of fact—that is, whether the allegations Plaintiffs have

made and supported with preliminary evidence are ultimately proved—underpin those common

questions of law. Based on the evidence presented during the preliminary injunction hearing, the

10

Court has already made several significant preliminary findings that support the conclusion that

the foregoing common questions of law and fact can appropriately be considered on a class-wide

basis. Specifically, the Court concluded that:

- "Plaintiffs have presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant's custom or policy is to permit any officer to declare an unlawful assembly in the absence of the force or violence requirement of St. Louis City Ordinance 17.16.275 and Mo. Rev. Stat. § 574.060, in violation of plaintiffs' First and Fourth Amendment rights."

- "Similarly, plaintiffs have presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant's custom or policy is to permit officers to issue vague dispersal orders to protesters exercising their first amendment rights in an arbitrary and retaliatory way and then to enforce those dispersal orders without sufficient notice and opportunity to comply before being subjected to uses of force or arrest, in violation of plaintiffs' First and Fourth Amendment rights."

- "Plaintiffs have also presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights, in violation of the First, Fourth, and Fourteenth Amendments."

- "Plaintiffs also introduced sufficient, credible evidence of people being maced while simply recording police activity and/or voicing criticism of officers and for no readily apparent, legitimate law enforcement purpose, contrary to the official written policy regarding recording set out in Special Order 1-06."

2017 WL 5478410, at *14–*16.

In *Postawko v. Missouri Department of Corrections*, 910 F.3d 1030 (8th Cir. 2018), the

Eighth Circuit recently affirmed class certification of a putative class of prisoners seeking

prospective injunctive relief with respect to unconstitutional policies and practices relating to the

treatment of prisoners with chronic Hepatitis C. In finding that commonality was satisfied, the

court emphasized that "[w]hile a putative class seeking damages for such claims might struggle

11

to satisfy Rule 23(a)(2), a class certified under Rule 23(b)(2) seeking only injunctive and declaratory relief suffers no such difficulty." *Id*. at 1038.[5]

Similar to *Postawko*, a long line of Eighth Circuit cases—both before and after *Wal-Mart*—support the conclusion that commonality is satisfied here because Plaintiffs are challenging the *customs and policies of the City* relating to protests against the police. *See*, *e.g.*, *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014) ("Unlike *Dukes*, Tyson had a specific company policy – the payment of K-code time for donning, doffing, and walking – that applied to all class members."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 and n.7 (8th Cir. 2011) ("Here, in contrast [to *Wal-Mart*], the evidence of a universal defect raises a critical question common to all members of the classes certified by the district court"); *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (reversing the district court's denial of class certification and holding: "Common to each member of the class are questions of alleged discriminatory commitment procedures and conditions of confinement . . . . and the relief sought on behalf of the class includes a declaration that certain present commitment procedures and conditions of confinement are unconstitutional.").

Thus, Plaintiffs satisfy the commonality requirement.

### 3.   Typicality

The Plaintiffs' claims are also typical of other members of the proposed Plaintiff Class. "Typicality under Rule 23(a)(3) means that there are other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal quotation marks omitted). The "burden of demonstrating typicality is

---

[5]     Notably, *Postawko* affirmatively cited *Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014), where the court commented that "[i]n a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality." *Postawko*, 910 F.3d at 1039.

fairly easily met so long as other class members have claims similar to the named plaintiff."

*DeBoer*, 64 F.3d at 1174; *Paxton*, 688 F.2d at 562 (same).

Plaintiffs' claims for prospective injunctive relief are based on the same policies and customs of the City of St. Louis as the claims of Plaintiff Class members generally. The named Plaintiffs experienced the same harms and constitutional infringements as the Plaintiff Class members. (*See* Exs. B, C, N, U, and V to Mem. in Support of Mot. for Prelim. Inj., ECF Nos. 11-2, 11-3, 11-14, 11-20, and 11-21, describing deployment of chemical munitions without adequate warning or justification, retaliatory acts for recording and observing the police, arbitrary application of the unlawful-assembly, traffic obstruction, and failure-to-disperse ordinances, and arbitrary enforcement of a constitutionally insufficient dispersal order).

The Eighth Circuit's recent decision in *Postawko* is again instructive. In finding that typicality was satisfied, the court emphasized:

> 'Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'
>
>  ….
>
> In this suit for prospective injunctive and declaratory relief, the potential for minor 'factual variations' does not undermine the district court's conclusion that the violation allegedly suffered by the Named Plaintiffs is typical of that suffered by the class as a whole.

*Postawko*, 910 F.3d at 1030 (citations omitted).

