**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MALEEHA AHMAD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:17-cv-2455 CDP |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

**Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification**

The current plaintiffs have moved to certify their action for injunctive relief against defendant as a class action. The plaintiffs request certification of the following class:

> Persons who will in the future participate in expressive activity that is intended or perceived as a protest of police at a traditional public or designated public forum within the City of St. Louis.

For the following reasons, defendant submits that the motion should be denied.

Under the Federal Rules of Civil Procedure, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).  As the Court is well aware, the four Rule 23(a) requirements applicable to all class actions are more commonly referred to as: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and

adequately protect the interests of the class). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). To initiate a class action, a group of Plaintiffs must establish that the filed case meets all of these requirements. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551-52, 180 L. Ed. 2d 374 (2011). Plaintiffs bear the burden of proof regarding the Rule 23 requirements. *Smith v. Merchants & Farmers Bank*, 574 F.2d 982, 983 (8th Cir. 1978). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551.

In addition to pleading and proving the prerequisites explicated by Rule 23(a), the plaintiffs must also establish at least one of the requirements in Rule 23(b), namely: (1) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims; (2) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (3) common questions predominate and a class action is superior to individual actions.

The district courts are afforded broad discretion in determining whether or not to certify a class. *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1399 (8th Cir. 1983). However, that discretion is not unbounded. *Wal-Mart Stores, Inc. v. Dukes,* supra. Here, plaintiffs rely entirely on certification of a Rule 23(b)(2) class for the purpose of seeking prospective relief. However, they have failed to plead and prove the requisites for class certification.

**1. Certification should be denied because the class cannot be adequately defined, in that it could include everyone in the St. Louis metropolitan area and perhaps beyond and**

**plaintiffs' definition depends on subjective criteria applied to individuals without reference to an objective standard.**

Under Rule 23, the class definition must be must be precise and unambiguous, sufficiently definite for the court to determine if an individual is a member, and not be defined so broadly as to include a great number of members who for some reason could not have been harmed by a defendant's allegedly unlawful conduct.

Plaintiffs define their class as "persons who will in the future participate in expressive activity that is intended or perceived as a protest of police at a traditional public or designated public forum within the City of St. Louis."  It is at once obvious that this definition is not limited in time, and includes vague terms such as "protest," "protest of police," "expressive activity," and "public forum."  The definition is wholly untethered to the issues raised in the second amended complaint, which is directed at enforcement of City ordinances relating to unlawful assemblies and impeding the flow of traffic, and at the use of chemical agents by police in mass protest situations.[1]  Plaintiffs' pleadings and preliminary injunction evidence also inject issues regarding citizen recording of police activities, an item unmentioned in the class definition (unless subsumed under "expressive activity").

Also, the definition of the class in terms of "expressive activity" is hopelessly vague.  Plaintiffs were engaged in mass protests--or were "observing" such protests, or perhaps just observing individual arrests, as claimed by plaintiff Mobley, see I Prel.Inj. Tr. 163 [doc. 62])--that indisputably involved illegal activity.  Presumably, the "expressive activity" in which the

---

[1] The proposed definition in this case stands in stark contrast to the definition propounded in *Barrett v. Claycomb,* 2011 U.S.Dist.LEXIS 131450 (W.D.Mo. 2011), to wit:  "current, and future, students of Linn State Technical College who are, or will be, seeking degrees or certificates at the main campus of the College in Linn, Missouri, or any other Linn State Technical College location."  (Interestingly, the preliminary injunction granted in that case--attacking a technical school's drug testing program--was vacated.  *Barrett v. Claycomb,* 705 F.3d 315 (8th Cir. 2013).)

3

plaintiff class might engage in the future is *lawful* "expressive activity," but plaintiffs themselves do not seem to know just what their "expressive activity" was.  In any event, the plaintiffs are inviting the Court to become chief of police and licensor of "expressive activity" in the City of St. Louis by trying to divine who is engaging in "expressive activity" in the future and what, if anything, the City police can and cannot do in policing such activity.

