**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

MALEEHA AHMAD, et al.,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　)　　No. 4:17-cv-2455 CDP
　　　　　　　　　　　　　　　)
CITY OF ST. LOUIS, MISSOURI,　　)
　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　)

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

In their opening brief, Plaintiffs relied heavily on the recent decision in *Postawko v.*

*Missouri Department of Corrections*, 910 F.3d 1030 (8th Cir. 2018). ECF No. 113 at 11 & 13. In

*Postawko*, the Eighth Circuit affirmed certification of a putative class of prisoners seeking

prospective injunctive relief with respect to unconstitutional policies and practices relating to the

treatment of prisoners with chronic Hepatitis C.

Despite the City's failure to mention *Postawko* in its opposition, the decision addresses

many of the points the City raises. As in *Postawko*, Plaintiffs in this proposed class seek

prospective injunctive relief to enjoin policies and customs of a public entity that cause them a

constitutional injury even if there might be some variance in the particular harms resulting from

the constitutional violation.[1]

---

[1]　　　The challenged policies and customs of the City include: (1) leaving to the unfettered discretion of any individual officer the ability to declare an unlawful assembly in the absence of force or violence; (2) causing officers to issue vague dispersal orders under the city ordinance prohibiting failure to disperse, and then, without providing sufficient notice and an opportunity to disperse, using force in a retaliatory and arbitrary way; (3) deploying chemical agents against protesters in a retaliatory and arbitrary way, based on protestors' expressive activity; (4) making all expressive activity on streets or sidewalks unlawful and leaving to the discretion of officers whether to enforce it; and (5) retaliating against persons who observe or record police activity. (*See* ECF No. 57; ECF No. 11 at 6; ECF No. 9 ¶ 53.)

1

Plaintiffs have standing to bring their claims and satisfy the requirements of Rule 23. As a result, the Court should grant Plaintiffs' motion for class certification.

## ARGUMENT

**I.      Plaintiffs have standing.**

At the conclusion of its opposition, the City argues that Plaintiffs lack standing. ECF No. 115 at 11–13. Because standing is a threshold issue, Plaintiffs address it at the outset.

In opposing Plaintiffs' motion for a preliminary injunction, the City previously challenged Plaintiffs' standing. ECF No. 33 at 3-4. The argument, however, was rejected. *Ahmad v. City of St. Louis*, 2017 WL 5478410, at *11 (E.D. Mo. Nov. 15, 2017). Specifically, this Court "conclude[d] that the chilling of plaintiffs' speech as testified to during the hearing constitutes an injury in fact sufficient to confer First Amendment standing." *Id*. (citing *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2012)). The City has not explained why this ruling should be reconsidered. In any event, Plaintiffs continue to have standing.

It is undisputed that Plaintiffs and the members of the putative class have the right to speak without fear of government reprisal. Loss of speech rights "for even minimal periods of time" constitutes an injury-in-fact. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140–41 (8th Cir. 1996); *see also Elrod*, 427 U.S. at 374 n.29 (noting that "[t]he timeliness of political speech is particularly important"). Moreover, because speech rights are "of transcendent value to all society," *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965), the requirements of standing are "somewhat relaxed" in the First Amendment context. *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (cited with approval by *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016)); *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)

("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.") (quoted by *Klahr*, 830 F.3d at 794).

There are two ways a plaintiff can demonstrate the loss of speech rights that "may confer Article III standing to seek prospective relief": (1) by showing that she engaged in objectively reasonable self-censorship—commonly called "chill"—and (2) by showing an intent to engage in constitutionally protected conduct that is proscribed by the government, as long as there is a credible threat that proscription will be enforced. *Klahr*, 830 F.3d at 794 (quoting *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003), and citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Plaintiffs and the members of the putative class have shown both types of injury.

