**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MALEEHA AHMAD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-2455 CDP |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

### Plaintiffs' Memorandum in Opposition to Defendant's Motion for Protective Order

The City has moved for a protective order to prohibit the depositions of two St. Louis police officers. It is undisputed that Officer Jeremy Davis and former officer William Olsten each worked at the Stockley protests, that Davis made arrests of perceived anti-police protestors, and that Olsten deployed chemical agents against perceived anti-police protestors. The officers' testimony, which will shed light on their justifications for these actions, is relevant to Plaintiffs' *Monell* custom and policy claims. A protective order is not warranted. Plaintiffs respectfully request the Court expedite ruling on at least Olsten's deposition because it is scheduled for next Monday, March 18, 2019.

### I.      Governing standards and relevance of testimony sought

When there is a dispute about a discovery matter, a court will determine whether the discovery sought is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Under Rule 26(b)(1), relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Dapron v. Spire, Inc. Retirement Plans Comm.*, 2019 WL 141376, 4:17CV2671 JMB, at *3 (E.D. Mo. Jan. 9, 2019) (quoting *Jo Ann Howard & Assocs., PC v.*

*Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014)). Under the same subsection, proportionality is adjudged by considering the importance of the issues at stake in the action, the amount in controversy,[1] the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

Upon a showing that the discovery sought is relevant, the burden is on the party resisting discovery to demonstrate why it should be disallowed, either because of disproportionality or other reason. *See, e.g., CitiMortg., Inc. v. Allied Mortg. Grp., Inc.*, 2012 WL 1554908, 4:10CV01863 JAR, at *2 (E.D. Mo. May 1, 2012); *CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, 2018 WL 3552342, at *3 (N.D. Iowa July 24, 2018) ("The burden of showing that a discovery request is not proportional . . . lies with the party objecting to discovery."); *Lahart v. BNSF Ry. Co.*, 2016 WL 10586171, at *3 (S.D. Iowa Nov. 10, 2016) ("The party objecting to discovery carries the burden of proving its objection.").

When the party resisting discovery seeks to prevent a deposition, that burden is especially heavy. *See Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (collecting cases and commenting that "in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an extraordinary measure which should be resorted to only in rare occasions") (internal quotation marks and brackets omitted); *accord Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("Protective orders prohibiting depositions are rarely granted.").

---

[1]     The principle of proportionality was first explicitly introduced into Rule 26 in 1983; it was then modified a couple of times before moving to its present home and conceptualization in 2015. When the 1983 amendment was effected, the Committee cautioned that "many cases in public policy spheres, such as . . . free speech . . . may have importance far beyond the monetary amount involved." *See* Committee Note to 2015 amendments, quoting Committee Note to 1983 amendments.

Plaintiffs turn now to the required threshold showing of relevance that they must make to establish their right to take each of the disputed depositions.

### a.  Relevance of Jeremy Davis' testimony

First, as background, Officer Davis remains employed by the City. The City represented it would produce witnesses it currently employs without necessitating service of subpoenas. As such, Plaintiffs first requested a deposition date for Davis on January 29 and, after no dates were provided, sent a follow-up request on February 12. When there was no further response by February 21, Plaintiffs sent an interrogatory seeking addresses of current and former employees for service of trial or deposition subpoenas and included Davis therein.[2] On February 26, the parties spoke by phone and corresponded by email. Defense counsel expressed reluctance about producing Davis. After the conversation, in which Plaintiffs' counsel explained the relevance of Davis' testimony, Plaintiffs' counsel advised that same day that they continued to seek to depose Davis. On March 4, after there had been no further response, Plaintiffs sent another request for a deposition date. Thereafter, the parties met and conferred as Defendant explains in its motion.[3]

Second, Davis' testimony is relevant because he is one of the officers who carried out the policies and customs Plaintiffs have alleged violate the First, Fourth, and Fourteenth Amendments: to enforce certain City ordinances that make no exception for expressive activity arbitrarily against persons perceived to be protesting the police and to use retaliatory, unreasonable force against them when doing so. So far, evidence shows that the basis for the encircling, mass arrest, and use of force against perceived anti-police protestors on September

---

[2]      As Plaintiffs' counsel told defense counsel at the time, Plaintiffs intend to withdraw the subpart listing any employee the City agrees to produce for deposition and trial.

[3]      Counsel for the parties discussed several depositions during that conversation. The City objected to Plaintiffs' request to depose a third officer as well, and Plaintiffs agreed to substitute someone else.

