**U.S. District Court for the
Eastern District of Missouri
Eastern Division**

| | |
|---|---|
| Maleeha Ahmad, *et al.* <br> Plaintiffs, <br><br> v. <br><br> City of St. Louis, <br> Defendants. | Case No. 4:17-cv-2455-CDP <br><br><br> The Honorable Catherine D. Perry |

**Nonparty National Lawyers Guild's
Reply Brief in Support of the Motions to Quash**

Earlier today, defendant City of St. Louis filed its Response to the Court's

Show Cause Order (ECF No. 141), arguing that its subpoenas against Keith Rose

and Scott Kampas should not be quashed. They argue that the Legal Observer

Program's training materials might show some kind of bias or lack of credibility

regarding witnesses who are legal observers. But if this is true, the request is now

duplicative—defendant has already obtained testimony of legal observers stating,

under oath, that when they deploy, they are focused only on documenting police

misconduct. The LO trainings would give no further insight into what Lewczuc

and others saw (or did not see) during the weekend of September 15, 2017.

Perhaps most important, defendant overstates the relevant facts as they pertain to

1

Lewczuc. Plaintiffs have alleged that on the evening of September 17, police attacked her and others near her as a group, without distinctions between individuals. So her legal-observer status is simply not relevant to that alleged interaction between police and the group they attacked.

The LO trainings still constitute attorney work product, despite defendant's protestations. True, the National Lawyers Guild thinks that its LO Program can act as a deterrent to unconstitutional police behavior. But that is ancillary to its primary purpose, which is to document constitutional violations in anticipation of litigation. NLG attorneys regularly represent demonstrators in criminal and civil cases across the country on the basis of information obtained through the LO Program. Tellingly, defendant did not address the harm that disclosure would cause NLG. The LO trainings contain litigation strategies and legal theories that NLG attorneys have developed to hold state actors accountable in court. Disclosure of those materials, to the very entity its attorneys seek to sue, would seriously harm the LO Program's effectiveness.

Finally, defendant suggests NLG's claim of confidential proprietary information should be ignored because the materials "are simply not available anywhere else." In other words, defendant seeks disclosure of NLG's confidential information because it is "confidential." This circular argument cannot—and does not—outweigh the significant harm disclosure would cause to NLG.

NLG respectfully asks that this Court grant its motions to quash the subpoenas against Keith Rose and Scott Kampas, with the qualifications this Court set out in its April 1, 2019 Memorandum and Order.

2

Respectfully submitted,


*/s/ Margaret Ellinger-Locke*
Margaret Ellinger-Locke, 63802MO
Counsel for National Lawyers Guild
2019 Sheridan Street
Hyattsville, MD 20782
Ellinger.Locke@gmail.com
Phone: (314) 805-7335

*/s/ Laurence Mass*
Laurence D. Mass, 30977MO
Counsel for National Lawyer Guild
230 S. Bemiston Ave., Suite 1200
St. Louis, Missouri 63105
Phn: (314) 862-3333 ext. 20
Fax: (314) 862-0605
laurencedmass@att.net

**Certificate of Service**

I certify that on April 3, 2019, the foregoing was served electronically on all parties via CM/ECF.

*/s/ Margaret Ellinger-Locke*, 63802MO
Counsel for the National Lawyers Guild

3