```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                    EASTERN DIVISION


MALEEHA AHMAD, et al.,       )
                             )
      Plaintiffs,            ) Case No. 4:17-cv-2455-CDP
                             )
v.                           )
                             )
CITY OF ST. LOUIS,           )
                             )
      Defendant.             )
```

**REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISSOLVE AND DISMISS**

Plaintiffs have succinctly responded [doc. 154) to the defendant City's motion to dissolve the preliminary injunction and to dismiss the action for injunctive relief [doc. 126].  The gist of plaintiffs' position is that disposition of the motion should await trial on the merits.  Plaintiffs also assert that they have not finished marshaling their evidence in the case, that the video and audio evidence submitted with the motion is wanting, and that in any case depositions of the City under F.R.Civ.P. 30(b)(6) and of the then acting police commissioner support their position.

The City appreciates that the Court permitted its opening memorandum to greatly exceed the standard length under local rule, so the City will endeavor to match plaintiffs' succinctness in this reply.

1.    At the outset, the City would clarify the record in two respects. First, plaintiffs criticize the City's delay in filing its motion to dissolve and dismiss, arguing that the proximity of the trial date militates against expeditious consideration of the motion.  This action was filed on October 12, 2017, and the preliminary injunction was entered on November 15, 2017.  The original case management order [doc. 81] was entered in May, 2018, at which time the parties were referred to ADR.  In July, the parties jointly sought a revision of the CMO, pointing to "diligent" negotiations.  The second amended complaint was not filed until September, and the first request for production of documents was served by plaintiffs in October.  Discovery commenced in earnest in December.  The motion to dissolve and dismiss was filed in April, prompted by the extensive additional information that included video and audio records not available at the time of the preliminary injunction hearing, and by the undisputed reality that the circumstances of the fall of 2017 have not been repeated.

Second, the City's opening memorandum was incomplete in its discussion of the events of the night of September 17, 2017, which led to plaintiffs' claimed "maelstrom" of constitutional violations.  The hearing testimony of some

2

witnesses (particularly Lt. Sachs) could have left the impression that no unlawful, violent acts had been perpetrated by any crowd after 8:30 p.m.  While it is quite true that no vandalism was documented after that time, and it is also true that there was no violent conduct at the precise time when the police closed in at Tucker and Washington, the record clearly shows that within the hour before the mass arrests, the crowd had been disorderly and assaulted police officers with missiles at Tucker and Locust.  The crowd that was arrested at Tucker and Washington had migrated from Tucker and Locust in the time it took the police to assemble in sufficient numbers to make the arrests.  Thus, the unlawful assembly that was declared shortly before the mass arrest was the result not just of violent behavior prior to 8:30 p.m., but was a direct result of violent behavior at Tucker and Locust around 11:00 p.m.  See Exhibit A filed herewith (Leyshock depo.), pp. 50-51; Motion to Dissolve, Ex. G (audio).

    2.   Procedurally, defendant's motion is raised under F.R.Civ.P. 12(h)(3), not 12(b)(1), and in light of the flexible standard applicable under Rule 60(b) when pattern or practice claims have led to federal injunctive relief for an extended period.  Cf. *Petties v. District of Columbia*, 662 F.3d 564 (D.C.Cir. 2011).  Defendant's

3

motion, premised on jurisdictional grounds, can be resolved on the record as it now stands, with the Court free to resolve factual disputes as necessary.  E.g., *McElmurray v. Consol. Govt. of Augusta-Richmond County,* 501 F.3d 1244 (11th Cir. 2007); *Brown v. Medtronic, Inc.,* 619 F.Supp.2d 646 (D.Minn.), aff'd, 628 F.3d 451 (8th Cir. 2010).  Of course, the Court can choose to grant an evidentiary hearing, but it certainly is not essential, compare *Davis v. Anthony,* 886 F.3d 674 (8th Cir. 2018)(applying Rule 12(b)(1)) with *McCann v. Geo. W. Newman Irrev. Trust,* 458 F.3d 281 (3rd Cir. 2006), and defendant submits that delay in disposition of the motion is not warranted.

    3.   Plaintiffs simply disregard the standing issue and the dictates of F.R.Civ.P. 12(h)(3).

    Plaintiffs misread *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998).  In that case, the Court clearly held that the threshold question in any federal case is whether the plaintiff has standing, which is a jurisdictional question as well as an aspect of justiciability.  The burden of showing the existence of the federal jurisdictional "triad" of injury in fact, causation, and redressability rests on the plaintiff. Thus, while the existence of a cause of action is not jurisdictional, the plaintiff's standing to assert a claim

4

most definitely is.  It is especially noteworthy that, in the course of its analysis in *Steel Co.*, the Supreme Court repeatedly cites *City of Los Angeles v. Lyons* and *O'Shea v. Littleton*, in support of its conclusion that the plaintiffs in *Steel Co.* lacked standing. 523 U.S. at 109.

