# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 27, 2021

Mr. Robert Henry Dierker Jr.
CITY COUNSELOR'S OFFICE
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

      RE: 19-2062  Maleeha Ahmad, et al v. City of St. Louis, Missouri
            19-2221  Maleeha Ahmad, et al v. City of St. Louis, Missouri

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                                              Michael E. Gans
                                                               Clerk of Court

NDG

Enclosure(s)

cc:     Ms. Abby Joe Duncan
          Mr. Brandon David Laird
          Mr. Gregory J. Linhares
          Mr. Omri E. Praiss
          Ms. Amy Raimondo
          Mr. Anthony E. Rothert
          Ms. Jessie M. Steffan
          Ms. Gillian R. Wilcox

District Court/Agency Case Number(s):   4:17-cv-02455-CDP
4:17-cv-02455-CDP

# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

April 27, 2021

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  19-2062  Maleeha Ahmad, et al v. City of St. Louis, Missouri
            19-2221  Maleeha Ahmad, et al v. City of St. Louis, Missouri

Dear Sirs:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant and appeared on the brief was Robert Henry Dierker, Jr., of Saint Louis, MO. The following attorneys also appeared on the appellant brief; Brandon David Laird, of Saint Louis, MO., Abby Joe Duncan, of Saint Louis, MO., Amy Raimondo, of Saint Louis, MO., and Megan K. B. Bruyns, of Saint Louis, MO.

     Counsel who presented argument on behalf of the appellees and appeared on the brief was Anthony E. Rothert, of Saint Louis, MO. The following attorneys also appeared on the appellee brief; Omri E. Praiss, of Saint Louis, MO., Gillian R. Wilcox, of Kansas City, MO., Jessie M. Steffan, of Saint Louis, MO.

     The judge who heard the case in the district court was Honorable Catherine D Perry. The judgment of the district court was entered on May 15, 2019.

     If you have any questions concerning this case, please call this office.

                                   Michael E. Gans
                                   Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

        District Court/Agency Case Number(s):  4:17-cv-02455-CDP
                                                        4:17-cv-02455-CDP

United States Court of Appeals
For the Eighth Circuit

_____

No. 19-2062
No. 19-2221
_____

Maleeha S. Ahmad, et al.

*Plaintiffs-Appellees*

v.

City of St. Louis, Missouri

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2020
Filed: April 27, 2021

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

     In September 2017, following the acquittal of a former St. Louis police officer for the on-duty shooting of a black man, St. Louis police dealt with several days of extensive street protests. The initial protests were peaceful; police made no arrests and did not use force or chemical agents. After dark on September 15, a group attempted to seize a highway on-ramp. Turned back by police outfitted with riot gear,

they migrated to the area where police civil disobedience teams were about to leave in public transit buses. Some protesters locked arms to prevent the buses from leaving and were maced when they refused to obey orders to move. Others were maced when they approached police lines and failed to obey commands to "move back." Officers declared that certain gatherings were unlawful assemblies and issued dispersal orders. A large crowd threw objects at the mayor's house; security summoned police who deployed tear gas and pepper balls to disperse the group.

On the evening of September 17, rioters wearing masks and goggles roamed downtown St. Louis, smashing windows and engaging in other vandalism. Some were arrested. During the chaos, a group of officers the City admits "went rogue" seized and beat a protester who in fact was an undercover detective and destroyed the phone he was using to record police conduct. Text messages between abusive officers revealed a plan to beat protesters and suggested that if they had beaten a real protester rather than an undercover detective, they would not be in any trouble. Elsewhere that evening, when rioters harassed police, the commander ordered arrests. Awaiting reinforcements, police declared the crowd an unlawful assembly and issued repeated orders to disperse, in-person and via public address. An hour later, police arrested and maced approximately 125 people.

These incidents gave rise to this lawsuit. Plaintiffs, now three in number, are a protester who allegedly was maced, a person whose cell phone was seized and searched as he filmed arrests, and an observer who was allegedly exposed to chemical agents and arrested on September 17. Plaintiffs filed a First Amended Complaint for Prospective Relief and a motion for a preliminary injunction on September 28, 2017. The Amended Complaint alleged that the City (i) violated the First Amendment by retaliating against plaintiffs for engaging in protected expressive activity; (ii) violated the Fourth Amendment because its custom, practice, and failure to train and supervise caused unlawful seizures and the use of excessive force by police officers; and (iii) violated the Fourteenth Amendment when officers failed to warn before deploying

chemical agents, failed to provide opportunities to disperse, and arbitrarily enforced two ordinances of the St. Louis Code. For relief, plaintiffs urged the court to "[i]ssue a temporary restraining order, preliminary injunction, and permanent injunction requiring the City of St. Louis to declare protests 'unlawful assemblies' and to order protestors 'to disperse' in a constitutional manner and otherwise limit police activities at protests as required by the Constitution."