Similarly, in this lawsuit seeking solely prospective injunctive relief, the constitutional violations allegedly suffered by the Plaintiffs are typical of those suffered by the Plaintiff Class as a whole. Thus, Plaintiffs satisfy the typicality requirement.

13

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "This requirement encompasses two distinct factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2007 WL 2159475, at *7 (E.D. Mo. July 26, 2007) (quoting *U.S. Fidelity & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)); *Paxton*, 688 F.2d at 562–63 ("The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.").

Plaintiffs are represented by qualified and experienced counsel in the present case. In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action. *See Morgan v. United Parcel Serv. of America, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996). Moreover, one of Plaintiffs' attorneys, Anthony E. Rothert, has significant experience as class counsel in civil rights cases seeking prospective relief. *See, e.g.*, *Postawko*, 910 F.3d at 1033; *Kennard v. Kleindienst*, No. 2:14-CV-04017 BCW, 2015 WL 4076473, at *1 (W.D. Mo. June 5, 2015); *Lane v. Lombardi*, 2:12-CV-4219 NKL, 2012 WL 5462932 (W.D. Mo. Nov. 8, 2012); *Barrett v. Claycomb*, 11-CV-04242 NKL, 2011 WL 5822382 (W.D. Mo. Nov. 15, 2011); *Bauer v. Jefferson Cty.*, 4:09-CV-2116 TIA (E.D. Mo. Oct. 5, 2011); *Van Orden v. Meyers*, 4:09-CV-00971 AGF, 2011 WL 4600688 (E.D. Mo. Sept. 30, 2011). Furthermore, Plaintiffs' interests are not only *not* antagonistic to those of the Plaintiff Class, but also completely aligned, so they will continue to prosecute vigorously the interests of the Plaintiff Class through qualified counsel.

14

Thus, Plaintiffs satisfy the adequacy of representation requirement.

**B.      The Plaintiff Class Satisfies Rule 23(b)(2)'s Requirements**

Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits.'" *Coley*, 635 F.2d at 1378 (citations omitted).

In *Coley*, this Court held that a class action brought by inmates seeking a declaration that certain "procedures and conditions" of their confinement were unconstitutional fell "squarely within the purpose of Rule 23(b)(2) to allow class actions vindicating civil rights." *Id.* at 1378-79. Likewise, this case falls squarely within the scope of Rule 23(b)(2) because Plaintiffs are challenging the City's policies and practices that apply generally to the class so the requested injunctive relief would provide relief to all Plaintiff Class members.

The City of St. Louis has implemented—and continues to follow—unconstitutional customs and policies vis-à-vis protests related to police conduct. These customs and policies will continue to be applied to individuals in the future who observe, record, or otherwise participate in protest activity within the City of St. Louis in a traditional or designated public forum. The putative class seeks only prospective injunctive relief. Thus, if they are successful, "a single injunction or declaratory judgment would provide relief to each member of the class." *Ebert*, 823 F.3d at 480 (quoting *Dukes*, 131 S. Ct. at 2557); *see also Barrett v. Claycomb*, 11-CV-04242, ECF No. 94, at *8 (W.D. Mo. Nov. 15, 2011) (certifying (b)(2) class where state actor had instituted policy that affected the Fourth Amendment right of each proposed class member "in

15

the exact same way" and commenting that even the exemptions and appeals from that policy affected putative class members generally), *aff'd by Kittle-Aikeley v. Strong*, 844 F.3d 727 (8th Cir. 2016) (en banc) (certification not challenged on appeal).

In the protest-related case *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007), a district court found that the protesters had met the requirements of Rule 23(b)(2). In *MIWON*, protesters who had been forcefully dispersed from a public forum by city police officers filed suit against the city alleging that their civil rights had been violated. *Id*. at 623–25. In granting the protesters' motion for class certification, the court commented that it was "patently obvious" that the defendants had "acted or refused to act on grounds generally applicable to the class" based on the police account of what had happened and the protesters' allegations (including the allegations that the Los Angeles police had "declared an unlawful assembly and dispersed the crowd at MacArthur Park" and that had "failed to adopt and/or implement policies to prevent the infringement of the rights of demonstrators"). *Id*. at 633. *See also id.* (collecting other cases in which "courts had certified Rule 23(b)(2) classes in cases involving police action against demonstrators"). Like the evidence and allegations underpinning the *MIWON* claims against the City of Los Angeles, the evidence adduced in this case to date shows that the City of St. Louis has acted—and continues to act—on grounds generally applicable the members of the putative Plaintiff Class. Thus, Plaintiffs satisfy Rule 23(b)(2)'s requirements.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification and such other further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Omri E. Praiss, #41850
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
ACLU of Missouri Foundation
(816) 470-9938
gwilcox@aclu-mo.org
*Attorneys for Plaintiffs*