For reasons discussed at greater length hereinafter, plaintiffs' class definition is no definition at all, because plaintiffs lack standing to seek the relief they demand.  The definition is an ambiguous answer to a hypothetical question:  who could be subjected to a constitutional wrong like that claimed by plaintiffs at some indefinite time in the future?  The answer is, anybody or nobody; no one really can know.  Cf. *Rizzo v. Goode,* 423 U.S. 362 (1976).

**2.    The record shows that plaintiffs are not members of an ascertainable class.**

The facial deficiency of plaintiffs' proposed class definition also illustrates the further impediment to class certification:  Rule 23 requires that there be an available method to identify class members based on objective criteria.  The determination of the existence of a certifiable class is interchangeably referred to as ascertainability or identifiability. "If a class is so vague that it is not susceptible to ready identification, problems may arise regarding the provision of notification to class members, the binding effect of any judgment rendered in the case and the general concerns of propriety of an overly large class." *See Ad Hoc Committee to Save Homer G. Phillips Hosp. v. City of St. Louis*, 143 F.R.D. 216, 219 (E.D.Mo. 1992). A proposed class may not be defined in such a way as to make the actual composition of the class only determinable at the conclusion of the proceedings. *In re Paxil Litigation*, 212 F.R.D. 539, 545 (C.D.Cal.2003); *see also, McElhaney v. Eli Lily & Co.*, 93 F.R.D. 875, 877-78 (D.S.D.1982).

A class should not be certified unless the class description is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Kirkman v. N.C. R.R.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)(*quoting* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 3d § 1760 (2005)). An implicit requirement for any class certification inquiry involves a court's assessment as to the ascertainability of the class. The description of a proposed class must be sufficiently definite to permit class members to be identified by objective criteria. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996-97 (8th Cir. 2016).

In the case at bar, plaintiffs' proposed definition is not adequate to allow the court to determine if a particular individual is a member; membership could not even be determined at the conclusion of the proceedings here, but would have to be determined by an individual's subjective intention to protest *in the future*, or by someone else's perception of what a "protest" was about or what activity was "expressive." Certification is not appropriate where the court could be required to engage in fact-intensive individualized analysis to identify class members. *Adair v. Johnston*, 221 F.R.D. 573, 577-79 (D.Ala.2004); *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y.2001); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981); *Henke v. Arco Midcon, LLC*, 2014 U.S. Dist. LEXIS 31810, *13-15 (E.D.Mo. 2014).

Here, the class definition is not sufficiently definite to permit class members to be identified by objective criteria.

### 3. The commonality criterion is not fulfilled in this case.

While plaintiffs' claims arising in the past may involve questions of law or fact common to the class, the "common contention" in Rule 23(a)(2) "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

5

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). The plaintiff must show that "a classwide proceeding will 'generate common *answers* apt to drive the resolution of the litigation.'" *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011)(quoting *Wal-Mart Stores, Inc. v. Dukes*, supra). In determining "whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005); *Wright v. St. Louis Bd. of Police Comm'rs*, 2013 U.S. Dist. LEXIS 45092, *6 (E.D.Mo. 2013). Commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Bennett v. Nucor Corp.*, 656 F.3d at 814; *Johnson v. Evangelical Lutheran Church*, 2013 U.S. Dist. LEXIS 41944, *21 (D.Minn. 2013).

Here, the plaintiffs cannot demonstrate that the injury to future class members will be the same. The preliminary injunction hearing evidence and the Court's findings show that at least one of the named plaintiffs (Ahmad) was engaged in patently illegal conduct when a City police officer applied mace, to compel her to stop blocking a police bus in the middle of the street. It is difficult to see that she suffered any injury of constitutional dimension, cf. *Bernini v. City of St. Paul,* 665 F.3d 997 (8th Cir. 2012)(use of pepper spray proper under circumstances), but in any event it is wholly speculative that the hypothetical plaintiff class members would, in the future, choose to blockade a police bus, ignore police commands to move, and thereupon be maced. Cf. *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).

**4.     Plaintiffs have failed to show typicality of claims.**

Under Rule 23(a)(3), to obtain certification of a class, the putative class plaintiffs must show that the claims or defenses of the represented parties are typical of the claims or defenses

6

of the class. This prerequisite can be met if the claims or defenses all stem from a single event, or the plaintiff can demonstrate that the class shares the same or similar grievances. *See Paxton*, 688 F.2d at 562. "The burden of showing typicality is not an onerous one." *Id.* However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006); *Parke v. First Reliance Stnd. Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004).