Self-censorship is a cognizable First Amendment injury if that self-censorship was "objectively reasonable" in light of what could happen to that would-be speaker if she forges ahead and speaks despite the risks. *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2012). The evidence so far (undisputed to date) shows the named Plaintiffs have already suffered an injury of chill; they have participated in expressive conduct to a lesser extent or differently than they would have in the absence of the City's challenged methods of enforcing the unlawful assembly and failure-to-disperse ordinances, deploying chemical munitions, and retaliating against people recording SLMPD officers in the course of their official duties. (*See* Tr. Vol. I 23:24–24:15 (Ahmad); 166:13–167:10 (Mobley). Given the seriousness of the consequences they have faced—and would continue to face without the entry of a permanent injunction— including arbitrary seizure and/or exposure to chemical munitions, their decision to self-censor is objectively reasonable. *See Peterson v. Kopp*, 754 F.3d. 594, 602 (8th Cir. 2014) (holding that fear of being pepper sprayed would form basis of objectively reasonable chill). Moreover, "'[t]he effect on freedom of speech may be small, but since there is no justification for harassing people

for exercising their constitutional rights it need not be great in order to be actionable.'" *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). And, in this regard, the test is objective, not subjective. *Id.* "The question is not whether the plaintiff herself was deterred, thought how plaintiff acted might be evidence of what a reasonable person would have done." *Id.* The test is what a person of "ordinary firmness" would have done under the circumstances. *Id.*

Thus, because a reasonable person would have been chilled under the circumstances and Plaintiffs have in fact been chilled, they have standing. *See 281 Care Committee*, 638 F.3d at 628 (reversing dismissal of speech claim concerning statute on standing grounds where—even though plaintiffs had not alleged they wished to engage in conduct that actually violated statute at issue—they had alleged they wished to engage in conduct "that could reasonably be interpreted" as falling under the criminal statute); *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (holding that would-be protesters had standing to challenge ordinance they had never violated because they alleged they had made "changes to their operations" because of the ordinance).

Additionally, a person who intends to speak despite unreasonable risk of government reprisal also presents a cognizable injury permitting that person to seek prospective relief. *Klahr*, 830 F.3d at 794. That is, a person who can demonstrate that there is "a realistic danger of sustaining a direct injury as a result" of a government action has standing. *Babbitt*, 442 U.S. at 298. Thus, those who braved protests after initial encounters with SLMPD have sustained this type of injury as well (*See, e.g.*, Tr. vol. 1, 24:6-12 (Ahmad testifying that she went to two protests after her interaction with SLMPD but left quickly "because the sixth sense inside me said something was about to go wrong"); *id.* 92:18-24 (putative class member testifying that

4

"[t]here came a point when I realized that none of this would stop unless we stand up to it, and it was at that point that I thought I'm willing to take this if it's going to help make it stop, and so whenever I got that call that people were in distress, I decided to go down there so that I may document it so that one day we may hold the City accountable and try to stop these actions.").

The members of the proposed class—who are limited to individuals who will participate in expressive activity that is intended or perceived as a protest of police—also have a redressable injury under this pathway to First Amendment standing. That is, the evidence shows that participating in or observing police activity at a protest in St. Louis entails a realistic danger of sustaining a direct injury to First Amendment freedoms as a result of that conduct. (*See* ECF No. 57, 36–44.) The fact that some—perhaps most—protests in St. Louis City proceed unimpeded by SLMPD is thanks to police largesse and not because of any legal restriction on the policies and customs challenged in this suit. (*See* Tr. vol. 2 73:4-23 (police supervisor testifying that when protesters march in the street, "it's illegal right away" and the incident commander can, at his discretion, arrest participants); 212:6–213:20 (police lieutenant testifying that "[i]f we wanted to," they could arrest marchers for blocking street at any time, that "[t]he incident commander normally" would decide when to take enforcement action, and at "[o]f the 200 protests I've worked, 90 percent of them, we've allowed them to march in the streets"). If a would-be participant faces even a ten-percent chance of government reprisal based on unconstitutional enforcement of city ordinances (setting aside the possibility of being pepper sprayed or seized), that would be sufficient to convey standing. *See 281 Care Committee*, 638 F.3d at 628 (commenting that "we disagree with the district court's conclusion that the infrequent enforcement of [a statute] undermines the objective reasonableness of plaintiffs' decision to chill their speech. Total lack of enforcement of a statute can itself undermine the reasonableness of

chill allegedly resulting from that statute, but only in extreme cases approaching desuetude."). Because class members face a realistic possibility of unconstitutional enforcement actions as a result of their expressive activity, they have standing.