17, 2017 was—like for other police enforcement actions during the Stockley protests—St. Louis

Code § 17.16.275, which criminalizes "failure to disperse" and "impeding the flow of traffic."

(*See, e.g.*, Page from Incident Report CN 17-045977, Bates No. City 00142–143, attached hereto

as Exhibit 1.) Code § 17.16.275 is a written policy implemented by the officers who carried out

the kettle and mass arrest. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)

(holding among other things that a municipality may be sued where "the action that is alleged to

be unconstitutional implements a[n] . . . ordinance").

It is undisputed that Officer Jeremy Davis was present at the kettle. (*See* Ex. 1 at 00143.)

The City has documented that he was the arresting officer of Alex Nelson (*see id.*), who offered

testimony about his arrest and the allegedly viewpoint-retaliatory use of force against him at the

preliminary injunction hearing. (*See* Excerpt of Hearing Testimony, Vol. 1 225:8-14, attached

hereto as Ex. 2.) Furthermore, evidence shows Nelson is not the only perceived anti-police

protestor Officer Davis arrested during the Stockley protests for allegedly violating § 17.16.275.

**b.  Relevance of William Olsten's testimony**

First, as background, Plaintiffs also requested a deposition date for Olsten on January 29.

That same day, the City advised that it would likely be unable to produce him. Acknowledging

such, later on January 29, Plaintiffs sent the City an interrogatory seeking Olsten's address and

personally identifying information for the purpose of serving a deposition subpoena, a purpose

they explained to defense counsel at that time. On March 4, Defendant provided an address. On

March 5, Plaintiffs' process server personally delivered service of process to Olsten at his home.

The deposition is noticed for March 18.

Second, William Olsten's testimony is relevant because he deployed chemical agents

against perceived anti-police protestors during the Stockley protests, and his testimony will shed

light on his justifications for doing so. Plaintiffs previously submitted the declaration of a

perceived anti-police protestor whom Olsten sprayed with mace during a Stockley protest, *see*

De Mian Decl. ¶ 9, ECF No. 29, along with a video thereof. (*See* ECF No. 65, Clerk's List of

Exhibits Rec'd–Ex. 14 (De Mian video).) Photographs show De Mian is not the only perceived

anti-police protestor against whom Olsten deployed mace during the Stockley protests.

## II.     The City has not made the showing required to prohibit the depositions

Once Plaintiffs have established that the discovery they seek meets the required threshold

showing of relevance, the City bears the burden of showing good cause for nonetheless

prohibiting the discovery under Rule 26(c). *See Misc. Docket Matter No. 1 v. Misc. Docket*

*Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). "Stereotypical and conclusory statements are

insufficient to establish good cause under Rule 26(c)." *Ezell v. Acosta, Inc.*, 4:16-CV-00870

RLW, 2017 WL 6493166, at \*2 (E.D. Mo. Dec. 15, 2017) (citing *Misc. Docket Matter*, 197 F.3d

at 926); *see also Frideres*, 150 F.R.D. at 156.

Federal Rule of Civil Procedure 26(c) describes grounds that may prevent relevant,

proportional discovery: annoyance, embarrassment, oppression, or undue burden or expense. The

City appears to assert that depositions of Officer Davis and former officer Olsten would amount

to embarrassment or undue burden for those individuals.[4] However, what the City describes is

not what "embarrassment" or "undue burden" mean in the context of the Rule. *See Frideres*, 150

---

[4]         It is not clear that the City may raise these concerns on behalf of the nonparty officers. The Olsten
subpoena was served pursuant to Rule 45 (and a Davis subpoena would likewise be, had the City not represented it
would produce still-employed officers). *See Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013)
(permitting defendant to seek protective order on grounds that subpoenas sought *irrelevant* or *cumulative* discovery,
but commenting that, under Rule 45, "parties to whom subpoenas are not directed lack standing to quash or modify
such subpoenas on the basis that the subpoenas impose an *undue burden*") (emphasis added); *accord York Grp., Inc.*
*v. York S., Inc.*, 2006 WL 3392247, at \*1 (E.D. Ark. Oct. 26, 2006) (holding that "a party to the action does not have
standing to assert any rights of the nonparty as a basis for a motion to quash or modify a subpoena" unless the party
"claims a personal right or privilege regarding the . . . testimony sought by [the] subpoena directed to [the]
nonparty"). *See also Amisi v. Melick*, 2016 WL 3149682, at \*7 (D.S.D. June 3, 2016) ("'Annoyance' and
'embarrassment' do not appear in Rule 45(d)(3) as grounds whereby a court 'must' or 'may' quash a subpoena.").