To be sure, *Steel Co.* rejects any equation between failure to state a claim and failure of jurisdiction, but the City's position in the case at bar is that plaintiffs have wholly failed to demonstrate standing to seek the equitable relief they demand.  Since standing is intrinsic to a federal court's subject matter jurisdiction, this Court is obliged to confront it whenever raised and to dismiss when standing is not shown.  See also *Ashcroft v. Mattis,* 431 U.S. 171 (1977); *Golden v. Zwickler,* 394 U.S. 108 (1969); *Ananiev v. Freitas,* 37 F.Supp.3d 297 (D.D.C. 2014)(fear of future Fourth Amendment violations did not establish justiciable controversy).

3.   Given that the City's ordinances at issue are facially valid, plaintiffs have failed to carry their burden of showing the existence of a justiciable case or controversy.

The question of plaintiffs' standing with regard to the unlawful assembly and impeding traffic ordinances is more complex than that pertaining to the use of mace, but

5

in the final analysis, plaintiffs lack standing on that question as well.

The Court's conclusion that the plaintiffs have standing to attack the validity of the ordinances would be correct, if the ordinances were facially invalid.  However, they are not. See *Agnew v. District of Columbia,* 2019 U.S. App. LEXIS 10060 (D.C.Cir. 2019)(ordinance penalizing impeding or "incommoding" pedestrian or vehicular traffic was constitutional).  In addition, the question of the constitutional validity of a penal ordinance will be assessed on the basis of the ordinance "as applied" to the plaintiff, before reaching an issue of overbreadth.  See *Renne v. Geary,* 501 U.S. 312, 324 (1991).  Here, the plaintiffs lack standing to attack the ordinances "as applied," because they have not suffered a redressable injury as a result of the application of either City ordinance.

This Court has already concluded in substance that plaintiff Ahmad violated City Code §17.16.275 by standing in the middle of Tucker Boulevard blocking a police bus. Memorandum and Order [doc. 57] at 3, 43. There can be no question that the ordinance lawfully applies to her conduct.  That being so, her challenge to the unlawful assembly ordinance is a moot question, as she was never

6

subjected to enforcement of that ordinance.  Furthermore, at no point has plaintiff Ahmad testified to any intention to violate either ordinance in the future. See Motion to Dissolve, Ex. L (Ahmad depo., doc. 126-12), pp. 33-35.

Similarly, plaintiff Mobley's complaint is the unlawful search and seizure of his cell phone.  Assuming the truth of his claim--and skepticism is counseled by his bitter bias against police, Mobley depo. [doc. 126-13], p. 57, and his preposterous testimony about "children" which drew the Court's notice at the preliminary injunction hearing, I Tr.Prel.Inj. [doc. 62] 161-62--neither ordinance at issue purports to regulate citizen recordings of police activity, and the City's express policies recognize a right to do so, even though the right is not clearly established as a matter of constitutional law. See *Colten v. Kentucky,* 407 U.S. 104, 109 (1972):  "[Colten] had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time. The State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from

7

bystanders, even those claiming a third-party interest in the transaction."

In any event, there is no evidence that plaintiff Mobley intends to impede traffic or engage in violation of the unlawful assembly statute or ordinance in the future. Motion to Dissolve, Ex. M (Mobley depo., doc. 126-13), pp. 25, 41, 43, 60-61.  His claim for relief is entirely hypothetical.

Finally, plaintiff Lewczuk testified unequivocally that she has never engaged in any protest, peaceful or violent, but rather attends protests only to observe police conduct.  She testified that she obeys all police orders to move out of the right of way or to disperse, and she did not testify to any intention to engage in conduct in the future to which the City's ordinances will apply.  In sum, the relief she claims will not address any concrete individual interest.  Motion to Dissolve, Ex. N (Lewczuk depo., doc. 126-14), pp. 129-32, 151.

Finally, it is clear that plaintiffs' complaints concerning enforcement of the unlawful assembly and impeding traffic ordinances are fundamentally the same as their claims regarding the police use of mace:  the police have a practice of giving vague or confusing dispersal orders and not allowing enough time to comply, just as they

8

have applied mace without warning.  Once again, these claims rest on hypothetical future scenarios.  There is and can be no evidence that the City will in the future apply its ordinances to protest gatherings that do not involve violations of law by force or violence, and do not occupy the public right of way and remain for extended periods.