The district court held a three-day evidentiary hearing at which eighteen witnesses testified in support of the motion for preliminary injunction. On November 15, 2017, the court granted the injunction set forth in the Appendix to this opinion. At the same time, the court referred the case to mediation, setting a compliance report deadline of February 15, 2018  The City did not timely appeal the preliminary injunction, which was an appealable interlocutory order. See 28 U.S.C. § 1292(a)(1). The mediation was extended. On February 1, 2019, plaintiffs filed a Second Motion To Certify Class. On March 29, the City filed a motion to dissolve the preliminary injunction and dismiss the Second Amended Complaint "for lack of equitable jurisdiction." On May 6, the mediator filed a Compliance Report stating that the parties "participate[d] in good faith [but] did not achieve a settlement." On May 7, the district court entered an order granting certification of a Rule 23(b)(2) class. See Fed. R. Civ. P. 23 (b)(2). On May 15, 2019, the court denied the City's motion to dismiss and to dissolve the preliminary injunction.[1] The City timely appealed both

---

[1] We affirm the district court's denial of the City's motion to dismiss, which was based upon a flawed or premature jurisdictional contention that plaintiffs lack Article III standing. "A determination even at the end of trial that the court is not prepared to award any remedy that would benefit the plaintiff may be expressed as a conclusion that the plaintiff lacks standing." 13C Wright, Miller, & Cooper, Fed. Prac. & Procedure § 3531.6, p.478 (2d ed. 1984). But the determination that plaintiffs lack equitable standing is often not jurisdictional but a ruling on the merits. See generally City of Los Angeles v. Lyons, 461 U.S. 95 (1983).

-3-

orders. We granted permission to appeal the class certification order, see Rule 23(f), and consolidated the two appeals. We now remand with instructions.

## I. Motion to Dissolve Preliminary Injunction

The City appeals the denial of its motion to dissolve the preliminary injunction. We have jurisdiction over interlocutory orders "granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Our standard of review is for abuse of discretion. Waste Management, Inc. v. Deffenbaugh, 534 F.2d 126, 129 (8th Cir. 1976). Modifying or dissolving a preliminary injunction "is proper only when there has been a change of circumstances . . . that would render the continuance of the injunction in its original form inequitable." Favia v. Indiana Univ. of Pennsylvania, 7 F.3d 332, 337 (3d Cir. 1993). "When considering whether to modify a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law." Omaha Indem. Co. v. Wining, 949 F.2d 235, 239 (8th Cir. 1991) (quotation omitted).

The City based its motion to dissolve on Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b)(5) permits a party to obtain relief from a judgment or order if "applying it prospectively is no longer equitable." In Horne v. Flores, the Supreme Court confirmed that Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." 557 U.S. 443, 447 (2009) (cleaned up). The Court noted that "Rule 60(b)(5) serves a particularly important function in what we have termed 'institutional reform litigation' [because] [s]uch litigation commonly involves areas of core state responsibility." Id. at 447-48; see Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 392-93 (1992) (modification of consent decrees). Though Rule 60(b)(5) on its face

is limited to relief from final orders, we conclude the standard applied in Horne also applies to motions to modify or dissolve preliminary injunctions. "We review only the denial of the Rule 60(b) motion and do not squarely consider the merits of the underlying order." Brooks v. Ferguson-Florissant School Dist., 113 F.3d 903, 904 (8th Cir. 1997). The City bears the burden of establishing that changed circumstances warrant relief. Horne, 557 U.S. at 447.

In denying the motion to dissolve, the district court concluded that the City had failed to show changed circumstances, characterizing its motion as "nothing more than an attempt to reargue the preliminary injunction motion with new counsel and more strident rhetoric." For the most part, we agree. But in one crucial respect -- the passage of time since the preliminary injunction was entered -- the City's motion does present a dramatic case of "changed circumstances."