    The claims of the named plaintiffs are not "typical" even in the most generous sense of the term. As noted above, plaintiff Ahmad was maced while engaged in illegal conduct. This occurred at Tucker and Clark Boulevards in St. Louis on September 15, 2017. I Prel.Inj.Tr. 25-26 [doc. 62]. Plaintiff Mobley claims that he was not "protesting" anything, but was merely "observing" and video-recording an arrest of another person on September 17 when his cell phone was seized. He was not arrested. *Id.,* 159, 163. Plaintiff Lewczuk also claims not to have been a protester, but a "legal observer coordinator" (whatever that is), who was present at illegal activity on September 15 and was apparently arrested on September 17. She claims to have been hit with pepper spray directed at others. Lewczuk declaration [doc. 11-10]. It would appear that she, like plaintiff Mobley, was not participating in "expressive activity" that would constitute an anti-police "protest." By plaintiffs' own definition, therefore, she does not have a "typical" claim.

    It is evident that none of the three proposed class representatives has "typical" claims. Indeed, in the motion to add Lewczuk as a party, the plaintiffs asserted that they desired to have plaintiffs "who were exposed at different times to the allegedly unconstitutional customs and policies of the City of St. Louis." Motion to Add Party [doc. 92], p. 1. This approach is inconsistent with the typicality requirements of Rule 23. By requiring the Court to examine the

7

precise circumstances of each representative's claims, plaintiffs are in effect conceding that each claim differs in facts and circumstances. Because liability under 42 U.S.C. §1983 in this case is inextricably intertwined with police action directed at the named plaintiffs individually, and must be assessed from the standpoint of the reasonableness of the conduct of the officers on the scene at the time, cf. *Graham v. Connor*, 490 U.S. 386 (1989), plaintiffs' claims are atypical of hypothetical persons who will participate in "expressive activity" in the future.

**5.     On the record to date, the named plaintiffs cannot fairly and adequately protect the interests of the class.**

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class representative to be adequate, he or she must be a member of the class she seeks to represent. See *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982). The adequacy requirement is satisfied when the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The party moving for class certification has the burden to establish that she will adequately represent the class. *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 835 (8th Cir. 2010).

Here, the representative parties cannot adequately protect the interests of the class. At least one plaintiff blatantly engaged in unlawful activity. Two others claimed only "observer" status. One has suggested that he will avoid protesting in the future. How can class representatives fairly and adequately represent the class if they did not and will not in the future engage in lawful "expressive activity"? Similarly, how can class representatives be relied on to

fairly and adequately protect the interests of a class when the class representatives intentionally engaged in illegal conduct in connection with a mass protest?

Because a class certified under Rule 23(b)(2) does not permit "opting out," it is crucial that the qualifications of the named plaintiffs be scrutinized closely, i.e., that each prerequisite to class certification be subjected to "rigorous analysis." *Wal-Mart,* supra, 564 U.S. 351. While defendant has no quarrel with the adequacy of class counsel in this case,[2] it is apparent that the proposed class representatives are woefully unqualified to proceed as representatives of the hypothetical class. On the contrary, it is evident from the record that at least two of the named plaintiffs have personal agendas aimed at substituting the Court for the elected officials of the City in enforcing the law when mass protests disrupt public order.

**6.     Certification of a class will impair the right of defendant and its employee police officers to trial by jury.**

Several of the plaintiffs in this action were dropped as parties and are now pursuing individual damage suits against the City and various City police officers. See, e.g., *Baude v. City of St. Louis,* 4:18-CV-1564 (E.D.Mo.). In addition, plaintiffs' current counsel is pursuing an action styled *Molina v. City of St. Louis,* 4:17-CV-2498, involving several witnesses in this action and based on an identical claim of municipal "custom", while some 22 other plaintiffs are pressing damage suits against the City and City police officers, asserting similar claims arising in September 2017, based on virtually the same alleged City police customs or practices. These plaintiffs (and the perhaps the defendant officers in those actions) could be part of the proposed class as amorphously defined by plaintiffs. If this case proceeds as a class action, a judgment in plaintiffs' favor inevitably will be claimed to have preclusive effect in the damage actions. Cf.