Finally, the City's reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) is misplaced. ECF No. 115 at 12–13. In that case, the Court held that the plaintiff did not have standing to seek injunctive relief because he could not establish "a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers, who would *illegally choke him into unconsciousness* without any provocation or resistance on his part." *Id*. at 105 (emphasis added). The alleged unconstitutional conduct in *Lyons* was extremely unusual and unique and, therefore, not likely to reoccur. In contrast, Plaintiffs' claims here focus on the policies and customs of the City that repeatedly cause police officers to violate the constitutional rights of people protesting law enforcement. Those policies and customs, including constitutionally defective ordinances, are still in effect and, unfortunately, it is only a matter of time when protestors challenging law enforcement are again going to be exposed to them. This conclusion is particularly true because—to date—despite the Court's preliminary order and significant public scrutiny of police conduct at anti-police protests, the City has done nothing to improve its policies or procedures related to uses of force at protests. *See* ECF No. 113 at 2-4. Under these circumstances, *Lyons* is inapplicable. *See Fant v. City of Ferguson*, 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016) (distinguishing *Lyons* and holding that "Plaintiffs have established standing to obtain injunctive relief by pleading that they still owe debts to the City and are still subject to the City's continuing unconstitutional debt-collection and post-arrest policies and procedures").

Plaintiffs have standing to pursue this class action.

6

II.      **The Plaintiff Class is adequately defined and ascertainable.**

Ascertainability is not a "separate, preliminary requirement" of class certification, *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016), but "a dispute regarding the method for identifying class members calls for an independent discussion of whether a class is ascertainable." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). One way for a class to be ascertainable is for "its members [to] be identified by reference to objective criteria." *Id.* Plaintiffs' class definition satisfies this standard.

Plaintiffs' Class is defined to include "those individuals who will participate in expressive activity that is intended or perceived as a protest of police at a traditional public or designated public forum within the City of St. Louis." ECF No. 112. Here, a member of the proposed class may be identified by his or her behavior: namely whether—or not—he or she participates in or records or observes police at a protest in a public forum in St. Louis. Conduct, unrelated to any particular viewpoint, is an objective criterion.

Contrary to the City's argument, the terms "protest," "protest of police," "expressive activity," and "public forum" are not vague. ECF No. 115 at 3. The words "police" and "protest" are simple, ordinary words that have commonly understood meanings. *Hill v. Colorado*, 530 U.S. 703, 732–33 (2000). In addition, the phrases "public forum" and "expressive activity" are terms that have clear meaning for purposes of the First Amendment. *See, e.g.*, *Ball v. City of Lincoln*, 870 F.3d 722, 730–31 (8th Cir. 2017) (discussing expressive activity in a traditional public forum).

*Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) is also instructive. There, plaintiffs filed a class action alleging that their arrests for participating in a protest or failing to disperse violated their constitutional rights. *Id.* at 482–83. In challenging ascertainability, the City of Los Angeles, like the City here, argued that the class definitions were "riddled with

7

vague terms such as 'protest,' 'participation,' and 'vicinity.'" *Id.* at 485-86. In rejecting this argument, the court stated: "In the context of the definitions as a whole [], these terms are not so vague that the class would not be ascertainable." *Id.*

Similarly, here, taking into account well-established First Amendment jurisprudence and the ordinary meaning of words, the terms used in Plaintiffs' Class definition are also not so vague as to make the Class unascertainable. This conclusion is bolstered by the fact that courts employ a far less "stringent version of the definiteness requirement" in class actions seeking injunctive relief under Rule 23(b)(2). *See, e.g.*, *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139-41 (noting that "as this is a Rule 23(b)(2) class action, absolute precision is not required," because "such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class"). *See also Kenneth R. v. Hassan*, 293 F.R.D. 254, 264 (D.N.H. 2013) (noting that "where certification of a (b)(2) injunctive class is sought, actual membership of the class need not . . . be precisely delimited because notice to the members . . . is not required" (internal quotation marks omitted)).