F.R.D. at 156 (holding that conclusory statements are insufficient to support a motion for a

protective order to prohibit the taking of an oral deposition); *see also Misc. Docket Matter*, 197

F.3d at 926 (commenting in review of order on motion to quash deposition subpoena issued to

nonparty employee of defendant that "an applicant for a protective order whose chief concern is

embarrassment must demonstrate that the embarrassment will be particularly serious") (quoting

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)).

  *Flanagan v. Wyndham International*, 231 F.R.D. 98 (D.D.C. 2005), is illustrative on this

point. In that case, two children sued a hotel that had employed a daycare worker who sexually

assaulted them. The hotel sought to depose a nonparty child who had attended daycare with the

assaulted children, even though she had already been deposed in a case brought by another

victim of the hotel daycare worker. First addressing whether the nonparty child's testimony was

relevant, the court pointed out that the nonparty child basically conceded relevance: she did not

deny that she had interacted with the victim plaintiffs during the relevant time period. *Id.* at 104.

She argued instead that it was duplicative because her information had "been disclosed in her

previous testimony." *Id.*. The court held that the nonparty child's "claims that the deposition will

elicit duplicative information [we]re not a factor in determining relevance of her knowledge but

[could] only be used to support her showing of burden." *Id.* Second, turning to its consideration

of undue burden under Rule 26(c), the court agreed to protect the nonparty child from having to

give the exact "same testimony she ha[d] already provided" but denied the motion to prohibit the

hotel from deposing her altogether. *Id.* at 105. The court concluded that because the *Flanagan*

deposition would have an "inherently divergent" focus, it would not be unreasonably duplicative

of the earlier deposition the child had given. *Id.*

Given that—unlike the nonparty child in *Flanagan*—Olsten and Davis have been accused

of unconstitutional conduct caused by the alleged City policies and customs at issue in this case,

the City's claims that deposing them will cause them[5] embarrassment or undue burden are less

compelling than in *Flanagan*. *See Hurlburt v. Lohr Distributing Co., Inc.*, 2019 WL 398370, at

*5–*7 (E.D. Mo. Jan. 31, 2019) (denying party's motion for protective order where she sought to

exclude person from her deposition but her "asserted discomfort" did not satisfy her burden

under Rule 26(c)(1) and commenting that "protective orders pursuant to Rule 26(c) should be

sparingly used and cautiously granted") (quoting latter from *Gioioso v. Thoroughgood's

Transport, LLC*, 2017 WL 3726028, at *1 (D. Md. Aug. 28, 2017)).

But even if the objections were as serious as in *Flanagan*, they are premature. The City is

asking the Court to prohibit depositions now based on future discovery requests in other cases

that may not happen, and if they do, will have an "inherently divergent" focus because the

plaintiffs and remedies sought do not fully overlap. *Id.*; *see also Frideres*, 150 F.R.D. at 156

(holding that "speculative statements" will not suffice to justify the prohibition of an oral

deposition). Plaintiffs have been unable to find any case where a court granted a protective order

to prohibit a deposition of an individual because a second deposition of that individual in a

related but distinct case may later be sought. If that happens, and the City, Olsten, or Davis

believes a protective order is warranted, they may seek one in those cases at that time.

---

[5]      Instead of vicariously raising *the officers'* right to be free of undue burden or embarrassment, the City may be claiming *it* may suffer undue burden or embarrassment due to the depositions of Davis and Olsten. That claim similarly fails to satisfy the City's burden to prohibit relevant discovery. *See Burke v. Ability Ins. Co.*, 2013 WL 842512, at *2–*3 (D.S.D. March 6, 2013) (discussing factors to consider when addressing Rule 26(c) protective order, including interest in privacy, and commenting that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny") (quoting *Pansy*, 23 F.3d at 787, which is quoted with approval in *Misc. Docket Matter*, 197 F.3d at 926)).

For these reasons, Plaintiffs request that the City's motion for a protective order be denied. Plaintiffs also respectfully request that the Court rule on an expedited basis at least on the propriety of William Olsten's deposition because it is scheduled for next Monday, March 18.


Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
ACLU of Missouri Foundation
(816) 470-9938
gwilcox@aclu-mo.org
*Attorneys for Plaintiffs*