In the case at bar, it is undisputed that the police declared unlawful assemblies only after violent behavior by protesters at Tucker and Clark, at the Mayor's home, and at Tucker and Locust.  They gave repeated dispersal orders.  To "disperse" is a term of common understanding and is far less vague than the term "incommode."  As *Bernini v. City of St. Paul,* 665 F.3d 997, 1003 (8th Cir. 2012), makes clear, the crux of probable cause to arrest members of a crowd is a reasonable belief that the members are acting unlawfully as a unit.  By a parity of reasoning, an assembly has "dispersed" when its members go their separate ways and the group ceases to act as a unit.  Plaintiffs would have this Court try to write a police procedural manual governing what "disperse" means under any and all circumstances.  The Court wisely refrained from doing so in its preliminary injunction, and the Court should now recognize that it is impossible.  Plaintiffs' demands for relief by judicial composition of a dispersal script for

City police in potential riot situations is in the same category as the demand in *Lyons* for a judicial protocol to govern use of chokeholds.

The only ground of distinction between plaintiffs' claims and those proffered in *O'Shea* and *Lyons* is the allegation of a City "custom," or pattern and practice of unconstitutionally enforcing its ordinances. While this allegation injects merits issues into the standing analysis, it is nevertheless apparent from the record that plaintiffs' claims are indistinguishable from those asserted in *Rizzo v. Goode,* 423 U.S. 362 (1976), and seek to utilize the Court's equitable jurisdiction to define how officers in the field must enforce valid ordinances. The record in this case shows at most a disconnected series of incidents in which some City officers deployed mace in a manner inconsistent with the City's express policies. Similarly, the record shows that unlawful assemblies were declared after rock- and bottle-throwing incidents on September 15, during the assault on the Mayor's home that evening, and after vandalism and assaults on police during the night of September 17.

Leaving aside the question of whether the Constitution requires any sort of warnings before police enforce a valid ordinance, the record here does not suffice to show a

10

pattern or practice of *constitutional violations* that is amenable to injunctive relief.  E.g., *Perkins v. Hastings*, 915 F.3d 512 (8th Cir. 2019).  Rather, it shows that *some* police officers have used mace against *some* protesters at various times in the past, and that unlawful assemblies have been declared and dispersal orders given at various times, but without also demonstrating that the use of mace or unlawful assembly declarations were always and everywhere illegal, under the same or similar circumstances.  In any event, the evidence likewise shows the adequacy of available remedies at law. Plaintiffs have yet to cite a single case supporting the sort of injunctive relief that they demand here.[1]

In sum, the plaintiffs seek to have the Court maintain a levee against a hypothetical future flood, but the Court is not the right contractor.  The federal courts are not in the business of rendering advisory opinions on how the police should proceed in enforcing valid laws.  As Justice

---

[1] Plaintiffs allude to the City's Rule 30(b)(6) deposition testimony--in response to argumentative questions calling for conclusions of law--to suggest that judicial intervention is necessary to forestall "vague" dispersal orders.  As noted above, "disperse" is a term of common understanding and the sort of precision that plaintiffs demand is not constitutionally required.  Further, plaintiffs advert to the deposition testimony on the issues of use of mace and quibble over the definitions of "active" and "passive" resistance; but the testimony makes clear that whether and when to use mace are questions that depend on the circumstances confronting an officer at the time.  None of this evidence shows standing; on the contrary, it shows that plaintiffs want what the plaintiffs wanted in *Lyons* and *Rizzo*.  Concurrently herewith, the City files the corrected and supplemented 30(b)(6) deposition for the sake of completeness of the record.  Exhibits B and B-1.

Scalia trenchantly put it in *Steel Co.*, "Suits that promise no concrete benefit to the plaintiff, and that are brought to have us 'determine questions of law *in thesi*,' . . . are most often inspired by the psychological smart of perceived official injustice, or by the government-policy preferences of political activists."  523 U.S. at 103 n. 5.  The preliminary injunction herein should be dissolved and this action dismissed.

                                                Respectfully submitted,

                                                JULIAN L. BUSH
                                                CITY COUNSELOR

                                                /s/ Robert H. Dierker
                                                Robert H. Dierker 23671MO
                                                Associate City Counselor
                                                dierkerr@stlouis-mo.gov
                                                Abby Duncan 67766MO
                                                Assistant City Counselor
                                                Megan Bruyns 69987MO
                                                Assistant City Counselor
                                                Amy Raimondo 71291MO
                                                Assistant City Counselor
                                                1200 Market St.
                                                City Hall, Rm 314
                                                St. Louis, MO 63103
                                                314-622-3361
                                                Fax 314-622-4956