In most cases, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). But in this case, the district court issued a preliminary injunction that is in "substance, if not in terms, a mandatory one, which 'like a mandamus,' is an extraordinary remedial process." Heckler v. Lopez, 463 U.S. 1328, 1333-34 (1983) (Rehnquist, J., granting a stay pending appeal). Issued against the City and "its agents, servants, employees, and representatives," the decree subjects every St. Louis police officer exercising his or her community caretaking responsibility to maintain public order and protect persons and property to the risk of being held in contempt of court for (i) enforcing facially valid ordinances prohibiting unlawful assemblies and refusals to obey dispersal orders with "the purpose of punishing persons for exercising their constitutional rights to engage in expressive activity," unless they are "acting in concert to pose an imminent threat to use force or violence"; (ii) using "chemical agents . . . against any person engaged in expressive, non-violent activity . . . in the absence of probable cause to arrest . . . and without first issuing clear and unambiguous warnings that the person is subject

to arrest . . . and providing the person sufficient opportunity to heed the warnings";[2] or (iii) issuing dispersal orders without "specifying with reasonable particularity the area from which dispersal is ordered . . . and providing sufficient warnings of the consequences of failing to disperse" and a reasonable "announced amount of time . . . to heed the warnings and exit the area."

Given the events in the fall of 2017, we do not question the district court's decision to issue a preliminary injunction that included affirmative mandates *pending a prompt trial on the merits of plaintiffs' claims for a permanent injunction*. But there has been no prompt trial. Instead, the case was referred to a mediator for six months, and the six month delay became over *three years* when mediation failed, plaintiffs renewed their motion for class certification, and the court entered an appealable class certification order. In this institutional reform lawsuit, this change in circumstances warranted the district court's serious consideration of either modifying or dissolving the preliminary injunction or accelerating trial on the merits of plaintiffs' permanent injunction claims. "It is one thing for a court to preserve its power to grant effectual relief by preventing parties from making unilateral and irremediable changes during the course of litigation, and quite another for a court to force the parties to make significant alterations in their practices before there has been time for a trial on the merits." Chicago United Ind., Ltd. v. City of Chicago, 445 F.3d 940, 945 (7th Cir. 2006), quoting O Centro Espiria Beneficient Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 1015 (10th Cir. 2004) (McConnell, J., concurring). "[T]he

---

[2]The mandate that chemical agents may only be used when there is probable cause to arrest goes beyond what this court has held in § 1983 excessive force cases. See Frederick v. Motsinger, 873 F.3d 641, 646-47 (8th Cir. 2017). These First and Fourth Amendment issues are more complex and fact intensive. See Quraishi v. St. Charles Cty., Mo., 986 F.3d 831 (8th Cir. 2021). To the extent this provision was based upon a prior settlement agreement, that would not be sufficient to support a § 1983 permanent injunction. See Lewis v. Casey, 518 U.S. 343, 363 (1996).

-6-

longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes." Horne, 557 U.S. at 453.

Plaintiffs seek permanent injunctive relief against the City based on its alleged custom and practice and its failure to train and supervise police officers. Regarding the custom and practice claim, plaintiffs do not allege that the municipal ordinances being enforced during the September 2017 protests are constitutionally invalid. But a "showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of [the City, would] not provide a basis for equitable relief." Lyons, 461 U.S. at 104. Rather, "where the claim is that municipal action lawful on its face caused an employee to inflict constitutional injury, 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.'" S.M. v. Lincoln Cty., 874 F.3d 581, 585 (8th Cir. 2017), quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 405 (1997). To prevail on this claim, plaintiffs "must show that [their] alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct, that municipal policymakers were either deliberately indifferent to or tacitly authorized." Davis v. White, 794 F.3d 1008, 1014 (8th Cir. 2015); see Szabla v. City of Brooklyn Park, Mn. 486 F.3d 385, 389-90 (8th Cir. 2007) (en banc); Thomas v. Cty. of Los Angeles, 978 F.2d 504, 509 (9th Cir. 1992) ("plaintiffs' eventual burden in obtaining a permanent injunction against a state law enforcement agency is to establish more than repeated incidents of misconduct").