---

[2] There is no indication at this time that plaintiff's ACLU-supplied counsel engaged in any behavior similar to that criticized by Beam, J., in *Kittle-Aikeley v. Strong,* 844 F.3d 727, 744 (8th Cir. 2016)(*en banc*).

9

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979).  Indeed, plaintiffs in the parallel damage actions are already citing this Court's preliminary injunction findings as evidence against the City, see, e.g., original and amended complaints in *Green v. City of St. Louis,* 4:18-CV-01629-JCH.  These damage suit plaintiffs (necessarily part of the class as here proposed) are likely to contend that those findings already have some preclusive effect.  See *Commodity Futures Trading Comm. v. Board of Trade,* 701 F.2d 653 (7th Cir. 1983).

It is indisputable that the defendant City and its officers enjoy a right to trial by jury in actions under §1983; it is equally indisputable that the Seventh Amendment restricts a federal court's ability to decide equitable claims in a way that impairs a party's right to trial by jury.  See *Lytle v. Household Mfg., Inc.,* 494 U.S. 545 (1990).  While this issue normally emerges when legal and equitable claims are joined in a single action, defendant submits that the principles enunciated in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962) should guide the Court in making a class certification determination here.  Cf.  *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998).

Plaintiffs' ploy of seeking certification of a "forward looking class" is an end run around the Seventh Amendment.  Plaintiffs seek purely injunctive relief here, but a judgment in favor of the class as proposed would virtually guarantee that any member of the class who chose to seek damages for any misconduct of City police, during the protests at issue in this case and other protests occurring within the statute of limitations, would not have to litigate the City's liability.  Both the class members and the City would be bound by a judgment of this Court on the issue of liability for an unconstitutional custom or practice.  Because police officers are the City's employees, there would also be a real risk that collateral estoppel could affect their individual defenses as well.

This Court must be guided by equitable principles in proceeding with this action and granting relief, if any. It would be inequitable, to say the least, to subject the City to a liability determination on issues that are simultaneously the subject of damages suits raising the same issues. Class certification under these circumstances can and should be denied.

**7.  Class certification is improper because plaintiffs lack standing to seek prospective injunctive relief.**

Plaintiffs' motion to certify a class cites no cases asserting claims such as alleged here, and for good reason: outside the prison context, injunctive relief directing enforcement of laws "in a constitutional manner" and dictating specific police procedures, supervision and training runs headlong into the Supreme Court's clear limitations on equitable relief.

Albeit the question of standing is distinct from the question of whether class certification is warranted under Rule 32, it is undeniable that a plaintiff class cannot be certified when there is no representative with standing to seek the relief at issue. E.g., *Lewis v. Casey,* 518 U.S. 343 (1996). This Court gave short shrift to the standing argument when granting a preliminary injunction, but the issue is cast in sharp relief by plaintiffs' proposed class definition and the relief prayed in the second amended complaint.[3]

---

[3] The prayer for relief in the second amended complaint [doc. 90, p. 13) is as follows:
    Issue a permanent injunction requiring the City of St. Louis to:
    a. Declare protests "unlawful assemblies" and to order protestors "to disperse" in a constitutional manner and otherwise limit police activities at protests as required by the Constitution;
    b. Refrain from deploying chemical agents without warning, provision of routes of egress, and a reasonable time to disperse, unless the person against whom the agents are deployed is currently engaging in force or violence;
    c. Provide sufficient supervision to permit investigation of alleged misconduct related to patrol of First Amendment events, including disciplining officers who fail to wear visible badges; and
    d. Provide adequate training to prevent the unconstitutional enforcement of Ords. 15.52.010 and 17.16.275, including:
    i. Bias-free policing;
    ii. Policing First Amendment events;
    iii. Principles of community policing; and
    iv. Supervisor training . . .