Plaintiffs' proposed class is adequately defined and ascertainable.[2]

---

[2]     If the Court concludes that the class definition is improper in any way, it is well within the Court's authority to redefine Plaintiffs' proposed class. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1759 at 130–31 (3d ed. 2005) ("[I]f plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23."); *see also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 8:12, at 200 (4th ed. 2002) ("When a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal."). As such, Plaintiffs request the Court refine the class definition if appropriate. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (commenting that over- and under-inclusivity of class "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *see also Rawlings v. ADS Alliance Data Sys., Inc.*, 2015 WL 3866885, at *4 (W.D. Mo. June 23, 2015) (relying on *Messner*); *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 394–95 (D. Colo. 2010) (commenting that a court "may refine the suggested definition if necessary" (citing *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004))).

III.      **Plaintiffs satisfy the requirements of Rule 23.**

     A.      **The Plaintiff Class Satisfies Rule 23(a)'s Requirements.**

          1.      **Numerosity**

The City does not challenge numerosity. Plaintiffs satisfy this requirement.

          2.      **Commonality**

In their opening brief, Plaintiffs established that commonality is satisfied because Plaintiffs' claims for prospective injunctive relief present several common questions of law and fact regarding the City's customs and policies related to protests against the police. ECF No. 113 at 9–10. Indeed, several preliminary findings previously made by the Court support the conclusion that these common questions of law and fact can appropriately be considered on a class-wide basis. *Id*. at 11 (citing to 2017 WL 5478410, at *14–*16).[3] Finally, and most importantly, Plaintiffs cited *Postawko*, along with several other Eighth Circuit cases, that support the conclusion that commonality is satisfied here because Plaintiffs are challenging the *customs and policies of the City* relating to protests against the police. *Id*. at 11-12.

The City failed to address any of the foregoing arguments or any of the Eighth Circuit cases relied upon by Plaintiffs. Instead, the City argues that "the plaintiffs cannot demonstrate that the injury to future class members will be the same." ECF No. 115 at 6. This argument, as the City frames it, however, improperly conflates the concept of *injury* with resulting *harm* to

---

[3]      The evidence that supports the entry of a preliminary injunction is, by nature, preliminary. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In this way, such evidence is similar to that which supports the certification of a class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) ("The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case. Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class."). So the unfinished nature of the evidence so far mustered is no bar to its consideration by the Court for the purpose of class certification. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (holding that class certification inquiry is "tentative").

suggest they must *both* be the same to establish commonality. It is enough that the injury be the same, even if the resulting harm from that injury might be different.

Neither the Supreme Court nor the Eighth Circuit has interpreted the "same injury" requirement to mean that all class members seeking prospective injunctive relief must suffer the same injury <u>and</u> identical resulting harm. To the contrary, when a putative class seeks prospective injunctive relief, the "same injury" requirement simply means that class members must face a violation of their constitutional rights by the *same* unlawful custom or policy. *See Postawko*, 910 F.3d at 1038 (rejecting defendants' argument that commonality was not satisfied because each inmate would suffer a different injury because the argument "misunderstands the nature of the class's claims," which were based on exposure to the "*same*" policy (italics in original)).

Here, as in *Postawko*, Plaintiffs satisfy this requirement because each putative class member suffers the same constitutional injury: being exposed to the *same* policies and customs of the City that cause City police officers to violate the constitutional rights of people protesting law enforcement. The harm experienced by some putative class members as a result of that injury will be a chilling effect, as in *281 Care Committee*; for others, the harm might be engaging in expressive activity and facing the risk of additional harm. And, some class members might experience additional harms, such a physical injury or lost wages, as a result of their constitutional injury. But the fact that the precise harm suffered by putative class members as a result of the challenged policies and customs may vary is immaterial to class certification because Plaintiffs are not seeking monetary damages, but rather seek prospective injunctive relief only, on behalf of the class. *See Postawko*, 910 F.3d at 1038 ("While a putative class seeking damages for such claims might struggle to satisfy Rule 23(a)(2), a class certified under

Rule 23(b)(2) seeking only injunctive and declaratory relief suffers no such difficulty."). Members of the class share in common that whatever the resulting harm, the cause of the harm is allegedly the policies and customs of the City that are challenged in this case.