Plaintiffs' burden in proving their municipal failure to train and supervise claim is no less rigorous. "'Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.' . . . [T]o maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury.'" Johnson v. City of Ferguson, Mo., 926 F.3d 504, 506 (8th Cir. 2019) (en banc); see City of Canton v. Harris, 489 U.S. 378, 389-92

(1989). Given these rigorous § 1983 burdens of proof, the evidence at the preliminary injunction hearing relating to the events of September 2017, while relevant and sufficient to persuade the court to grant a preliminary injunction *pendente lite*, will not be sufficient to warrant permanent injunctive relief imposing the same levels of indefinite federal court control over the City's law enforcement responsibilities. As Judge Posner recently reminded Seventh Circuit district judges, "[t]he era of micromanagement of government functions by the federal courts is over." Chicago United Ind., 445 F.3d at 947.[3]

In reviewing preliminary injunctions, we have long recognized "that justice would be served by proceeding to trial with all due haste in order to secure a ruling on the merits of the claim raised." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 112 (8th Cir. 1981) (en banc). That was true when the preliminary injunction issued in November 2017 and is even more true today. The City has not shown changed circumstances warranting immediate dissolution. However, when discovery is complete or largely complete, as in this case, we agree with the Second Circuit "that the important questions raised . . . should not be left unanswered . . . any longer than necessary," and we therefore condition maintenance of the preliminary injunction upon the completion of a trial on the merits of plaintiffs's request for a permanent injunction within six months. Able v. United States, 44 F.3d 128, 132-33 (2d Cir. 1995); see Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC, 710 F.3d 579 (5th Cir. 2013); Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6 (7th Cir. 1992). Accordingly, we affirm denial of the City's motion to dissolve the temporary injunction and remand with directions to vacate and dissolve the injunction

---

[3]"It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." Lewis, 518 U.S. at 349.

no later than October 31, 2021, if it has not been replaced with a final order either granting a permanent injunction or denying injunctive relief.[4]

## II. Class Certification

The City appeals the district court's order granting certification of a class under Rule 23(b)(2). The court defined the class as:

> persons who will in the future participate in or observe non-violent public demonstrations and/or who record such public demonstrations and/or police activities at the public demonstrations for the exercise of constitutional rights of free speech and assembly in the City of St. Louis.

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." In re St. Jude Medical, Inc., 425 F.3d 1116, 1118 (8th Cir. 2005). Rule 23(a) requires showing that the class meets requirements of "numerosity, commonality, typicality, and fair and adequate representation." Postawko v. Missouri Dept. of Corrections, 910 F.3d 1030, 1037 (8th Cir. 2018). Rule 23(b)(2) provides that a class action *may* be maintained if -

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

---

[4]In denying the City's motion to dissolve the preliminary injunction in May 2019, the district court noted that the case was set on the court's trial docket "in August" and that the court "can best determine whether continued injunctive relief is warranted after all the evidence has been heard and the case submitted for decision." At oral argument, counsel for plaintiffs stated that they "want more discovery" before trial. On remand, if plaintiffs seek or request additional discovery, the district court is directed to dissolve the preliminary injunction forthwith.

-9-

The district court after lengthy discussion concluded that plaintiffs satisfy the four Rule 23(a) requirements. The court then concluded with little analysis that it is "patently obvious" that the City "'acted or refused to act on grounds generally applicable to the class' based on the protestors' allegations that the police had unconstitutionally declared an unlawful assembly and dispersed the protestors," quoting Multi-Ehnic Immigrant Workers Org. Network v. City of Los Andeales, 246 F.R.D. 621 (C.D. Cal. 2007). We will address only the Rule 23(b)(2) issue.

Rule 23(b)(2) class certification may be proper when the primary relief sought, as in this case, is declaratory or injunctive. See Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1035 (8th Cir. 2010). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). However, because unnamed class members are bound without an opportunity to opt out, a Rule 23(b)(2) class requires even greater cohesiveness than a Rule 23(b)(3) class seeking damages:

> Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender.

St. Jude, 425 F.3d at 1122 (cleaned up). Thus, when named plaintiffs attempt "to aggregate a plethora of discrete claims . . . into one super-claim'" against a government agency, without demonstrating "that the class members have been harmed in essentially the same way," the proposed Rule 23(b)(2) class is deficient. M.D. ex. rel. Stukenberg v. Perry, 675 F.3d 832, 848 (5th Cir. 2012) (cleaned up). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011).