In a series of cases beginning with *O'Shea v. Littleton,* 414 U.S. 488 (1974), the Supreme Court has emphatically rejected efforts to inject the courts into management of state and local government conduct, the more so when there are adequate remedies at law.  In *O'Shea*, the Court quite clearly held that injunctive relief under 42 U.S.C. §1983 requires a likelihood of substantial and immediate irreparable injury and inadequacy of remedies at law.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

Although *O'Shea* involved a claim seeking relief in the context of hypothetical future criminal prosecutions, its principles were embellished and applied in *Rizzo v. Goode,* 423 U.S. 361 (1976), which addressed a claim for mandatory injunctive relief directed at supervision of the Philadelphia police.  Instructing that injunctive relief under §1983 is to be used "sparingly," the Court again rejected the contention that some "unacceptably high number" of past constitutional violations warranted judicial intrusion into management of police departments. The Court quite clearly reiterated that the plaintiffs' claims would take the courts into the area of speculation and conjecture about situations that could arise in the future.  Further, the Court instructed that federal judicial power to supervise the functioning of a police department is limited by principles of equity and federalism.

Next, in *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983), the Court rejected a claim for injunctive relief that closely parallels the plaintiffs' claims here.  As with plaintiffs' complaints about mace or chemical munitions in this case, the plaintiff in *Lyons* complained about police use of "chokeholds" in subduing arrestees.  As do plaintiffs here, Lyons claimed that the city authorized and encouraged the practice that he attacked, and that the use of chokeholds violated his First, Fourth and Fourteenth Amendment rights (and Eighth Amendment rights for good

12

measure). The district court, after reversal of dismissal of the claim by the Ninth Circuit, granted a preliminary injunction forbidding use of the chokehold absent threat of death or serious injury to an officer and directing more training. The Supreme Court reversed.

In *Lyons,* the Supreme Court held that the plaintiff simply lacked standing to seek an injunction. Noting that standing to seek injunctive relief is different than standing to seek damages, the Court held that, to have standing, Lyons would have had to allege that he would have another encounter with the police *and* also make the "incredible" allegation that either (1) *all* Los Angeles police officers always choke any citizen with whom they have an encounter or (2) that the city ordered police officers to do so. 461 U.S. at 106.

Leaving aside the question of the validity of the ordinances attacked by plaintiffs, it is evident that the plaintiffs' claims in this case suffer from the same infirmities as the claims in *Rizzo* and *Lyons.* To be sure, unlike the plaintiff in *Lyons,* the plaintiffs here have indeed made the incredible allegation that the City (by "custom") has authorized or directed its police officers to enforce its ordinances and deploy chemical agents in an unconstitutional manner. Nevertheless, the principles of *Rizzo* and *Lyons* apply. Apart from the claims of invalidity of the City's ordinances identified in the pleadings, §§15.52.010 and 17.16.275, plaintiffs' claims are inherently speculative.

Defendant does not concede the invalidity of its ordinances, but insofar as plaintiffs attack the ordinances, no class action is required: plaintiffs have sufficient First Amendment standing on those claims and an injunction limiting or prohibiting their enforcement will resolve the controversy without the necessity of certifying a class. Cf. *Stahl v. City of St. Louis,* 687 F.3d 1038 (8th Cir. 2012).

## CONCLUSION

"Rule 23(b)(2)applies only when a single injunction or declaratory judgment would provide relief to each member of the class," and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. "[C]ohesiveness is the touchstone of a (b)(2) class[.]" *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

Plaintiffs' proposed class cannot be certified. The class definition is inherently flawed, and the prospective relief sought by plaintiffs is for the most part not permitted under principles of equity and federalism.

> Respectfully submitted,
>
> JULIAN L. BUSH
> CITY COUNSELOR
>
> /s/ Robert H. Dierker
> Robert H. Dierker 23671MO
> Associate City Counselor
> dierkerr@stlouis-mo.gov
> Brandon Laird 65564MO
> Associate City Counselor
> Abby Duncan 67766MO
> Assistant City Counselor
> Meghan Bruyns 69987MO
> Assistant City Counselor
> Amy Raimondo 71291MO
> Assistant City Counselor
> 1200 Market St.
> City Hall, Rm 314
> St. Louis, MO 63103
> 314-622-3361
> Fax 314-622-4956