Plaintiffs satisfy the commonality requirement.

### 3.    <u>Typicality</u>

In their opening brief, Plaintiffs established that typicality is satisfied because Plaintiffs' claims for prospective injunctive relief are based on the same policies and customs of the City of St. Louis as the claims of Plaintiff class members generally. ECF No. 113 at 12–13. In response, the City argues that typicality is not satisfied because the named Plaintiffs were subjected to these policies and customs under varying circumstances and suffered different resulting harms. ECF No. 115 at 6–8.

The City's argument has been rejected by the Eighth Circuit. Most recently, in *Postawko*, the court held that in lawsuit seeking "prospective injunctive and declaratory relief, the potential for minor 'factual variations' does not undermine" class certification. 910 F.3d at 1039. *See also Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174–75 (8th Cir. 1995) (holding that plaintiff's claims were "typical of the remainder of the class given the nature of the injunctive relief sought").

Similarly, in this lawsuit seeking solely prospective injunctive relief, the constitutional violations allegedly suffered by the Plaintiffs are typical of those suffered by the Plaintiff Class as a whole. Plaintiffs satisfy the typicality requirement.

4.    **Adequacy of Representation**

The City does not challenge the adequacy of class counsel. However, the City argues that Plaintiffs are not adequate class representatives because "[a]t least one plaintiff blatantly engaged in unlawful activity," while two others claimed only "observer" status. ECF No. 115 at 8.

It is doubtful that the City will establish its premise that Ahmad engaged in unlawful activity, much less that she did so blatantly. But that premise is beside the point. Plaintiffs' claim on behalf of the class is that the challenged customs and policies permit and cause the gratuitous use of force, including pepper spray, against nonviolent protestors. *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (holding that gratuitous use of force may be unconstitutional). That is, even if guilty of some kind of criminal conduct, Ahmad has the right to free from gratuitous force. Indeed, Ahmad's status as a nonviolent, suspected misdemeanant makes her an especially adequate representative in this case where Plaintiffs allege that, under the challenged customs and policies, *every* protestor on a street or sidewalk in the City can be a suspected misdemeanant at any time. *See testimony of police supervisor and lieutenant*, described at p. 5, *supra*.

Lewczuk and Mobley are adequate representatives of the class as well. First, even if they were present as observers, they would be adequate representatives because observing police carrying out duties in public can itself be expressive activity. *See* Ex. 8, Lewczuk Dep. 160:21-24 (explaining that legal observers "observe police and police/protestor interactions; their orders that that – the orders that are given, arrests made"; Tr. Vol I, 161:9-11 (Mobley testifying about observing "the police arresting two young people"). But neither Lewczuk nor Mobley are mere observers.

Mobley was recording the police activity and was detained and his video destroyed in retaliation for these actions. Recording police perform their duties while in public is protected

activity under the First Amendment.  *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("[T]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *see also Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) (holding that an individual's right to record officers' performance of their duties in public was clearly established); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) (holding there is a "First Amendment right to film matters of public interest"); *Turner v. Lieutenant Driver*, 848 F.3d 678, 687-88 (5th Cir. 2017) (establishing a First Amendment right to record police activity); *Fields v. Philadelphia*, 862 F.3d 353, 359-60 (3rd Cir. 2017) (same and commenting that all citizens, not just members of the media, have such a right and that "the act of recording, regardless what is recorded, may improve policing"); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005) (recognizing that there was "no doubt that the free speech clause of the Constitution protected" individuals who videotaped law enforcement officers because "[v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence"); *Ramos v. Flowers*, 429 N.J. Super. 13, 56 A.3d 869 (App. Div. 2012) (ruling that an independent filmmaker had a right to film police in the course of making a documentary film); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Demarest v. Athol/Orange Cmty. Television, Inc.,* 188 F. Supp. 2d 82, 94-95 (D. Mass. 2002) (finding it "highly probable" that filming of a public official on street outside his home by contributors to public access cable show was protected by the First Amendment, and noting that, "[a]t base, plaintiffs had a constitutionally protected right to record matters of public interest"); *Channel 10, Inc. v. Gunnarson,* 337 F. Supp. 634, 638 (D. Minn. 1972) (holding that police interference with television newsman's filming of crime scene and seizure of video camera constituted unlawful prior restraint under First Amendment). Indeed, "a

citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Glik*, 655 F.3d at 82; *see also Cumming*, 212 F.3d at 1333 (holding that individual citizens have a First Amendment right, subject to reasonable time, manner, and place restrictions, to photograph or videotape police conduct); *Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (recognizing that audio recording of police activity is entitled to some degree of First Amendment protection and "the act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights"). Mobley is an adequate representative of the proposed class.

In addition to observing the police, Lewczuk was wearing a green hat containing the words "National Lawyers Guild," which identifies her as a legal observer. (Lewczuk Dep. 171-172). As an identifiable legal observer, she is at protests, in part, "to send a message, kind of a deterrent message . . . [t]hat the protestors' First Amendment rights are being observed and we're not really protecting, we're not there as intervenors protecting, but there's someone there observing that those rights are being observed by police." *Id.* at 20. Her intent to convey a particularized message and the likelihood that the message would be understood make her particular conduct, being a legal observer in an identifiable green hat, expressive activity. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 404-5 (1989) (finding that desecration of the flag is expressive activity); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505 (1969) (same regarding students wearing black armbands at school); *Schnct v. United States*, 398 U.S. 58 (1970) (same regarding wearing military uniforms in presentation); *accord Elli v. City of Ellisville, Mo.*, 997 F. Supp. 2d 980, 984 (E.D. Mo. 2014) (finding that flashing headlamps "sends a message to bring one's driving in conformity with the law—whether it be by slowing

14

down, turning on one's own headlamps at dusk or in the rain, or proceeding with caution"). Lewczuk is an adequate representative of the putative class.

Plaintiffs satisfy the adequacy of representation requirement.

### B.    The Plaintiff Class Satisfies Rule 23(b)(2)'s Requirements

The City does not dispute that Plaintiffs satisfy the requirements under Rule 23(b)(2).

## IV.    Hypothetical concerns about preclusive effect in other cases is not a legal basis for denying class certification.

In a final attempt to defeat class certification, the City argues that "[i]f this case proceeds as a class action, a judgment in plaintiffs' favor inevitably will be claimed to have preclusive effect" in other pending damages actions, thereby potentially impairing the Seventh Amendment rights of the City and its police officers. ECF No. 115 at 9–11.[4] The City's novel argument lacks legal support. Indeed, the City does not cite a single case that has applied its theory to deny class certification.

---

[4]      While "[s]ection 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief through 'an action at law, suit in equity, or other proper proceeding for redress[,]'" there is no statutory right to a jury trial. *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 707–08 (1999). In the absence of a statutory right to a jury trial, the question becomes whether the Seventh Amendment guarantees such a right on a § 1983 claim. *Id.* at 708. The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. AM. VII.

      Although a jury trial is an option in many cases, "[i]t is settled law that the Seventh Amendment does not apply" in all contexts, including "suits seeking only injunctive relief" and "suits seeking only equitable relief." *City of Monterey*, 526 U.S. at 719 (citing *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470 (1987) and *Parson v. Bedford*, 3 Pet. 433, 7 L.Ed. 732 (1830)). The lack of a right to a jury trial in this case applies to Plaintiffs as well as the City and is because the Congress, in enacting section 1983 and in submitting the Seventh Amendment to the States, decided so, not because of any sly tactics by Plaintiffs.