The named plaintiffs in this case are not "bound together through preexisting or continuing legal relationships or by some significant common trait." Ahmad intentionally violated state and local ordinances at the time she was maced. Mobley was allegedly recording a protest against police when police detained him and seized his phone. Lewczuk was an "observer" of, not a participant in, the protests when she was arrested. Nor did the named plaintiffs and putative class members allegedly experience the same harms. They allege, among other claims, use of chemical agents in violation of the Fourth Amendment, interference with the right to film police activity in violation of the First Amendment, and being arrested for unlawful assembly or failure to disperse without adequate warning and an opportunity to comply. Each of these fact-intensive claims requires different proof to establish the alleged constitutional violation.

Plaintiffs in their motion for class certification and on appeal made no attempt to define precisely what permanent injunctive relief they are seeking on behalf of various members of the putative class. It is apparent they seek broad injunctive relief that does not "relate only to a single policy regarding one particular [injury]," as in Postawko, 910 F.3d at 1040, on which they rely. When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and "the cohesiveness necessary to proceed as a class under [Rule 23](b)(2) is lacking." Ebert v. General Mills, Inc., 823 F.3d 477, 480 (8th Cir. 2016), citing Dukes in reversing a Rule 23(b)(2) certification order. We conclude class certification was granted prematurely. Given the individualized inquiries plaintiffs' disparate claims require, "the massive class action certified neither promotes the efficiency and economy underlying class actions nor pays sufficient heed to the federalism and separation of powers principles emphasized in Rizzo v. Goode, Lewis v. Casey, and other cases." Elizabeth M. v. Montenez, 458 F.3d 779, 788 (8th Cir. 2006).[5]

---

[5]In Rizzo v. Goode, 423 U.S. 362, 378 (1976), a suit against the Mayor and Police Commissioner of Philadelphia, the Court observed: "Where, as here, the

-11-

Plaintiffs seek permanent injunctive relief directing the City of St. Louis how to handle future protests. There will be no monetary remedies in this action. Individual damage actions by putative class members against particular police officers are already pending. Plaintiffs make no showing a class-wide injunction will be needed to ensure compliance by the City with any permanent injunction granted the named plaintiffs. "When the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." Chicago United Inds., 445 F.3d at 947.

Moreover, the premature grant of class certification has seriously delayed the prompt trial on the merits of plaintiffs' claims for permanent injunctive relief that the mandatory nature of the preliminary injunction requires. Accordingly, we vacate the class certification order without prejudice to plaintiffs renewing their request after a final order has been entered on their claim for permanent injunctive relief, at which point the district court can better assess whether a Rule 23(b)(2) class is appropriate and necessary to afford proper equitable relief. "The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established. . . .This is no less true with respect to class actions than with respect to other suits." Lewis, 518 U.S. at 357.

### III. Conclusion

For the forgoing reasons, the orders of the district court are modified and the case is remanded for further proceedings not inconsistent with this opinion.

---

exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."

ERICKSON, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's analysis and conclusion in Part II that the class certification order should be vacated without prejudice. I write separately with regard to the first part of the majority's opinion because I believe the City's failure to appeal the preliminary injunction, which was an appealable interlocutory order under 28 U.S.C. § 1292(a)(1), divests the City of the opportunity to contest the merits.

Courts generally have jurisdiction to review interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). However, if an injunction is granted and not appealed, we lack jurisdiction to review an order that denies a request for reconsideration of that injunction. Gooch v. Life Ins. Co. of Am., 672 F.3d 402, 414–15 (6th Cir. 2012); Weight Watchers Int'l, Inc. v. Luigino's Inc., 423 F.3d 137, 141 (2d Cir. 2005); see also Mikel v. Gourley, 951 F.2d 166, 168–69 (8th Cir. 1991) (noting the court would lack jurisdiction over an order clarifying rather than modifying an existing injunction).

In its motion, the City did not identify any "subsequent changes in the facts or the law" to support a modification or dissolution of the injunction.[6] Omaha Indem. Co. v. Wining, 949 F.2d 235, 239 (8th Cir. 1991) (citations omitted). Even though the City captioned its motion as a request to "dissolve" the injunction, the essence of its motion was a request to reconsider the injunction. That the City relied on evidence existing before the district court entered the preliminary injunction is fatal and should have ended the inquiry because we lack jurisdiction to review a request for reconsideration. See Gooch, 672 F.3d at 415–16; see also AngioDynamics, Inc. v.

---

[6] Even if Fed. R. Civ. P. 60(b) is an appropriate vehicle for review, in my opinion, the outcome would be the same since the City failed to demonstrate a change in fact or law.