Plaintiffs pleaded this case as a putative class action from the beginning, ECF No. 1, and first moved to certify a Plaintiff class nearly a year before any damages suits were filed related to police misconduct during the Stockley verdict protests, ECF No. 20. Class certification is not a sinister effort to circumvent the Seventh Amendment. It is instead intended to obtain an injunction that can be enforced by the hundreds of people who face constitutional injury in the future without joining hundreds of individual plaintiffs as parties to this case. In *Hussein v. County of St. Louis*, No. 4:14-cv-1410-JAR, ECF No. 87 (E.D. Mo. Apr. 27, 2016), a case that did not include a certified class, for instance, the City of Ferguson successfully argued that third parties could not enforce a consent judgment that prohibited Ferguson from arresting people taking photographs or recording in public places unless they were threatening the safety of other or physical interfering with the ability of law enforcement to perform their duties. An injunction in the present case is of much less value if, despite an ultimate finding that the City has violated the constitutional rights of those engaged in expressive activity, the City can avoid violating the injunction by simply not applying its unconstitutional policies and customs to the three named plaintiffs while continuing to apply those same policies and customs in an unconstitutional manner to anyone else who participates in expressive activity intended or perceived as a protest of police at a traditional public or designated public forum within the City of St. Louis.

In any event, the City's argument is unpersuasive and cannot withstand scrutiny.

First, it is well established that a ruling on a class certification does not address the merits of the underlying claims. *See, e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("decision to certify a class is far from conclusive judgment on the merits"). As a result, a ruling by this Court granting Plaintiffs' motion for class certification will have no

preclusive effect on the issue of liability in this case or any other pending damages actions against the City.

Second, regardless of how the Court rules on Plaintiffs' motion for class certification, this case might proceed to trial—either as a class action or by the individual plaintiffs. In either scenario, the Court will then address the merits of Plaintiffs' claims. To the extent such a ruling may have some preclusive effect in the other pending damages actions,[5] it will be because this case was filed well before the other pending damages actions.

At its core, the City's argument is based on a frustration about Plaintiffs' so-called "ploy" to seeking certification for purely prospective injunctive relief. ECF No. 115 at 10. However, there is no ploy as there is nothing improper about seeking such relief. Indeed, the case law is replete with courts granting class certification in civil-rights cases where the plaintiffs seek prospective relief under Rule 23(b)(2) to halt the future repeat of constitutional violations that have happened in the past. As noted, the Eighth Circuit's recent ruling in *Postawko* is an example of such a case. There, the fact that approximately 5,000 Missouri inmates are not being treated for Hepatitis C despite an available cure and, for some, the resulting harm is death did not prevent certification of a plaintiff class seeking prospective relief, despite whatever preclusive effect a judgment on the merits of the challenge to the customs and policies might have in individual damages cases pursued by members of the class. *See Postawko v. Missouri Dep't of Corrs.*, No. 2:16-CV-04219-NKL, 2017 WL 3185155, at *5 (W.D. Mo. July 26,

---

[5]      It is unlikely that any ruling by this Court in this case will have preclusive effect on the specific and narrow issues of liability presented in the pending damages actions against the police officers involved in those cases. In each of those cases, the jury will have to determine whether the *specific* conduct of each identified police officer violated the plaintiff's constitutional rights and, if so, what damages the plaintiff is entitled to recover under those circumstances. Moreover, as to municipal liability, even assuming there could be issue preclusion as to the existence of the City's unconstitutional customs and policies, there is no reason to believe the City would not retain its entitlement to a jury trial on the questions of whether those customs or policies caused the alleged damages and the amount of damages.

2017), *aff'd*, 910 F.3d 1030 (8th Cir. 2018). Any hypothetical concerns about issue preclusion preventing a jury trial can be addressed and remedied later, if, after Plaintiffs have prevailed on the merits, a third-party claims a preclusive effect in some other case.

**<u>Conclusion</u>**

For the foregoing reasons and for those set forth in Plaintiffs Memorandum in Support, ECF No. 113, Plaintiffs request that the Court grant their motion for class certification and such other further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Omri E. Praiss, #41850
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278MO
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
ACLU of Missouri Foundation
(816) 470-9938
gwilcox@aclu-mo.org
*Attorneys for Plaintiffs*