-13-

Biolitec AG, 880 F.3d 596, 599 (1st Cir. 2018) (per curiam); Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1124 (9th Cir. 2005).

I do not believe that the "passage of time" alone constitutes sufficient "changed circumstances" to dissolve a preliminary injunction. This is all the more true where, as here, the substantial delay that the majority found converted the preliminary injunction into a permanent injunction is largely attributable to unique circumstances that are unlikely to be replicated in the future. They include failed attempts to mediate, the hiring of new counsel, the COVID-19 pandemic, and the general difficulty in holding court due to civil unrest during the summer of 2020. While a prompt trial is essential to our justice system, I am not convinced that under these unique circumstances it is appropriate to treat the preliminary injunction as though it was a permanent injunction.

As the district court noted, the City's motion "amount[ed] to nothing more than an attempt to reargue the preliminary injunction motion with new counsel and more strident rhetoric." While I share the majority's concerns about the breadth of the preliminary injunction, those concerns do not obviate the requirement that a party seeking to dissolve a preliminary injunction must first demonstrate a change in circumstances. Cf. Jackson v. Los Lunas Cmty. Program, 880 F.3d 1176, 1200 (10th Cir. 2018) (requiring a change in circumstances even in institutional reform litigation). If the passage of time alone is sufficient to dissolve a preliminary injunction, an injunction will be "indefinitely open to challenge" long after the deadline to appeal the merits has passed. Favia v. Ind. Univ. of Pa., 7 F.3d 332, 337 (3d Cir. 1993).

Because the City failed to identify a sufficient change in the facts or the law, I believe the appeal from the order declining to dissolve the preliminary injunction should have been dismissed for lack of jurisdiction.

_____

# APPENDIX

**IT IS HEREBY ORDERED** that plaintiffs' motion for preliminary injunction [10] is granted and defendant City of St. Louis and its agents, servants, employees, and representatives will not enforce any rule, policy, or practice that grants law enforcement officials the authority or discretion to:

1) Declare an unlawful assembly under St. Louis Code of Ords. §15.52.010 when the persons against whom it would be enforced are engaged in expressive activity, unless the persons are acting in concert to pose an imminent threat to use force or violence or to violate a criminal law with force or violence;

2) Declare an unlawful assembly under St. Louis Code of Ords. §15.52.010 or enforce St. Louis Code of Ords. §17.16.275(A) and (E) for the purpose of punishing persons for exercising their constitutional rights to engage in expressive activity;

3) Use chemical agents, including, but not limited to, mace/oleoresin capsicum spray or mist/pepper spray/pepper gas, tear gas, skunk, inert smoke, pepper pellets, xylyl bromide, and similar substances (collectively "chemical agents"), whatever the method of deployment, against any person engaged in expressive, non-violent activity in the City of St. Louis, in the absence of probable cause to arrest the person and without first issuing clear and unambiguous warnings that the person is subject to arrest and such chemical agents will be used and providing the person sufficient opportunity to heed the warnings and comply with lawful law enforcement commands or as authorized in paragraph 5 below;

4) Use or threaten to use chemical agents, whatever the method of deployment, against any person engaged in expressive, non-violent activity in the City of St. Louis, for the purpose of punishing the person for exercising constitutional rights; and

      5) Issue orders or use chemical agents, whatever the method of deployment, for the purpose of dispersing person(s) engaged in expressive, non-violent activity in the City of St. Louis without first:  specifying with reasonable particularity the area from which dispersal is ordered; issuing audible and unambiguous orders in a manner designed to notify all persons within the area that dispersal is required and providing sufficient warnings of the consequences of failing to disperse, including, where applicable, that chemical agents will be used; providing a sufficient and announced amount of time which is proximately related to the issuance of the dispersal order in which to heed the warnings and exit the area; and announcing and ensuring a means of safe egress from the area that is actually available to all person(s);

      **Provided, however,** that paragraph (3) and (5) above do not apply to situations where persons at the scene present an imminent threat of violence or bodily harm to persons or damage to property, or where law enforcement officials must defend themselves or other persons or property against imminent threat of violence.

      **IT IS FURTHER ORDERED** that this preliminary injunction becomes effective upon plaintiffs' posting security in the amount of $100 with the Clerk of Court, and remains in effect until further order of this Court.

      A separate Preliminary Injunction in accord with this Memorandum and Order is entered this date, as is a separate order referring this case to mediation.